**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY AND ALLSTATE FIRE & CASUALTY INSURANCE COMPANY

Plaintiffs,

-against-

A & F MEDICAL P.C., ADVANCED CHIROPRACTIC OF NEW YORK P.C., ALIGNMENT CHIROPRACTIC CARE P.C., ART OF HEALING MEDICINE, P.C., ATLAS ORTHOGONAL CHIROPRACTIC P.C., AVICENNA MEDICAL ARTS P.L.L.C., AVM CHIROPRACTIC P.C., BIG APPLE CHIROPRACTIC P.C., BRONX-METRO CHIROPRACTIC HEALTH SERVICES P.C., BSZ CHIROPRACTIC P.C., DEDICATED CHIROPRACTIC P.C., DUMONT MEDICAL DIAGNOSTICS P.C., DYNASTY MEDICAL CARE, P.C., ELMONT WELLNESS CHIROPRACTIC P.C., FLOW CHIROPRACTIC P.C.,  GOLDEN HANDS CHIROPRACTIC P.C., GREAT HEALTH CARE CHIROPRACTIC P.C., HEIGHTS CHIROPRACTIC SERVICES P.C., M. SADEES M.D. P.C., NEW BEGINNING CHIROPRACTIC P.C., NO MORE PAIN CHIROPRACTIC P.C., NORTHSHORE CHIROPRACTIC DIAGNOSTICS P.C., POWER CHIROPRACTIC P.C., PRIORITY MEDICAL DIAGNOSTICS P.C., RB CHIROPRACTIC CARE P.C., RICHMOND MEDICAL DIAGNOSTICS P.C., SUPREME HEALTH CHIROPRACTIC P.C., TRUE-ALIGN CHIROPRACTIC CARE P.C., WAY TO HEALTH CHIROPRACTIC P.C., WHITE PLAINS MEDICAL CARE, P.C., ROBERT ALBANO, D.C., ADELIYA ISAAKOVNA AKPAN, M.D., KARL BAUER, D.C., AUTUMN CUTLER, D.C., AHMED ELSOURY, M.D., NICHOLAS FENNELLI , M.D., ANDREW GARCIA, D.C., MICHAEL GORELIK, D.C., SURENDER GORUKANTI, M.D., GRAIG GRANOVSKY, D.C., JOSEPH HUMBLE, D.C., ANTHONY MANDRACCHIA, D.C., ALEXANDER MAZUROVSKY, D.C., SOPHIA MOHUCHY, D.C., RUSSELL NERSESOV, D.C., CHARLES NGUYEN, D.C., MOHAMED NOUR , M.D., RAMKUMAR  PANHANI , M.D., SVETLANA PINKUSOVICH, M.D., ALEXANDER  PINKUSOVICH, M.D., NICOLETTE MERAV SADEES, M.D., PAUL SCARBOROUGH, D.C., MARK  SOFFER, D.C., ALEXANDER VEDER, M.D., NARCISSE VERSAILLES, M.D., GUY VILLANO, D.C., MELANIE WALCOTT, D.C. and YAKOV ZILBERMAN, D.C.

Defendants.

------------------------------------------------------------------------------------- X

**COMPLAINT**

**(TRIAL BY JURY DEMANDED)**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company and Allstate Fire & Casualty Insurance Company, (interchangeably referred to herein as "Allstate" and "Plaintiffs), by their attorneys Stern & Montana, LLP, for their Complaint against Defendants A & F Medical P.C., Advanced Chiropractic of New York P.C., Alignment Chiropractic Care P.C., Art of Healing

1

Medicine, P.C., Atlas Orthogonal Chiropractic P.C., Avicenna Medical Arts PLLC, AVM Chiropractic P.C., Big Apple Chiropractic P.C., Bronx-Metro Chiropractic Health Services P.C., BSZ Chiropractic P.C., Dedicated Chiropractic P.C., Dumont Medical Diagnostics P.C., Dynasty Medical Care, P.C., Elmont Wellness Chiropractic P.C., Flow Chiropractic P.C., Golden Hands Chiropractic P.C., Great Health Care Chiropractic P.C., Heights Chiropractic Services P.C., M. Sadees M.D. P.C., New Beginning Chiropractic P.C., No More Pain Chiropractic P.C., Northshore Chiropractic Diagnostics P.C., Power Chiropractic P.C., Priority Medical Diagnostics P.C., RB Chiropractic Care P.C., Richmond Medical Diagnostics P.C., Supreme Health Chiropractic P.C., True-Align Chiropractic Care P.C., Way To Health Chiropractic P.C., White Plains Medical Care, P.C. (collectively the "Defendant PCs"), Robert Albano, D.C., Adeliya Isaakovna Akpan, M.D., Karl Bauer, D.C., Autumn Cutler, D.C., Ahmed Elsoury, M.D., Nicholas Fennelli , M.D., Andrew Garcia, D.C., Michael Gorelik, D.C., Surender Gorukanti, M.D., Graig Granovsky, D.C., Joseph Humble, D.C., Anthony Mandracchia, D.C., Alexander Mazurovsky, D.C., Sophia Mohuchy, D.C., Russell Nersesov, D.C., Charles Nguyen, D.C., Mohamed Nour, M.D., Ramkumar  Panhani, M.D., Svetlana Pinkusovich, M.D., Alexander  Pinkusovich, M.D., Nicolette Merav Sadees, M.D., Paul Scarborough, D.C., Mark  Soffer, D.C., Alexander Veder, M.D., Narcisse Versailles, M.D., Guy Villano, D.C., Melanie Walcott, D.C., and Yakov Zilberman, D.C. (collectively the "Defendant Licensed Healthcare Professionals"") (the Defendant PCs and Defendant Licensed Healthcare Professionals are collectively referred to as the "Defendants") allege as follows:

## PRELIMINARY STATEMENT

1. On information and belief, from at least 2008 and continuing through the date of the filing of this Complaint, Defendants engaged in parallel, related, and virtually

identical schemes to defraud automobile insurance companies, including Allstate, through the exploitation of New York's Comprehensive Motor Vehicle Insurance Reparations Act (popularly known as the "No-fault Law").

2.  Pursuant to the No-fault Law, policyholders and others who sustain injuries in automobile accidents ("Covered Persons") can obtain payments from the policyholders' automobile insurance companies, like Allstate, for necessary medical care, including treatments, tests and medical equipment ordered by the Covered Persons' physicians. Covered Persons can also assign those benefits to doctors and other licensed healthcare providers enabling them to bill insurance companies directly for their services.

3.  This action seeks to recover more than $6,000,000.00 that Defendants stole from Allstate through the submission of thousands of false and/or fraudulent insurance claims seeking reimbursement for Voltage-actuated Sensory Nerve Conduction Threshold Testing ("VsNCT Testing") (also referred to as Sensory Nerve Conduction Testing ("sNCT")) that was not performed as billed, was medically unnecessary and/or was of no diagnostic value.

4.  In furtherance of Defendants' fraudulent billing schemes, individuals who were purportedly involved in automobile accidents would present to one of the Defendant Licensed Healthcare Professionals and/or Defendant PCs where the Defendants would purportedly perform, or caused to be performed, VsNCT Testing in order to ostensibly diagnose abnormalities in the Covered Persons' peripheral nerves.

5.  On information and belief, peripheral nerves consist of bundles of fibers which are capable of detecting sensation. The largest and fastest fibers are known as A-Alpha and A-Beta fibers, and the smaller and slower conducting fibers that transmit feelings of pain are known as C-fibers and A-Delta fibers.

6.  On information and belief, at all relevant times mentioned herein, the VsNCT Testing allegedly provided by Defendants purported to diagnose abnormalities in peripheral nerves by selectively delivering an electrical current to a Covered Person's sensory nerve and measuring the electrical response of the nerve's A-Delta fiber.

7.  On information and belief, at all relevant times mentioned herein, Defendants purported to selectively deliver an electrical current to a Covered Person's nerve's A-Delta fiber using one of two devices: an Axon-II Voltage-Input Sensory Nerve Conduction Threshold Testing Device (the "Axon-II") or its substantially similar predecessor, the Medi-Dx-7000 ("Medi-DX") (the Axon-II and Medi-DX are collectively referred to herein as the "VsNCT Testing Devices").

8.  On information and belief, VsNCT Testing is performed by administering an electrical current to specific sites on the body through an electrode placed on the surface of the skin.

9.  On information and belief, once the electrode is held against the surface of the skin and the stimulating current is turned on, the subject being tested is directed to verbally indicate when they feel the slightest sensation. If no sensation is felt by the subject at a given level of stimulation, the intensity of the electrical current applied to the skin is increased by turning a dial on the VsNCT Testing Device until the subject indicates that they feel the electrical stimulus. The stimulus level is then turned down partially and then increased again to identify the precise threshold of stimulus perception, which is the lowest level of stimulus where the subject first perceives the electrical stimulus as a "tickle."

10.  When the threshold of stimulus perception is detected, Defendants purport to have selectively stimulated the A-Delta fiber within the subject's nerve.

11.   On information and belief, the VsNCT Testing Devices used by Defendants were incapable of selectively stimulating A-Delta pain fibers. Instead, the VsNCT Testing Devices stimulate the various populations of sensory fibers non-specifically. However, because of their inherent properties, the A-Alpha and the A-Beta fibers which transmit perception of touch and vibration are stimulated at a lower stimulus threshold than the pain fibers which require higher levels of stimulation.

12.   On information is belief, at all relevant times mentioned herein, the Axon-II purported to deliver an electrical current at frequency of 250 Hz.

13.   On information and belief, it is impossible to selectively stimulate the A-Delta fibers using an electrical frequency of 250 Hz, because at that level of stimulus the A-Beta *and* A-Delta fibers are being activated *simultaneously*. Moreover, at the stimulus threshold, only the A-Alpha and the A-Beta fibers are stimulated, and when the A-Delta fibers are being stimulated, the subject would perceive pain, which they do not.

14.   On information and belief, notwithstanding that the VsNCT Testing Devices were incapable of performing the tests that Defendants purported to provide, Defendants submitted bills and supporting documentation to Plaintiffs seeking reimbursement for VsNCT Testing which was not rendered as billed, was medically unnecessary and/or of no diagnostic value.

15.   On information and belief, at all relevant times mentioned herein, Defendants' purported diagnoses relating to the VsNCT Testing of Covered Persons was entirely dependent upon Covered Persons' subjective recognition of the electrical stimulus being applied through the VsNCT Testing Devices.

16.   On information and belief, because VsNCT Testing is a subjective test which is entirely dependent on a Covered Persons' recognition of an electrical stimulus, it is neither reasonable nor necessary for the diagnosis of sensory or peripheral neuropathies.

17.   On information and belief, in addition to administering medically unnecessary VsNCT Testing, which was not medically necessary and/or of no diagnostic value, to Covered Persons, Defendants, as a matter of practice and protocol, billed Allstate for VsNCT Testing using Current Procedural Terminology ("CPT") Code 95904.

18.   On information and belief, CPT Code 95904 is reserved exclusively for sensory Nerve Conduction Velocity Testing, which is an objective form of testing used to diagnose nerve abnormalities.

19.   On information and belief, unlike standard Nerve Conduction Velocity Testing, VsNCT Testing is not an objective form of testing.

20.   On information and belief, standard sensory Nerve Conduction Velocity Testing involves stimulating the sensory nerve with an electric shock.  When the nerve is stimulated by the electric shock, it depolarizes (fires) resulting in a wave of electrical activity (the action potential) which moves along the nerve in both directions. Recording electrodes applied to the skin surface a measured distance from the stimulus site over the same nerve record and measure the following parameters: (1) the Latency, which is the elapsed time between the stimulus time and the arrival of the action potential that the recording electrodes; (2) the Amplitude, which is the height of the recorded action potential corresponding to the maximum amount of electric charge in the action potential; and (3) the configuration of the recorded action potential. The measured distance between the stimulating and recording electrodes provided by the elapsed time to travel down the nerve (the latency) equals the speed of conduction (the velocity).

21.   On information and belief, in order to be eligible for reimbursement under CPT Code 95904, the billed for electrodiagnostic test must measure Amplitude, Latency configuration *and* Velocity.

22.   On information and belief, at all at relevant times mentioned herein, the VsNCT Testing Devices purportedly used by Defendants were incapable of recording the Amplitude, Latency and Velocity of a nerve's response to an external electrical stimulus.

23.   Use of a CPT code denotes that the essential services reported by that CPT code have been provided. On information and belief, at all at relevant times mentioned herein, Defendants grossly misstated the services purportedly rendered by billing under CPT Code 95904.

24.   On information and belief, at all relevant times mentioned herein, in furtherance of their schemes to exponentially increase their billing through the submission of fraudulent claims, Defendants purportedly performed VsNCT Testing which they knew or should have known was incapable of diagnosing sensory or peripheral neuropathies.

25.   On information and belief, at all relevant times mentioned herein, Defendants purportedly performed VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value.

26.   On information and belief, the clinical validity of VsNCT Testing, in general, and the use of the Axon-II for the diagnosis of peripheral neuropathies, in particular, has never been verified by credible and reliable evidence.

27.   By way of example and not limitation, on or about July 8, 2003, the Center for Medicare Studies ("CMS") issued a Decision Memorandum concluding that VsNCT Testing in general, and VsNCT Testing performed with the Axon-II's substantially similar

predecessor, the Medi-Dx, in particular, is (i) neither reasonable nor necessary for the diagnosis of sensory or peripheral neuropathies because it is a subjective test that is not clinically effective, and (ii) incapable of providing information on the amplitude, latency configuration or velocity of a nerve response necessary for billing pursuant to CPT Code 95904.

28. On information and belief, subsequent to the 2003 CMS Memorandum, and in an effort to ostensibly add an objective component to the VsNCT Testing, the manufacturer of the Medi-DX added a device to be used with it, called a "Potentiometer," and rebranded the "Medi-DX" as the "Axon-II."

29. On information and belief, the Potentiometer is a device which purports to display a digital reading of the electrical current resulting from the stimulation of the A-Delta fibers in the subject's sensory nerve in response to stimulation by the Axon-II device.

30. On information and belief, in furtherance of the scheme to defraud alleged herein, in addition to displaying the electrical current being input from the VsNCT Testing Device, the Potentiometer purports to also display a small increase in its reading as a result of additional electrical current contributed by the Covered Person's nerve's A-Delta fiber being activated.

31. On information and belief, at all relevant times mentioned herein, to the extent that Defendants purportedly used the Axon-II to perform VsNCT Testing on Covered Persons, Defendants falsely and fraudulently misrepresented that the small increase purportedly displayed on the Potentiometer's reading was an objective reading of the Amplitude of the Covered Person's A-Delta nerve fiber response.

32. On information and belief, at all relevant times mentioned herein, the Potentiometer was incapable of measuring the Amplitude of the Covered Person's A-Delta nerve fiber response.

33. On information and belief, even if the Potentiometer were capable of measuring the Amplitude of the response of the A-Delta fibers, the Axon-II is incapable of measuring the Latency configuration and Velocity of a nerve's response to an external electrical stimulus, which are requirements for reimbursement pursuant to CPT Code 95904.

34. On information and belief, Defendants submitted identical boilerplate medical records, reports and bills to Allstate for reimbursement that contained nearly identical, false and fraudulent statements regarding the clinical efficacy of VsNCT Testing for the diagnosis of sensory or peripheral neuropathies.

35. On information and belief, the identical boilerplate medical records, reports and bills submitted by Defendants to Allstate for reimbursement contained false and fraudulent statements that VsNCT Testing is reimbursable pursuant to CPT Code 95904.

36. On information and belief, VsNCT Testing is not reimbursable pursuant to CPT Code 95904.

37. By way of example and not limitation, the Defendants, as a matter of pattern, practice and protocol, routinely misrepresented that: (i) they performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when, in fact, no such studies were performed; (iii) the VsNCT Testing Devices were capable of selectively detecting the activation of a nerve's A-Delta fibers, when they are not; and (iii) the VsNCT Testing Devices were capable of measuring and/or

recording the amplitude, latency and/or velocity of a Covered Persons' nerve responses, when they are not.

38.   On information and belief, Defendants Adeliya Isaakovna Akpan, M.D., Karl Bauer, D.C., Autumn Cutler, D.C., Ahmed Elsoury, M.D., Nicholas Fennelli, M.D., Andrew Garcia, D.C., Michael Gorelik, D.C., Surender Gorukanti, M.D., Graig Granovsky, D.C., Joseph Humble, D.C., Anthony Mandracchia, D.C., Alexander Mazurovsky, D.C., Sophia Mohuchy, D.C., Russell Nersesov, D.C., Charles Nguyen, D.C., Mohamed Nour, M.D., Ramkumar Panhani, M.D., Svetlana Pinkusovich, M.D., Alexander Pinkusovich, M.D., Nicolette Merav Sadees, M.D., Paul Scarborough, D.C., Mark Soffer, D.C., Alexander Veder, M.D., Narcisse Versailles, M.D., Guy Villano, D.C., Melanie Walcott, D.C., and Yakov Zilberman, D.C. (collectively the "Defendant Licensed Healthcare Professionals") submitted bills, either directly in their names or through medical or chiropractic offices operating in the New York metropolitan area, to Allstate for reimbursement of VsNCT Testing using CPT Code 95904, pursuant to the No-fault Law.

39.   On information and belief, the medical clinics through which the Defendant Licensed Healthcare Professionals submitted bills for VsNCT Testing include: A & F Medical P.C., Advanced Chiropractic of New York P.C., Alignment Chiropractic Care P.C., Art of Healing Medicine, P.C., Atlas Orthogonal Chiropractic P.C., Avicenna Medical Arts PLLC, AVM Chiropractic P.C., Big Apple Chiropractic P.C., Bronx-Metro Chiropractic Health Services P.C., BSZ Chiropractic P.C., Dedicated Chiropractic P.C., Dumont Medical Diagnostics P.C., Dynasty Medical Care, P.C., Elmont Wellness Chiropractic P.C., Flow Chiropractic P.C., Flow Chiropractic P.C., Golden Hands Chiropractic P.C., Great Health Care Chiropractic P.C., Heights Chiropractic Services

P.C., M. Sadees M.D. P.C., New Beginning Chiropractic P.C., No More Pain Chiropractic P.C., Northshore Chiropractic Diagnostics P.C., Power Chiropractic P.C., Priority Medical Diagnostics P.C., RB Chiropractic Care P.C., Richmond Medical Diagnostics P.C., Supreme Health Chiropractic P.C., True-Align Chiropractic Care P.C., Way To Health Chiropractic P.C., and White Plains Medical Care, P.C. (collectively referred to as the "Defendant PCs").

40. On information and belief, the Defendant Licensed Healthcare Professionals, either individually or through their related Defendant PCs, fraudulently submitted bills to Allstate for VsNCT Testing that was not performed as billed, was fabricated and/or of no diagnostic value. In that regard, in virtually every instance, the reported results associated with the foregoing tests were fictitious, meaning that Defendants routinely, intentionally and knowingly submitted fabricated reports, findings and data to Allstate to substantiate the fraudulent claims and induce payment. By way of example and not limitation, annexed hereto as Exhibit "A" is a spreadsheet listing a representative sample of claims Allstate paid to the Defendant Licensed Healthcare Professionals and/or the Defendant PCs for VsNCT Testing that was not performed as billed, fabricated and/or of no diagnostic value.

41. On information and belief, in each instance, the Defendant Licensed Healthcare Professionals knew or should have known that the VsNCT Testing was bogus, contained material and misleading statements, was not rendered as billed and/or was of no diagnostic value.

42. At all relevant times mentioned herein, the VsNCT Testing for which Defendants sought reimbursement from Plaintiffs was provided pursuant to a

predetermined course of treatment, irrespective of medical necessity, which was not reimbursable under the No-fault Law pursuant to CPT Code 95904.

43. On information and belief, the practices alleged herein were conducted willfully, with the sole object of converting money, in utter disregard of their impact on the premium-paying public and in flagrant disregard of the rules and laws governing provision of medical services under the No-fault Law.

44. The fraudulent billing activity described herein not only is an imminent and ongoing threat to consumers' health, but it drains the limited healthcare resources of this country, resources which are already under strain to meet legitimate healthcare needs. The New York State Department of Financial Services and insurance committees in both the New York State Senate and Assembly each estimate that No-fault insurance fraud is costing New York State consumers in excess of one billion dollars a year.

45. The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeering Influenced and Corrupt Organization Act ("RICO") applies. Defendants did not engage in sporadic acts of fraud – although that would be troubling enough – they adopted a fraudulent blueprint as their business plans, and used it to participate in a systematic pattern of racketeering activity. Every facet of Defendants' operations, from generating fraudulent supporting medical documents to record keeping to billing, was carried out for the purpose of committing fraud.

## NATURE OF THE ACTION

46. This action is brought pursuant to:

i) The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. § 1962(c);

ii)   New York State Common Law; and

iii)  The Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

## NATURE OF RELIEF SOUGHT

47. Allstate seeks treble damages that they sustained as a result of the Defendants' schemes and artifices to defraud, and acts of mail fraud (pursuant to 18 U.S.C. § 1341), in connection with their use of the facilities of the No-fault system and its assignment of benefits mechanism to fraudulently obtain payments from Allstate for medical services they allegedly rendered to individuals covered by Allstate under New York State's No-fault Law.

48. Allstate seeks compensatory and punitive damages under the Common Law.

49. Allstate further seeks recovery of the No-fault claim payments made under the independent theory of unjust enrichment.

50. Allstate further seeks a judgment declaring that Plaintiffs are under no obligation to pay any of Defendants' unpaid claims for VsNCT Testing and any future No-fault claims for VsNCT Testing by Defendants must be submitted using CPT Category III Code 0110T.

51. As a result of Defendants' actions alleged herein, Allstate was defrauded of an amount in excess of $6,000,000.00, the exact amount to be determined at trial, in payments which Defendants received for fraudulently billing Allstate for services that they knew or should have known were of no diagnostic value and/or fabricated and not performed as reflected in the bills submitted to Allstate.

## THE PARTIES

**A.** **Plaintiffs**

52.     Plaintiff Allstate Insurance Company is duly organized and existing under the laws of the State of Illinois; licensed to engage in the writing of automobile insurance policies in the State of New York; and provides automobile insurance coverage to its policyholders under and in accordance with New York State Law.

53.     Plaintiff Allstate Indemnity Company is duly organized and existing under the laws of the State of Illinois; licensed to engage in the writing of automobile insurance policies in the State of New York; and provides automobile insurance coverage to its policyholders under and in accordance with New York State Law.

54.     Plaintiff Allstate Property & Casualty Insurance Company is duly organized and existing under the laws of the State of Illinois; licensed to engage in the writing of automobile insurance policies in the State of New York; and provides automobile insurance coverage to its policyholders under and in accordance with New York State Law.

55.     Plaintiff Allstate Fire & Casualty Insurance Company is duly organized and existing under the laws of the State of Illinois; licensed to engage in the writing of automobile insurance policies in the State of New York; and provides automobile insurance coverage to its policyholders under and in accordance with New York State Law.

**B**.     **Defendant Licensed Healthcare Professionals**

56.     Plaintiff Defendant Robert Albano, D.C. ("Albano") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 009165 issued by the New York State Education Department

14

on or about January 6, 1999, and is the listed owner of Advanced Chiropractic of New York, P.C.

57. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Albano purportedly performed, or caused to be performed, VsNCT Testing at Advanced Chiropractic of New York, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Advanced Chiropractic of New York, P.C., Defendant Albano fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Albano knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "B."

58. Defendant Adeliya Isaakovna Akpan, M.D. ("Akpan") is a natural person residing in the State of New York, licensed to practice medicine in the State of New York under license number 167698 issued by the New York State Education Department on or about August 28, 1986, and is the listed owner of A & F Medical, P.C.

59. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Akpan purportedly performed, or caused to be performed, VsNCT Testing at A & F Medical, P.C. that she knew or should have known was medically unnecessary and of no diagnostic value. Through A & F Medical, P.C., Defendant Akpan fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Akpan knowingly submitted bills to Allstate for VsNCT Testing that was never

rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "C."

60.     Defendant Karl Bauer, D.C. ("Bauer") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 009529 issued by the New York State Education Department on or about October 22, 1999, and is the listed owner of RB Chiropractic Care, P.C.

61.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Bauer purportedly performed, or caused to be performed, VsNCT Testing at RB Chiropractic Care, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through RB Chiropractic Care, P.C., Defendant Bauer fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value.  A representative sample of claims in which Defendant Bauer knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "D."

62.     Defendant Autumn Cutler, D.C. ("Cutler") is a natural person residing in the State of Connecticut, licensed to practice chiropractics in the State of New York under license number 010846 issued by the New York State Education Department on or about February 25, 2004, and is the listed owner of Bronx-Metro Chiropractic Health Services, P.C.

63.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Cutler purportedly performed, or caused to be performed, VsNCT Testing at Bronx-Metro Chiropractic

Health Services, P.C. that she knew or should have known was medically unnecessary and of no diagnostic value. Through Bronx-Metro Chiropractic Health Services, P.C., Defendant Cutler fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Cutler knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "E."

64. Defendant Ahmed Elsoury, M.D. ("Elsoury") is a natural person residing in the State of New Jersey, licensed to practice medicine in the State of New York under license number 234547 issued by the New York State Education Department on or about November 26, 2004, and is the listed owner of Dumont Medical Diagnostics, P.C.

65. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Elsoury purportedly performed, or caused to be performed, VsNCT Testing at Dumont Medical Diagnostics, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Dumont Medical Diagnostics, P.C., Defendant Elsoury fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Elsoury knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "F."

66. Defendant Nicholas Fennelli, D.C. ("Fennelli") is a natural person residing in the State of New Jersey, licensed to practice chiropractics in the State of New York

under license number 009917 issued by the New York State Education Department on or about October 10, 2000, and is the listed owner of Alignment Chiropractic Care, P.C.

67.    On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Fennelli purportedly performed, or caused to be performed, VsNCT Testing at Alignment Chiropractic Care, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Alignment Chiropractic Care, P.C., Defendant Fennelli fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Fennelli knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "G."

68.    Defendant Andrew Garcia, D.C. ("Garcia") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 007588 issued by the New York State Education Department on or about March 7, 1994, and is the listed owner of True-Align Chiropractic Care, P.C. and Heights Chiropractic Services, P.C.

69.    On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Garcia purportedly performed, or caused to be performed, VsNCT Testing at True-Align Chiropractic Care, P.C. and Heights Chiropractic Services, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through True-Align Chiropractic Care, P.C. and Heights Chiropractic Services, P.C., Defendant Garcia fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as

billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Garcia knowingly submitted bills to Allstate through True-Align Chiropractic Care, P.C. and Heights Chiropractic Services, P.C. for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibits "H" and "I," respectively

70.     Defendant Michael Gorelik, D.C. ("Gorelik") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 010033 issued by the New York State Education Department on or about January 31, 2001, and is the listed owner of New Beginning Chiropractic, P.C.

71.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Gorelik purportedly performed, or caused to be performed, VsNCT Testing at New Beginning Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through New Beginning Chiropractic, P.C., Gorelik fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Gorelik knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "J."

72.     Defendant Surender Gorukanti ("Gorukanti"), M.D. is a natural person residing in the State of New York, licensed to practice medicine in the State of New York under license number 229439 issued by the New York State Education Department on or about July 31, 2003, and is the listed owner of Richmond Medical Diagnostics, P.C.

73. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Gorukanti purportedly performed, or caused to be performed, VsNCT Testing at Richmond Medical Diagnostics, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Richmond Medical Diagnostics, P.C., Gorukanti fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Gorukanti knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "K."

74. Defendant Graig Granovsky, D.C. ("Granovsky") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 011465 issued by the New York State Education Department on or about September 7, 2007, and is the listed owner of Great Health Care Chiropractic, P.C.

75. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Granovsky purportedly performed, or caused to be performed, VsNCT Testing at Great Health Care Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Great Health Care Chiropractic, P.C., Defendant Granovsky fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Granovsky knowingly submitted

bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "L."

76.    Defendant Joseph Humble, D.C. ("Humble") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 009933 issued by the New York State Education Department on or about November 9, 2000, and is the listed owner of Elmont Wellness Chiropractic, P.C.

77.    On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Humble purportedly performed, or caused to be performed, VsNCT Testing at Elmont Wellness Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Elmont Wellness Chiropractic, P.C., Defendant Humble fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value.    A representative sample of claims in which Defendant Humble knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "M."

78.    Defendant Anthony Mandracchia, D.C. ("Mandracchia") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 009001 issued by the New York State Education Department on or about June 23, 1998, and is the listed owner of Big Apple Chiropractic, P.C.

79.    On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Mandracchia purportedly performed, or caused to be performed, VsNCT Testing at Big Apple

Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Big Apple Chiropractic, P.C., Defendant Mandracchia fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Mandracchia knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "N."

80.     Defendant Alexander Mazurovsky, D.C. ("Mazurovsky") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 009550 issued by the New York State Education Department on or about December 3, 1999, and is the listed owner of AVM Chiropractic, P.C.

81.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Mazurovsky purportedly performed, or caused to be performed, VsNCT Testing at AVM Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through AVM Chiropractic, P.C., Defendant Mazurovsky fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Mazurovsky knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "O."

82.     Defendant Sophia Mohuchy, D.C. ("Mohuchy") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New

York under license number 009473 issued by the New York State Education Department on or about September 3, 1999, and is the listed owner of Flow Chiropractic P.C. and Power Chiropractic, P.C.

83.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Mohuchy purportedly performed, or caused to be performed, VsNCT Testing at Flow Chiropractic P.C. and Power Chiropractic, P.C. that she knew or should have known was medically unnecessary and of no diagnostic value. Through Flow Chiropractic P.C. and Power Chiropractic, P.C., Defendant Mohuchy fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Mohuchy knowingly submitted bills to Allstate through Flow Chiropractic P.C. and Power Chiropractic, P.C. for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibits "P" and "Q," respectively.

84.     Defendant Russell Nersesov, D.C. ("Nersesov") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 008677 issued by the New York State Education Department on or about August 26, 1997, and is the listed owner of Way To Health Chiropractic, P.C. and No More Pain Chiropractic, P.C.

85.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Nersesov purportedly performed, or caused to be performed, VsNCT Testing at Way To Health Chiropractic, P.C. and No More Pain Chiropractic, P.C. that he knew or should have

known was medically unnecessary and of no diagnostic value. Through Way To Health Chiropractic, P.C. and No More Pain Chiropractic, P.C., Defendant Nersesov fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Nersesov knowingly submitted bills to Allstate through Way To Health Chiropractic, P.C. and No More Pain Chiropractic, P.C. for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibits "R" and "S," respectively.

86.     Defendant Charles Nguyen, D.C. ("Nguyen") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 08941 issued by the New York State Education Department on or about April 10, 1998, and is the listed owner of Dedicated Chiropractic, P.C.

87.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Nguyen purportedly performed, or caused to be performed, VsNCT Testing at Dedicated Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Dedicated Chiropractic, P.C., Defendant Nguyen fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Nguyen knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "T."

88.     Defendant Mohamed Nour, M.D. ("Nour") is a natural person residing in the State of New York, licensed to practice medicine in the State of New York under

license number 126616 issued by the New York State Education Department on or about March 5, 1976, and is the listed owner of Priority Medical Diagnostics, P.C.

89. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Nour purportedly performed, or caused to be performed, VsNCT Testing at Priority Medical Diagnostics, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Priority Medical Diagnostics, P.C., Defendant Nour fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Nour knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "U."

90. Defendant Ramkumar Panhani, M.D. ("Panhani") is a natural person residing in the State of New York, licensed to practice medicine in the State of New York under license number 199398 issued by the New York State Education Department on or about May 18, 1995, and is the listed owner of Dynasty Medical Care, P.C.

91. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Panhani purportedly performed, or caused to be performed, VsNCT Testing at Dynasty Medical Care, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Dynasty Medical Care, P.C., Defendant Panhani fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Panhani knowingly submitted bills to Allstate for VsNCT

Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "V."

92.     Defendant Alexander Pinkusovich, M.D. ("A. Pinkusovich") is a natural person residing in the State of New York, licensed to practice medicine in the State of New York under license number 205917 issued by the New York State Education Department on or about February 24, 1997, and is the listed owner of Art of Healing Medicine, P.C.

93.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant A. Pinkusovich purportedly performed, or caused to be performed, VsNCT Testing at Art of Healing Medicine, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Art of Healing Medicine, P.C., Defendant A. Pinkusovich fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value.   A representative sample of claims in which Defendant A. Pinkusovich knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "W."

94.     Defendant Svetlana Pinkusovich, M.D. ("S. Pinkusovich") is a natural person residing in the State of New York, licensed to practice medicine in the State of New York under license number 202567 issued by the New York State Education Department on or about April 3, 1996, and is the listed owner of Art of Healing Medicine, P.C.

95.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant S. Pinkusovich

purportedly performed, or caused to be performed, VsNCT Testing at Art of Healing Medicine, P.C. that she knew or should have known was medically unnecessary and of no diagnostic value. Through Art of Healing Medicine, P.C., Defendant S. Pinkusovich fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant S. Pinkusovich knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "W."

96.     Defendant Nicolette Merav Sadees, M.D. ("Sadees") is a natural person residing in the State of Florida, licensed to practice medicine in the State of New York under license number 247072 issued by the New York State Education Department on or about December 17, 2007, and is the listed owner of M. Sadees M.D. P.C.

97.     On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Sadees purportedly performed, or caused to be performed, VsNCT Testing at M. Sadees M.D. P.C. that she knew or should have known was medically unnecessary and of no diagnostic value. Through M. Sadees M.D. P.C., Defendant Sadees fraudulently billed and received payments from Allstate for VsNCT Testing which was never rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Sadees knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "X."

98.     Defendant Victor Scarborough, D.C. ("Scarborough") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New

York under license number 009769 issued by the New York State Education Department on or about May 17, 2000, and is the listed owner of Atlas Orthogonal Chiropractic, P.C.

99. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Scarborough purportedly performed, or caused to be performed, VsNCT Testing at Atlas Orthogonal Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Atlas Orthogonal Chiropractic, P.C., Defendant Scarborough fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Scarborough knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "Y."

100. Defendant Mark Soffer, D.C. ("Soffer") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 006437 issued by the New York State Education Department on or about September 27, 1990, and is the listed owner of Northshore Chiropractic Diagnostics, P.C.

101. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Soffer purportedly performed, or caused to be performed, VsNCT Testing at Northshore Chiropractic Diagnostics, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Northshore Chiropractic Diagnostics, P.C., Defendant Soffer fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Soffer knowingly submitted bills to

Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "Z."

102. Defendant Alexander Veder, M.D. ("Veder") is a natural person residing in the State of New Jersey, licensed to practice medicine in the State of New York under license number 207274 issued by the New York State Education Department on or about July 1, 1997, and is the listed owner of Avicenna Medical Arts, P.L.L.C

103. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Veder purportedly performed, or caused to be performed, VsNCT Testing at Avicenna Medical Arts, P.L.L.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Avicenna Medical Arts, P.L.L.C., Defendant Veder fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Veder knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "AA."

104. Defendant Narcisse Versailles, M.D. ("Versailles") is a natural person residing in the State of New York, licensed to practice medicine in the State of New York under license number 126720 issued by the New York State Education Department on or about March 5, 1976, and is the listed owner of White Plains Medical Care, P.C.

105. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Versailles purportedly performed, or caused to be performed, VsNCT Testing at White Plains Medical Care, P.C. that he knew or should have known was medically unnecessary and of

no diagnostic value. Through White Plains Medical Care, P.C., Defendant Versailles fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Versailles knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "BB."

106.    Defendant Guy Villano, D.C. ("Villano") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 006003 issued by the New York State Education Department on or about October 6, 1989, and is the listed owner of Supreme Health Chiropractic, P.C.

107.    On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Villano purportedly performed, or caused to be performed, VsNCT Testing at Supreme Health Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Supreme Health Chiropractic, P.C., Defendant Villano fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Villano knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "CC."

108.    Defendant Melanie Walcott, D.C. ("Walcott") is a natural person residing in the State of New Jersey, licensed to practice chiropractic in the State of New York under license number 011377 issued by the New York State Education Department on or about February 8, 2007.

109. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Walcott purportedly performed, VsNCT Testing that she knew or should have known was medically unnecessary and of no diagnostic value, and fraudulently billed and received payments from Allstate for such VsNCT Testing which was never rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Walcott knowingly submitted bills to Allstate for VsNCT Testing that was never rendered as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibit "DD."

110. Defendant Yakov Zilberman, D.C. ("Zilberman") is a natural person residing in the State of New York, licensed to practice chiropractics in the State of New York under license number 010723 issued by the New York State Education Department on or about July 30, 2003, and is the listed owner of Golden Hands Chiropractic, P.C. and BSZ Chiropractic, P.C.

111. On information and belief, in furtherance of the scheme to defraud alleged herein and as a matter of practice, procedure and protocol, Defendant Zilberman purportedly performed, or caused to be performed, VsNCT Testing at Golden Hands Chiropractic, P.C. and BSZ Chiropractic, P.C. that he knew or should have known was medically unnecessary and of no diagnostic value. Through Golden Hands Chiropractic, P.C. and BSZ Chiropractic, P.C., Defendant Zilberman fraudulently billed and received payments from Allstate for VsNCT Testing which was not rendered as billed, medically unnecessary and/or of no diagnostic value. A representative sample of claims in which Defendant Zilberman knowingly submitted bills to Allstate through Golden Hands Chiropractic, P.C. and BSZ Chiropractic, P.C. for VsNCT Testing that was never rendered

31

as billed, medically unnecessary and/or of no diagnostic value is annexed hereto as Exhibits "EE" and "FF," respectively.

## C.  Defendant PCs

112.  A & F Medical P.C. ("A & F Medical") was incorporated on or about May 6, 2011, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1204 Avenue U, Suite 1095, Brooklyn, New York 11229.

113.  On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, A & F Medical fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

114.  Advanced Chiropractic of New York, P.C. ("Advanced Chiropractic") was incorporated on or about February 19, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 71 Arden Avenue, Staten Island, New York 10312.

115.  On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Advanced Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

116.  Alignment Chiropractic Care, P.C. ("Alignment Chiropractic") was incorporated on or about July 14, 2009, and is a professional corporation authorized to do

business in the State of New York, with its principal place of business located at 6214 24th Avenue, 1st Floor, Brooklyn, New York 11204.

117. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Alignment Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

118. Art of Healing Medicine, P.C. ("Art of Healing") was incorporated on or about April 3, 2000 and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 8712 4th Avenue, Brooklyn, New York 11209.

119. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Art of Healing fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

120. Atlas Orthogonal Chiropractic, P.C. ("Atlas Orthogonal") was incorporated on or about April 11, 2003 and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 2 Prospect Street, Saugerties, New York 12477.

121. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Atlas Orthogonal fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing

that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

122. Avicenna Medical Arts, PLLC ("Avicenna Medical") was incorporated on or about June 18, 2009, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 4419 Third Avenue, Suite 3A. Bronx, New York 10457.

123. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Avicenna Medical fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

124. AVM Chiropractic, P.C. ("AVM Chiropractic") was incorporated on or about November 17, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1786 Flatbush, Avenue, Brooklyn, New York 11210.

125. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, AVM Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

126. Big Apple Chiropractic, P.C. ("Big Apple Chiropractic") was incorporated on or about July 10, 2009, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 4181 Bedford Avenue, Brooklyn, New York 11229.

127. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Big Apple Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

128. Bronx-Metro Chiropractic Health Services, P.C. ("Bronx-Metro Chiropractic") was incorporated on or about April 13, 2011 and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 2432 Grand Concourse, Suite 501, Bronx New York 10468.

129. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Bronx-Metro Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

130. BSZ Chiropractic, P.C. ("BSZ Chiropractic") was incorporated on or about June 30, 2009, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 8855 Bay Parkway, Suite 6K, Brooklyn, New York 11214.

131. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, BSZ Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

132. Dedicated Chiropractic, P.C. ("Dedicated Chiropractic") was incorporated on or about October 15, 2002, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 2390 Morgan Avenue, Bronx, New York 10469.

133. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Dedicated Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

134. Dumont Medical Diagnostics, P.C. ("Dumont Medical") was incorporated on or about August 20, 2009, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 41 Dumont Avenue, Suite 1A, Staten Island, New York 10305.

135. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Dumont Medical fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

136. Dynasty Medical Care, P.C. ("Dynasty Medical") was incorporated on or about August 23, 1999, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 68 South Service Road, Suite 100, Melville, New York 11747.

137. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Dynasty Medical fraudulently billed and

received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

138. Elmont Wellness Chiropractic, P.C. ("Elmont Wellness") was incorporated on or about April 21, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 762 Elmont Road, Elmont, New York 11003.

139. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Elmont Wellness fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

140. Flow Chiropractic, P.C. ("Flow Chiropractic") was incorporated on or about September 16, 2008, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1975 Linden Boulevard, Elmont, New York 11003.

141. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Flow Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

142. Golden Hands Chiropractic, P.C. ("Golden Hands") was incorporated on or about July 7, 2004, and is a professional corporation authorized to do business in the

State of New York, with its principal place of business located at 8855 Bay Parkway, Brooklyn, New York 11214.

143.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Golden Hands fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

144.    Great Health Care Chiropractic, P.C. ("Great Health Care") was incorporated on or about January 8, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 2911 Surf Avenue, Brooklyn, New York 11224.

145.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Great Health Care fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

146.    Heights Chiropractic Services, P.C. ("Heights Chiropractic") was incorporated on or about August 9, 2000, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 652 Grandview Avenue, Ridgewood, New York 11385.

147.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Heights Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing

that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

148.     M. Sadees M.D. P.C. ("M. Sadees") was incorporated on or about September 9, 2009, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1615 East 2nd Street, Brooklyn, New York 11230.

149.     On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, M. Sadees fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

150.     New Beginning Chiropractic, P.C. ("New Beginning") was incorporated on or about May 14, 2009 and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 2801 East 11th Street, Brooklyn NY 11235.

151.     On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, New Beginning fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

152.     No More Pain Chiropractic, P.C. ("No More Pain") was incorporated on or about October 29, 2008 and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1 Fulton Avenue, Suite #10, Hempstead, NY 11550.

153. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, No More Pain fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

154. Northshore Chiropractic Diagnostics, P.C. ("Northshore Chiropractic Diagnostics") was incorporated on or about April 27, 2007 and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 38 Long Ridge Road, Plainview, NY 11803.

155. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Northshore Chiropractic Diagnostics fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

156. Power Chiropractic, P.C. ("Power Chiropractic") was incorporated on or about January 13, 2009, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 145 East 98th Street, Brooklyn, New York 11212.

157. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Power Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

158.    Priority Medical Diagnostics, P.C. ("Priority Medical") was incorporated on or about September 1, 2009, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1864 Clove Road, Staten Island, New York 10304.

159.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Priority Medical fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

160.    RB Chiropractic Care, P.C. ("RB Chiropractic") was incorporated on or about January 8, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1780 77th Street, Brooklyn, New York 11214.

161.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, RB Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

162.    Richmond Medical Diagnostics, P.C. ("Richmond Medical') was incorporated on or about March 11, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 186 Robin Road, Staten Island, NY 10305.

163.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Richmond Medical fraudulently billed and

received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

164. Supreme Health Chiropractic, P.C. ("Supreme Health") was incorporated on or about March 16, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 446 East 149th Street, Bronx, New York 10455.

165. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Supreme Health fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

166. True-Align Chiropractic Care, P.C. ("True-Align Chiropractic") was incorporated on or about January 29, 2008 and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 961 East 174th Street, Bronx, New York 10460.

167. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, True-Align Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

168. Way To Health Chiropractic, P.C. ("Way To Health Chiropractic") was incorporated on or about September 18, 2009, and is a professional corporation

authorized to do business in the State of New York, with its principal place of business located at 1484 Deer Park Avenue, North Babylon, New York 11703.

169. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Way To Health Chiropractic fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

170. White Plains Medical Care, P.C. ("White Plains Medical Care") was incorporated on or about May 24, 2010, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located at 1967 Turnbull Avenue, Bronx, New York 10473.

171. On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, White Plains Medical Care fraudulently billed and received payment from insurers, in general, and Allstate, in particular, for VsNCT Testing that it knew or should have known was not rendered as billed, medically unnecessary and/or of no diagnostic value.

## JURISDICTION AND VENUE

172. The jurisdiction of the Court arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.; 28 U.S.C. §§ 1331; and principles of pendent jurisdiction.

173. The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a), and the claim for declaratory relief based upon 28 U.S.C. § 2201 and § 2202.

174. Venue lies in this District Court under the provisions of 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## FACTUAL BACKGROUND

175. Allstate underwrites automobile insurance in New York State and participates as an insurer in New York State's No-fault program.

176. Under the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, Ins. Law §§ 5101, *et seq.*, Allstate is required to pay, *inter alia*, for health service expenses that are incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians ("Covered Persons") that arise from the use or operation of such motor vehicles in the State of New York.

177. On information and belief, the Defendants purportedly provided VsNCT Testing to Covered Persons in exchange for assignments of benefits, and submitted claims for payment to No-fault insurance carriers, in general, and to Allstate, in particular for such services.

178. In purported compliance with the No-fault Law and 11 NYCRR 65 et seq., the Defendants submitted proof of their claims to Allstate using a Health Insurance Claim Form 1500 (known as a "HCFA 1500 form") or a substantially similar form.

179. On information and belief, pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Allstate by the Defendants contained the following (or substantially similar) warning on the back of the claim form:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of

44

> misleading, information concerning any fact material thereto, may be guilty of a criminal act punishable under law and may be subject to civil penalties.

180. Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Allstate is required to promptly process claims within 30 days of receipt of the proof of claim.

181. To fulfill its obligation to promptly process claims, Allstate justifiably relied upon the bills and documentation submitted by Defendants in support of their claims, and paid Defendants based on the representations and information that Defendants submitted to Allstate.

182. On information and belief, the Defendant PCs and/or Defendant Licensed Healthcare Professionals were the centerpieces of parallel and related schemes to fraudulently bill No-fault insurance carriers for VsNCT Testing that was never provided as billed, medically unnecessary and/or of no diagnostic value.

183. On information and belief, to maximize profits, the Defendant Licensed Healthcare Professionals, either individually or through their respective Defendant PCs, billed for VsNCT Testing that was medically unnecessary and/or of no diagnostic value, and based thereon, submitted to Plaintiffs medical reports that contained false data and material misrepresentations that were misleading and intended to defraud Allstate.

184. On information and belief, in furtherance of the scheme to defraud alleged herein, the Defendant Licensed Healthcare Professionals ordered, performed and/or caused to be performed, for their economic benefit, VsNCT Testing for Covered Persons, and submitted medical records, reports and bills to Allstate wherein they falsely represented that the billed for services yielded medically valid diagnoses when, in fact, they were of no diagnostic value.

185. At all relevant times mentioned herein, the Defendant PCs were illegal enterprises that engaged in systematic and pervasive fraudulent practices.

186. On information and belief, Defendant Walcott perpetrated her scheme to defraud in a virtually identical manner to the other Defendant Licensed Healthcare Professionals named herein, except that she submitted bills to Allstate directly under her individual name rather than through an associated professional corporation.

187. On information and belief, irrespective of whether the Defendant Licensed Healthcare Professionals submitted bills to Allstate under their own names or through an associated Defendant PC, each Defendant Doctor followed substantially similar practices that were part of a racketeering scheme that distinguished them from legitimate healthcare providers:

- Unlike legitimate medical providers, one or more of the Defendant Licensed Healthcare Professionals misrepresented the existence or severity of injuries that a Covered Person may have had;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals routinely submitted medical reports to Allstate which contained identical diagnoses for different patients, almost always indicative of abnormal nerve sensation regardless of a Covered Person's age, gender, medical history, individual mechanism of injury, subjective and objective findings, progress or medical condition;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals routinely submitted claims for VsNCT Testing from which no useful medical information could be derived, and submitted false medical reports in support of those services;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals routinely submitted medical reports to Allstate which misrepresented that the VsNCT Testing Devices detected the activation of Covered Peron's nerve's A-Delta fibers, when they did not;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals who utilized the Axon-II Device routinely submitted medical reports to Allstate which misrepresented that the Potentiometer obtained and recorded the necessary information required to perform a medically useful analysis of a nerve's compound action potential, when it did not;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals who utilized the Axon-II Device routinely submitted medical reports to Allstate which misrepresented that the Potentiometer measured the response of Covered Persons' nerve's A-Delta fibers, when it did not.

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals fraudulently claimed that the VsNCT Testing which they purportedly performed on Covered Persons introduced a continuous stimulus at 250 Hz in order to selectively stimulate A-Delta fibers, when if fact, it is impossible to selectively stimulate the A-Delta fibers using a 250 Hz stimulus;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals intentionally misrepresented, exaggerated and falsified the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals established and followed a fraudulent protocol for the VsNCT Testing of Covered Persons, irrespective of medical necessity;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals routinely fabricated and submitted fraudulent documentation to insurers for payment which contained material misrepresentations and/or reflected billing for services that were never rendered and/or not rendered as billed;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals routinely failed to include any justification for VsNCT Testing in the initial visit diagnostic impressions of Covered Persons who purportedly received the testing;

- Unlike legitimate medical providers, one or more of the Defendant Licensed Healthcare Professionals routinely misrepresented that VsNCT Testing allows early targeted intervention before morbidity can jeopardize outcome, when it does not;

- Unlike legitimate reports prepared by medical providers, virtually every VsNCT Testing report generated by the Defendant Licensed Healthcare Professionals yielded abnormal results with the Covered Persons having sensory defects;

- Unlike legitimate medical providers, rather than perform a valid test according to prevailing standards of medical care as they must, or refer to a legitimate practitioner, the Defendant Licensed Healthcare Professionals performed invalid and bogus VsNCT Testing which willfully misrepresented medical facts and potentially endangered Covered Persons;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals submitted bills to Allstate wherein they, with the intent to deceive Allstate and induce payment as a result thereof, falsely misrepresented the services reflected therein;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals knowingly and falsely represented in bills submitted to Allstate that they performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact, no such studies were performed;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals knowingly and materially misrepresented the nature of VsNCT Testing by billing it under CPT code 95904 when that code can only be used in connection with standard Sensory Nerve Conduction Studies that meet the generally accepted criteria as defined by AMA;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals knowingly and materially misrepresented that they used the VsNCT Testing Devices to measure and record the amplitude, latency and velocity of Covered Persons' nerve responses, notwithstanding that the VsNCT Testing Devices are incapable of measuring those parameters;

48

- Unlike legitimate medical providers, one or more of the Defendant Licensed Healthcare Professionals, with the intent to deceive Allstate and induce payment as a result thereof, falsely misrepresented that Federal Medicare guidelines list VsNCT Testing as reasonable and necessary, when they do not;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals allowed and facilitated the generation of fictitious medical records and bills that were submitted to Allstate under their names or in association with one or more of the Defendant PCs;

- Unlike legitimate medical providers, the Defendant Licensed Healthcare Professionals ordered and/or performed VsNCT Testing for Covered Persons and signed and/or authorized their signature stamp to be applied to boilerplate medical records, reports and bills for services that were materially misrepresented, never rendered, or of no diagnostic and/or treatment;

188. In these and numerous other ways, the Defendant Licensed Healthcare Professionals and/or Defendant PCs sought to deceive Allstate into paying fraudulent medical claims that typically exceeded thousands of dollars per patient.

189. To carry out their schemes, the Defendant Licensed Healthcare Professionals generated bogus reports and bills for VsNCT Testing that was purportedly rendered to persons involved in automobile accidents when, in fact, such services were not rendered as billed, medically unnecessary and/or of no diagnostic or treatment value.

190. On information and belief, Defendants utilized a bogus report generation and billing apparatus that was designed to exploit the No-fault laws and regulations, and in the process, drain the maximum amount of dollars from insurance companies for each and every Covered Person, regardless of whether any testing was required at all.

## THE MECHANICS OF THE SCHEME TO DEFRAUD

191. In furtherance of Defendants' fraudulent billing schemes, individuals who were purportedly involved in automobile accidents in which they ostensibly sustained

49

soft-tissue injuries would present to one of the Defendant Licensed Healthcare Professionals and/or Defendant PCs where the Defendants would purportedly perform VsNCT Testing in order to ostensibly diagnose peripheral neuropathies which may have resulted from the Covered Persons' alleged accident.

192. On information and belief, regardless of the nature or extent of a Covered Persons' alleged injuries, the VsNCT Testing purportedly performed by Defendants would automatically trigger the internal generation of bogus reports and billing practices and procedures, regardless of whether such tests were actually performed or medically necessary.

193. On information and belief, because the VsNCT Testing purportedly performed by Defendants was of no diagnostic value, it had no medical utility in furtherance of the treatment of Covered Persons.

194. On information and belief, because the VsNCT Testing purportedly performed by Defendants was not medically necessary and/or of no diagnostic value, Defendants routinely failed to follow-up on the diagnoses reflected on the fraudulent documents they submitted to Allstate.

195. On information and belief, the bills and documentation submitted by the Defendants in support of their claims included fraudulent reports and records which (i) intentionally misrepresented, exaggerated and falsified the condition and test results of Covered Persons; (ii) intentionally misrepresented, exaggerated and falsified the clinical efficacy of VsNCT Testing for the treatment of Covered Persons; and (iii) intentionally misrepresented that the testing they purportedly performed was reimbursable pursuant to CPT Code 95904, when it was not.

## THE VsNCT TESTING SCHEME TO DEFRAUD

### A.    The Human Nervous System

196.    The human nervous system provides information about the environment through senses such as vision, hearing and sensation, and allows humans to operate within that environment by causing muscle movement. The central nervous system is composed of the brain and the spinal cord, and at each segment of the spinal cord, nerves emerge to form the peripheral nervous system, which extends throughout the body into the arms, legs, hands and feet.

197.    The peripheral nervous system is comprised of, *inter alia*, motor nerves, which carry signals from the brain to the muscles, causing them to contract, and sensory nerves, which inform us of our environment by allowing us to feel sensations such as touch, vibration, pain, and position.  Each nerve within the peripheral nervous system is itself a bundle of smaller nerve fibers, with each nerve fiber consisting of individual axons. Sensory axons are tube-like structures spanning the length of the nerve fiber, and are responsible for carrying electrical signals generated by the fibers up the spinal cord and into the brain.

198.    When a nerve is stimulated, for example, by an electric shock, the axons transmit an electrical signal along the length of the axon referred to as "evoked action potential."  When the voltage, or amplitude of the evoked action potential is recorded, that recording is referred to as "compound action potential," meaning, the sum of the evoked action potentials of each nerve fiber within the activated nerve.

199.    Sensory nerve fibers significantly vary in size, insulation (myelination) and corresponding speed of conduction. The nerve's largest and fastest fibers are known as A-Alpha and A-Beta fibers, both of which are responsible for carrying sensory

information to the brain related to touch, vibration and position. The majority of the other fibers in a typical nerve, however, are small, slow-conducting fibers that transmit feelings of pain. Some of these slow-conducting pain fibers are known as C-fibers, and the remainder are known as A-Delta fibers. A-Delta fibers are responsible for carrying the initial sharp, bright pain sensations to the brain. When sharp initial pain begins to fade, the subsequent dull aching or burning pain is carried by the C-fibers.

200.    On information and belief, at all relevant times mentioned herein, the Defendants purported to selectively stimulate a Covered Person's nerve's A-Delta fibers through VsNCT Testing in order to diagnose abnormalities within the nerves.

201.    The speed, or velocity with which a nerve fires is proportional to its diameter and the nature of its myelin covering.  Conversely, the intensity of an electrical stimulus required to cause a fiber to activate is inversely proportional to its diameter. Thus, the intensity of electrical shock required to excite the C or A-Delta pain fibers is at least four times that required to stimulate the significantly larger A-Beta fibers.

202.    The amount of external stimulus (amplitude) that must be applied to a nerve before it fires is different than the amplitude of the nerve's resulting compound action potential. The stimulus threshold is the amount of external electricity that must be delivered to a nerve fiber before it fires. In contrast, the amplitude of the nerve's compound action potential represents the strength of the nerve's response to that external shock.

203.    The other factor determining the susceptibility of a nerve fiber to fire, aside from the intensity of an external shock, is the distance of the fiber from the source of the shock. Fibers closer to the source of the shock receive more current, and therefore reach their stimulus threshold (*i.e.*, the amplitude required to generate a response) sooner

than the fibers on the opposite side of the nerve. As the amplitude of the stimulus is gradually increased, more of the fibers begin to activate until all of the fibers capable of activation, are activated.

204.    At the lowest amplitude level, the only fibers that activate are the large-diameter A-Alpha fibers. As the intensity of the stimulus increases, more A-Alpha, and some A-Beta (touch/pressure) fibers begin to activate.

205.    The point at which all the fibers including the smallest A-Delta and C-fibers are eventually activated is referred to as "maximal stimulation," meaning the point at which all functioning fibers within a nerve are being simultaneously activated.

206.    On information and belief, activation of the A-Delta fibers requires a level of stimulus that will be perceived by the subject as painful as opposed to the "slight tickle" called for in the VsNCT testing protocol.

207.    Standard neurological diagnostic devices (EMG/NCV machines) record the sensory nerve fiber's response to an external stimulus over a measured distance, from the stimulating electrode to the recording electrode placed at a measured distance away along the same peripheral sensory nerve pathway. Upon introduction of the stimulus, the action potentials of the faster conducting fibers speed ahead of the slower pain fibers over the predefined distance. During this process, the electrical activity of the faster fibers reach the recording electrode first which, in turn, allows for an assessment of the electrical contributions of each type of fiber as their evoked action potentials progressively reach the recording electrode.

208.    Specialized computer software allows for a visualization of the relative electrical contribution that each type of fiber has on the overall nerve's compound action potential. Because the A-Delta and C-fibers are the slowest, it takes the longest amount of

time for their electrical contribution to arrive at the distant recording electrode. Because of their small diameter and the tiny amount of their electrical contribution to the overall compound action potential, the contribution of the A-Delta and C pain fibers is virtually undetectable by the recording electrode on a standard EMG/NCV machine; their contribution can only be detected and measured by highly sensitive experimental equipment recording from electrodes placed directly within the sensory nerve.

209.    On information and belief, the VsNCT Testing Devices are incapable of selectively stimulating A-Delta fibers because at the frequency at which the VsNCT Testing Devices purport to operate (250 Hertz), both the A-Beta and A-Delta fibers are activated.

**B.    Diagnosing Nerve Abnormalities**

210.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Defendant Licensed Healthcare Professionals purportedly performed VsNCT Testing on the Covered Persons in order to diagnose nerve abnormalities.

211.    Abnormalities in the peripheral nerves are known as neuropathies. There are several methods for diagnosing the existence, nature, extent, and specific location of these abnormalities, including but not limited to standard Nerve Conduction Studies ("NCS") and Quantitative Sensory Testing ("QST").

212.    NCS are the standard and most widely accepted methods for testing the health and integrity of the peripheral nerves; that is, for recording the compound action potential resulting from an electrical stimulus.

213.    NCS are objective, non-invasive tests which typically involve stimulating the sensory nerve with an electric shock at one location and recording the nerve's compound action potential as it travels to a recording electrode placed over the same

nerve at a secondary location a measured distance away. As the shock is administered, the recording electrode at the distant location measures the nerve's change in electrical voltage resulting from the compound action potential, as evoked by the external stimulus. In order to maximize the amplitude of the compound action potential, the electrodiagnostician progressively increases the strength of the external stimulus until all of the fibers capable of stimulation are being stimulated (maximal or supra-maximal stimulation).

214.    The amount of electricity measured by the recording electrodes over time creates a nerve response waveform that is displayed on a computer monitor attached to the testing device. From the waveform, which is produced in real-time, the (i) amplitude, (ii) latency, and (iii) conduction velocity of the nerve's compound action potential can be measured.

215.    On information and belief, amplitude represents the amount of electricity generated by the nerve itself in response to the external stimulus; latency represents the time elapsed between initial stimulation of the fiber and the time at which the evoked action potential first arrives at the secondary recording electrode; and velocity represents the speed with which the electrical impulse travelled the measured distance. Based on the measurements, the electrodiagnostic specialist determines whether a peripheral neuropathy exists (or diagnoses peripheral neuropathy).

216.    Needle EMGs are another standard NCS that is used to evaluate motor nerve, but not sensory nerve, abnormalities. EMGs involve the insertion of needles into various muscles in order to measure electrical activity within each muscle. The sound and appearance of that activity is then compared with well-defined norms to detect the

existence of any motor neuropathies. For diagnostic purposes, EMGs and NCVs are typically performed together.

217.    On information and belief, CPT Code 95904 is reserved exclusively for sensory Nerve Conduction Velocity Testing.

218.    On information and belief, in order to be eligible for reimbursement under CPT Code 95904, the billed for electrodiagnostic test must measure a nerve's amplitude, latency configuration and velocity.

219.    Since a standard sensory NCS is capable of recording the configuration of the evoked action potential and measuring the amplitude and the velocity/latency of a nerve's response, those tests are reimbursable pursuant CPT Code 95904.

220.    On information and belief, at all relevant times mentioned herein, Nerve Conduction Studies capable of measuring the amplitude and the velocity/latency of a sensory nerve's response are the only type of neurological diagnostic testing reimbursable pursuant to CPT Code 95904.

221.    Separate and apart from NCS, Quantitative Sensory Testing ("QST"), also known as Sensory Nerve Conduction Testing ("sNCT"), is a form of testing which purports to diagnose sensory peripheral neuropathies by identifying areas of relative numbness by stimulating the skin with different intensities of stimulus and asking the subject to indicate when they feel the stimulus (a psychophysical response from the person being tested). QST is entirely dependent upon the subject's subjective, psychophysical recognition of a stimulus applied to a physical area.  When QST is performed with an electric device, it is often referred to as "Sensory Nerve Conduction Threshold Testing" ("sNCT Testing").

222.    Current Perception Threshold Testing ("CPT Testing") and VsNCT Testing are both forms of sNCT Testing which are performed by administering an electrical current to specific sites through electrodes placed on the surface of the skin, and identifying the minimum electrical stimulus necessary for the subject to perceive the stimulus and indicate that they feel the stimulus. These tests serve only to confirm the patient's subjective complaints of numbness and are not capable of providing any diagnostic information concerning the nature of the abnormalities in the nerves. They can be useful in the clinical setting to track the progression and severity of the patient's numbness in progressive conditions such as diabetic peripheral neuropathy.

223.    VsNCT Testing purports to measure the voltage intensity entering the body from the testing device, and consequently, the intensity of the stimulus necessary to elicit a discernable nerve impulse in order to purportedly diagnose peripheral neuropathies.

224.    On information and belief, QST devices, in general, and the VsNCT Testing Devices used by Defendants, in particular, are incapable of recording the configuration of the evoked response or of measuring the amplitude, latency or velocity of the subject's nerve response.

**C.    Background of the Medi-DX 7000 and Axon-II VsNCT Testing Devices**

225.    On information and belief, the Medi-DX 7000 ("Medi-DX") received FDA marketing clearance on or about December 1, 1997, for use as a Current Perception Threshold ("CPT") device.

226.    Food and Drug Administration (FDA) marketing clearance for the Medi-DX was predicated on, *inter alia*, statements by its manufacturer to the FDA that the Medi-DX: (i) was a device to be used as a diagnostic device for the quantitative detection

of sensory neurological impairment in any individual capable of communicating their perception of cutaneous sensation; and (ii) was essentially equivalent to the Neurometer, a different CPT device manufactured by Neurotron, Inc., which had FDA approval as an evoked response electrical stimulator used to apply an electrical stimulus to a patient by means of surface electrodes for the purpose of measuring the evoked response.

227.    On information and belief, to perform a test with the Medi-DX, an electrode is held against the subject's skin in a designated location, and the subject is directed to verbally indicate when they feel the "slightest tickle." If no sensation is felt by the subject, the intensity of the electrical current applied to the skin is increased by turning a dial on the Medi-DX until the subject indicates that they feel the electrical stimulus. The intensity of the electrical current applied by the Med-DX at the time the subject first indicates that they feel sensation is then manually recorded on a datasheet.

228.    As indicated by its FDA categorization as an evoked response stimulator, the Medi-DX does not, and can not, record or display the bioelectric signals produced by muscles or nerves or quantify any physiologic parameters. Instead, its only purpose is to stimulate the nerve and produce an evoked response. It does not actually measure the evoked response, and accordingly, does not allow for the diagnosis or prognosis of neuromuscular disease.

229.    Since the Medi-DX is incapable of measuring the evoked response of a nerve, as is necessary for the diagnosis or prognosis of neuromuscular disease, on or about July 8, 2003, the CMS issued a Memorandum in which it concluded, among other things, that testing performed with the Medi-DX is neither reasonable nor necessary for the diagnosis of sensory or peripheral neuropathies and is not reimbursable under the Medicare program using CPT Code 95904.

230. Subsequent to the 2003 CMS Memorandum, Neuro-Diagnostic Associates, the manufacturer of the Medi-DX, was renamed Pain-DX, Inc., and the Medi-DX device was rebranded as the "Axon-II." The Axon-II was marketed with a separate device called the "Neural-Scan Potentiometer" (or "Potentiometer").

231. On information and belief, with the exception of the bundling of the Potentiometer, the Medi-DX and the Axon-II are substantively identical.

232. On information and belief, the Neural-Scan Potentiometer sold with the Axon-II is an electrical voltage meter biofeedback device invented, designed and manufactured by The Prometheus Group. It is incapable, either when used alone or in tandem with the Medi-DX or Axon-II, of performing the essential components of a sensory nerve conduction study required by AMA pursuant to CPT Code 95904.

233. On information and belief, the Potentiometer is used by placing electrodes on a Covered Person's skin in designated locations for each testing site. As the Medi-DX or Axon-II stimulus is applied, a digital reading of the millivolts of such stimulus, plus other background noise is displayed on the Potentiometer.

234. On information and belief, in furtherance of the scheme to defraud alleged herein, the Potentiometer purports to display an increase in its reading of 20 millivolts or more just before the stimulus threshold when the patient perceives the "slight tickle," or purported current perception threshold stimulus of the A-Delta fiber. The 20 millivolts or more increase in the Potentiometer reading is purportedly a result of the additional current contributed by the activation of the A-Delta fibers to the sensory nerve compound action potential.

235. On information and belief, notwithstanding that the VsNCT Testing is supposed to elicit a response from a Covered Person's A-Delta pain fibers, the Axon-II

protocol requires that the patient receive an electrical stimulus characterized as no more than a "slight tickle."

236. On information and belief, the A-Delta fibers are not activated by an electrical stimulus that is only strong enough to be characterized by the Covered Person as no more than a "slight tickle," but require a stronger stimulus that the Covered Person will perceive as painful, and/or greater than a "slight tickle."

237. On information and belief, even if it could selectively detect activation of the A-Delta fibers, the Potentiometer is still incapable of obtaining, recording, or displaying any information related to the activation of the sensory nerve (*i.e.*, the sensory compound action potential) or the activation of the A-Delta fibers. It provides none of the essential information required to perform medically useful analysis of the action potential of a firing nerve.

238. On information and belief, detection of the action potential, even if it was possible with the Potentiometer, provides no information about the normality or abnormality of a Covered Person's A-Delta fibers. Furthermore, the Potentiometer uses only surface electrodes rather than intranural electrodes which are necessary to record the faint activity of the A-Delta fibers, assuming that the Potentiometer even has the electrical capabilities of such measurements, which it does not.

239. On information and belief, because the only "quantitative" element in the Medi-DX and Axon-II testing is the intensity of the stimulus according to the position of the stimulus dial on the machine, then recognition of the stimulus, with or without the Potentiometer, can only be considered a psychophysical test. It is a test that depends totally on the interaction between the application of a physical, graded stimulus to a

subject and the subject's corresponding identification of the minimum perception threshold (sensation) resulting from the stimulus.

240. On information and belief, the Axon-II System is incapable of measuring the stimulus thresholds of A-Delta fibers.

241. On information and belief, the Potentiometer is incapable of measuring the amplitude of the compound action potential that travels along a nerve.

242. On information and belief, even if the Potentiometer was capable of measuring the amplitude of the compound action potential that travels along a nerve, it is incapable of selectively measuring the compound action potential of A-Delta fibers.

243. At all relevant times mentioned herein, in furtherance of the scheme to defraud, the Defendants that utilized the Axon-II for the VsNCT Testing of Covered Persons falsely and fraudulently submitted boilerplate patient reports to Allstate which stated that the psychophysical response elicited by the Axon-II was verified by the Potentiometer.

244. On information and belief, the VsNCT Testing performed by Defendants was psychophysical and excluded from coverage pursuant to CPT Code 95904, as the measurements on which a subject's report is based requires the presentation of graded stimuli and the psychophysiological perception by the patient of the stimulus.

245. At all relevant times mentioned herein, the VsNCT Testing purportedly performed by the Defendants was not reimbursable pursuant to CPT Code 95904.

**D.    Fraudulent Billing using CPT Code 95904**

246. Pursuant to Section 5108 of the Insurance Law, the New York State Department of Financial Services, formerly the Department of Insurance, has adopted the Official New York Workers' Compensation Board Medical Fee Schedule ("Fee

Schedule"), which sets forth the charges for professional health services that are reimbursable under the No-fault Law. The Fee Schedule incorporates the CPT codes, as well as the coding rules and regulations, published by the American Medical Association (the "AMA") in the Current Procedural Terminology ("CPT") Code Book. The CPT Code Book is the definitive medical source used by licensed medical professionals to accurately describe, among other things, medical and diagnostic services performed and billed to third-party payors, such as insurance companies.

247.   On information and belief, at all relevant times mentioned herein, the Defendants, as a matter of procedure, practice, and protocol, routinely and fraudulently billed Plaintiffs for VsNCT Testing purportedly performed on Covered Persons using CPT Code 95904, which is the CPT code for a "Nerve conduction, amplitude and latency/velocity study, each nerve; sensory", or a sensory nerve conduction velocity study. In the CPT Assistant of April 2002, the following description of the procedures necessary for CPT Code 95904 was given:

> Sensory NCSs (95904) are performed by applying electrical stimulation near a nerve and recording the response from a distant site along the nerve. Response parameters include amplitude, latency, configuration, and Sensory conduction velocity.

248.   In addition, the AMA specifies that NCS reports should document the nerves evaluated, the distance between the stimulation and recording sites, conduction velocity, latency values and amplitude. On information and belief, none of these five essential elements that define a valid nerve conduction study is optional, and failure to measure and document all of these essential parameters makes a study ineligible for billing under CPT Code 95904.

249.    On or about February 14, 2002, the CMS issued a Decision Memorandum ("the 2002 Memorandum") setting forth the basis for its decision to issue a Non-Coverage Decision concerning the ineffectiveness of QST, in general, and QST performed using a CPT device manufactured by Neurotron and known as a Neurometer, in particular.  The 2002 Memorandum determined that QST is neither reasonable nor necessary for the diagnosis of sensory or peripheral neuropathies because it is not clinically effective, and for that reason, its use is not covered under the Medicare program.

250.    On or about July 8, 2003, CMS issued a second Decision Memorandum ("the 2003 Memorandum") reaffirming the conclusions it reached in 2002 regarding the Neurometer, and expanding the scope of such conclusions to specifically include VsNCT Testing performed with the Medi-DX.  The Non-Coverage Decision formally memorializing the 2003 Memorandum became effective on April 1, 2004.

251.    With regard to VsNCT Testing, in general, and VsNCT Testing performed with the Medi-DX in particular, the 2003 Memorandum determined, among other things, that: (i) CPT Code 95904 is reserved only for standard NCS; (ii) QST, in general, and VsNCT Testing, in particular, is incapable of providing information on the amplitude, latency or velocity of a nerve response such as is provided during a standard NCS; and (iii) there is no evidence to suggest that VsNCT Testing is reasonable and/or necessary for diagnosing sensory or peripheral neuropathies.

252.    On information and belief, effective July 1, 2005, the AMA assigned CPT Category III Code 0110T to VsNCT Testing.  Category III codes are a set of temporary codes that allow for data collection on emerging technology, services and procedures.

These codes are intended to be used for data collection to substantiate widespread usage or to provide documentation for the FDA approval process.

253. On information and belief, the assignment of a Category III Code to a procedure does not imply or endorse clinical efficacy of that procedure, and the Fee Schedule provides that all Category III Codes are "By Report" (BR) procedures, meaning that to the extent that a Category III procedure is reimbursable, an "operative report" of the procedure is required.

254. On information and belief, the Fee Schedule mandates that bills for Category III procedures not accompanied by the required operative report are to be deemed not properly submitted, unless and until an operative report is received by the payer.

255. On or about January 7, 2008, CMS reiterated and clarified that VsNCT Testing must be billed using CPT Category III 0110T, and not using CPT Code 95904.

256. Moreover, the AMA provided further clarification in the May, 2011 edition of the CPT Assistant, wherein it unambiguously indicated that billing under CPT Code 95904 requires measurement of the subject's amplitude, latency and velocity, none of which the VsNCT Testing Devices can measure.

257. At all relevant times mentioned herein, Defendants AVM Chiropractic, Big Apple Chiropractic, Great Health Care Chiropractic, M. Sadees and New Beginning Chiropractic falsely and fraudulently misrepresented that the Axon-II System objectively measured amplitude so that they could bill pursuant to CPT Code 95904, when in fact, the VsNCT Testing Devices' internal analyses are based purely on a reading of the intensity of the external shock being introduced from a device, and not the objective

amplitude of the nerve's compound action potential resulting from that external shock, as is required to bill under CPT Code 95904.

258.    On information and belief, the Defendants, with the intent to fraudulently induce Plaintiffs into reimbursing the maximum amount of dollars for unnecessary VsNCT Testing, billed Plaintiffs for such services using CPT Code 95904, when in fact, such services, if reimbursable at all, were required to be billed pursuant to CPT Category III Code 0110T.

**E.      Unnecessary VsNCT Testing And Fraudulent Misrepresentations**

259.    On information and belief, the Defendants, as a matter of practice, protocol and procedure, intentionally billed Plaintiffs for VsNCT Testing to maximize reimbursement from Allstate notwithstanding that the billed for services were medically unnecessary and/or of no diagnostic value.

260.    On information and belief, VsNCT Testing is not required for the diagnosis or treatment of injuries caused by motor vehicle accidents, such as radiculopathy, plexopathy and nerve entrapment, all which can be diagnosed with the standard methods of neurological examination and/or standard EMG/NCV testing.

261.    On information and belief, the only conceivable circumstance in which objective quantitative assessment of sensory function might be medically necessary is tracking progressive neurologic diseases that target the sensory nerves such as diabetes or leprosy, and even in those cases, there are well-accepted and standardized methods of quantitatively tracking sensory function that does not require the VsNCT Testing Devices.

262.    On information and belief, the Defendants, as a matter of practice, protocol and procedure, routinely performed medically unnecessary VsNCT Testing on

Covered Persons notwithstanding that the Covered Persons' initial diagnostic impressions did not include any diagnosis of neuropathy, or disease that typically cause neuropathy.

263.    On information and belief, Defendants sought reimbursement of No-fault benefits from Allstate through the submission of medical records, reports and bills which contained false and material misrepresentations as to medical necessity of the VsNCT Testing and the actual services rendered.

264.    On information and belief, in order to obfuscate the fact that the billed for VsNCT Testing was medically unnecessary, not rendered as billed and/or of no diagnostic value, Defendants made material misrepresentations in documentation submitted in support of their claims for reimbursement.

265.    By way of example and not limitation, one or more Defendants, including but not limited to Defendants Walcott, Mandracchia, Vinokurova, Sidhwani, Veder, Scarborough, Villano, Gorukanti, Nour, Sadees, Nersesov, Gorelik, Garcia, Cutler, Fennelli, and Zilberman, through one or more of the Defendants PCs, including but not limited to Elmont Wellness Chiropractic, Big Apple Chiropractic, Art of Healing Medicine, Avicenna Medical Arts, Atlas Orthogonal Chiropractic, Supreme Health Chiropractic, Richmond Medical, Priority Medical, No More Pain, M. Sadees, New Beginning Chiropractic, Heights Chiropractic Services, Bronx Metro Chiropractic, Alignment Chiropractic, and BSZ Chiropractic, routinely included the following false statement, or a substantially similar false statement of material fact in reports submitted to Plaintiffs is support of claims for reimbursement of VsNCT Testing:

> Federal Medicare guidelines list voltage-amplitude sensory nerve conduction threshold (VsNCT) as 'reasonable and necessary' in a wide variety of sensory conditions ranging from diabetic polyneuropathies and peripheral entrapment neuropathies to neck and back pain (radiculopathies).

266.     On information and belief, there are no Federal Medicare or other guidelines which list VsNCT Testing as reasonable and necessary to diagnose radiculopathies. To the contrary, the CMS Decision Memorandums specifically found that there is insufficient evidence to show that VsNCT Testing is capable of furthering a patient's diagnosis, or that its medical value has been verified by credible and reliable evidence.

267.     On information and belief, the Defendants' fraudulent statements that Federal Medicare guidelines confirm that VsNCT Testing is reasonable and necessary for the diagnosis of sensory neuropathies were intended to deceive Allstate and induce payment.

268.     By way of further example and not limitation, the Defendants, in furtherance of the scheme to defraud, fraudulently claimed that the VsNCT Testing which they purportedly performed introduced a continuous stimulus at 250 Hz in order to selectively stimulate A-Delta fibers. On information and belief, it is impossible to selectively stimulate the A-Delta fibers using a 250 Hz stimulus because, at that level, both the A-Beta and A-Delta fibers are being activated simultaneously.

269.     By way of further example and not limitation of the numerous misrepresentations and false statements made by the Defendants in furtherance of their scheme to defraud:

- The diagnostic impressions documented in the initial reports of Covered Persons purportedly examined by one or more of the Defendants, including but not limited to A & F Medical, Advanced Chiropractic Of New York, Alignment Chiropractic Care, Art of Healing Medicine, Atlas Orthogonal Chiropractic, Avicenna Medical Arts, AVM Chiropractic, Big Apple Chiropractic, Bronx-Metro Chiropractic Health Services, BSZ Chiropractic, Dumont Medical Diagnostics, Dynasty Medical Care, Elmont Wellness Chiropractic, Flow Chiropractic, Flow Chiropractic, Golden Hands Chiropractic, Great Health Care Chiropractic, Heights Chiropractic

Services, M. Sadees, New Beginning Chiropractic, No More Pain Chiropractic, Northshore Chiropractic Diagnostics, Power Chiropractic, Priority Medical Diagnostics, RB Chiropractic Care, Richmond Medical Diagnostics, Supreme Health Chiropractic, True-Align Chiropractic Care, Way To Health Chiropractic, White Plains Medical Care, and Melanie Walcott, routinely failed to include any differential diagnosis of neuropathy, or disease states that typically cause neuropathy. On information and belief, the failure of Defendants to include any differential diagnosis of neuropathy in their initial visit diagnostic impressions is indicative of the fact that VsNCT Testing, or any other testing to determine neuropathy, was not medically necessary, and that the VsNCT Testing was purportedly performed in furtherance of Defendants' scheme to defraud Allstate.

- Defendants, including but not limited to A & F Medical, Advanced Chiropractic of New York, Alignment Chiropractic Care, Art of Healing Medicine, Atlas Orthogonal Chiropractic, Avicenna Medical Arts, AVM Chiropractic, Big Apple Chiropractic, Bronx-Metro Chiropractic Health Services, BSZ Chiropractic, Dumont Medical Diagnostics, Elmont Wellness Chiropractic, Flow Chiropractic, Flow Chiropractic, Diagnostics, Great Health Care Chiropractic, Heights Chiropractic Services, New Beginning Chiropractic, No More Pain Chiropractics, Diagnostic, Power Chiropractic, Priority Medical Diagnostics, Care, Richmond Medical Diagnostics, Supreme Health Chiropractic, True-Align Chiropractic Care, Way To Health Chiropractic, White Plains Medical Care, and Melanie Walcott, routinely misrepresented in bogus medical reports submitted to Allstate in support of claims for reimbursement that sensory nerves are more vulnerable to injury than motor nerves. On information and belief, the foregoing statement is not true when dealing in cases of radiculopathy, such as purportedly diagnosed by these Defendants.

- Defendants, including but not limited to A & F Medical, Alignment Chiropractic Care, Art of Healing Medicine, Atlas Orthogonal Chiropractic, Avicenna Medical Arts, Big Apple Chiropractic, Bronx-Metro Chiropractic Health Services, BSZ Chiropractic, Dumont Medical Diagnostics, Elmont Wellness Chiropractic, Flow Chiropractic, Flow Chiropractic, Great Health Care Chiropractic, Heights Chiropractic Services, New Beginning Chiropractic, No More Pain Chiropractic, Northshore Chiropractic Diagnostics, Power Chiropractic, Priority Medical Diagnostics, Richmond Medical Diagnostics, Supreme Health Chiropractic, True-Align Chiropractic Care, Way To Health Chiropractic, White Plains Medical Care, and Melanie Walcott routinely misrepresented in bogus medical reports submitted to Allstate in support of claims for reimbursement that conventional EMG is limited mainly to the

more traumatically resistant large postganglionic motor fibers. On information and belief, motor nerves do not have postganglionic fibers, but instead consist of an anterior horn cell, the axon, and the motor end plates.

- Defendants, including but not limited to A & F Medical, Alignment Chiropractic Care, Art of Healing Medicine, Atlas Orthogonal Chiropractic, Avicenna Medical Arts, Big Apple Chiropractic, Bronx-Metro Chiropractic Health Services, BSZ Chiropractic, Dumont Medical Diagnostics, Elmont Wellness Chiropractic., Flow Chiropractic, Flow Chiropractic, Great Health Care Chiropractic, Heights Chiropractic Services, New Beginning Chiropractic, No More Pain Chiropractic, Northshore Chiropractic Diagnostics, Power Chiropractic, Priority Medical Diagnostics, Richmond Medical Diagnostics, Supreme Health Chiropractic, True-Align Chiropractic Care, Way To Health Chiropractic, White Plains Medical Care, and Melanie Walcott, routinely misrepresented in bogus medical reports submitted to Allstate in support of claims for reimbursement that one of the many advantages of VsNCT Testing is that it allows early targeted intervention before morbidity can jeopardize outcome. On information and belief, notwithstanding that most Covered Persons' VsNCT Testing results purported to show abnormalities, the Covered Persons' treatment after the billed for tests was virtually unchanged from their treatment prior to the tests, further indicative that the VsNCT tests were of no diagnostic value.

- Virtually every VsNCT Test report generated by Defendants, including but not limited to Advanced Chiropractic of New York, Alignment Chiropractic Care, Art of Healing Medicine, Atlas Orthogonal Chiropractic, Big Apple Chiropractic, Bronx-Metro Chiropractic Health Services, BSZ Chiropractic, Dedicated Chiropractic, Dumont Medical Diagnostics, Dynasty Medical Care, Elmont Wellness Chiropractic., Flow Chiropractic, Flow Chiropractic, Golden Hands Chiropractic, Great Health Care Chiropractic, Heights Chiropractic Services, M. Sadees, New Beginning Chiropractic, No More Pain Chiropractic, Power Chiropractic, Priority Medical Diagnostics, RB Chiropractic Care, Richmond Medical Diagnostics, Supreme Health Chiropractic, True-Align Chiropractic Care, Way To Health Chiropractic, White Plains Medical Care, and Melanie Walcott, yielded abnormal results with the Covered Persons having sensory defects. On information and belief, to have virtually all Covered Persons' results abnormal is so unlikely as to be impossible and medically incredible to the extent that such a diagnosis is a knowing material misrepresentation of the actual physical condition of these Covered Persons.

## DISCOVERY OF THE FRAUD

270.    Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from Plaintiffs, Plaintiffs did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before they filed this Complaint.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

## AGAINST ROBERT ALBANO

### (RICO, pursuant to 18 U.S.C § 1962(c))

271.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

273.    At all relevant times mentioned herein, Advanced Chiropractic of New York, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

274.    From in or about 2010 through the date of the filing of this Complaint, Albano conducted and participated in the affairs of the Advanced Chiropractic of New York, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

275.    At all relevant times mentioned herein, Albano participated in the affairs of the Advanced Chiropractic of New York, P.C. enterprise through a pattern of

racketeering activities that consisted of creating, submitting and/or causing to be submitted the hundreds of fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

276.    The racketeering acts set forth herein were carried out on a continued basis over more than a four year period, were related and similar, and were committed as part of Albano's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

277.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Advanced Chiropractic of New York, P.C. continues to pursue collection on the fraudulent billing to the present day.

278.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Albano caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, and to induce them to issue checks to the Advanced Chiropractic of New York, P.C. enterprise based upon materially false and misleading information.

279.    Through the Advanced Chiropractic of New York, P.C. enterprise, Albano submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and

71

supporting documents that were sent by and/or on behalf of Albano and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Albano engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Advanced Chiropractic of New York, P.C. enterprise through the filing of this Complaint.

280. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Albano in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

281. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

282. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

283. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $216,000.00, the exact amount to be determined at trial.

284. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Albano, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

## AGAINST ADVANCED CHIROPRACTIC OF NEW YORK, P.C. AND ROBERT ALBANO

### (Common Law Fraud)

285. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

286. Defendants Advanced Chiropractic of New York, P.C. and Robert Albano intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when, in fact, they were not, thereby inducing Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Albano, Advanced Chiropractic of New York, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

287. Defendants Advanced Chiropractic of New York, P.C. and Robert Albano intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

288.    Defendants Advanced Chiropractic of New York, P.C. and Robert Albano intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

289.    Defendants Advanced Chiropractic of New York, P.C. and Robert Albano intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

290.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered

Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

291.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

292.    The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company into believing that Albano, through Advanced Chiropractic of New York, P.C., was providing medically valid services when, in fact, he was not.

293.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

294.   Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

295.   Had Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Advanced Chiropractic of New York, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

296.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

297.   By reason of the foregoing, Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $216,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRD CLAIM FOR RELIEF

### AGAINST ADVANCED CHIROPRACTIC OF NEW YORK, P.C. AND ROBERT ALBANO

#### (Unjust Enrichment)

298.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

299.    By reason of their wrongdoing, Defendants Advanced Chiropractic of New York, P.C. and Robert Albano have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

300.    Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants Advanced Chiropractic of New York, P.C. and Robert Albano in the amount by which Defendants have been unjustly enriched.

301.    By reason of the foregoing, Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $216,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FOURTH CLAIM FOR RELIEF

### AGAINST PAUL SCAROROUGH

### (RICO, pursuant to 18 U.S.C § 1962(c))

302.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

303.    At all relevant times mentioned herein, Atlas Orthogonal Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

304.    From in or about 2003 through the date of the filing of this Complaint, Scarborough conducted and participated in the affairs of the Atlas Orthogonal Chiropractic, P.C enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

305.    At all relevant times mentioned herein, Scarborough participated in the affairs of the Atlas Orthogonal Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

306.   The racketeering acts set forth herein were carried out on a continued basis over more than a ten and a half year period, were related and similar, and were committed as part of Scarborough's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

307.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Atlas Orthogonal Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

308.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Scarborough caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company and to induce them to issue checks to the Atlas Orthogonal Chiropractic, P.C. enterprise based upon materially false and misleading information.

309.   Through the Atlas Orthogonal Chiropractic, P.C. enterprise, Scarborough submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Scarborough and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Scarborough engaged in a continuous series of predicate acts of

79

mail fraud, extending from the formation of the Atlas Orthogonal Chiropractic, P.C. enterprise through the filing of this Complaint.

310.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Scarborough in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

311.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

312.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

313.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $39,000.00, the exact amount to be determined at trial.

314.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are entitled to recover from Scarborough, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF

### AGAINST ATLAS ORTHOGONAL CHIROPRACTIC, P.C. AND PAUL SCARBOROUGH

### (Common Law Fraud)

315.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

316. Defendants Scarborough and Atlas Orthogonal Chiropractic, P.C. intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Scarborough, Atlas Orthogonal Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for payment.

317. Defendants Scarborough and Atlas Orthogonal Chiropractic, P.C. intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

318. Defendants Scarborough and Atlas Orthogonal Chiropractic, P.C. intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

319.    Defendants Scarborough and Atlas Orthogonal Chiropractic, P.C. intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, as opposed to medical necessity.

320.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

321. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

322. The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company into believing that Scarborough, through Atlas Orthogonal Chiropractic, P.C., was providing medically valid services when in fact he was not.

323. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to rely thereon.

324. Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

325.    Had Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Atlas Orthogonal Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

326.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

327.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $39,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTH CLAIM FOR RELIEF

## AGAINST ATLAS ORTHOGONAL CHIROPRACTIC, P.C. AND PAUL SCARBOROUGH

### (Unjust Enrichment)

328.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

329.    By reason of their wrongdoing, Defendants Scarborough and Atlas Orthogonal Chiropractic, P.C. have been unjustly enriched, in that they have, directly

and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

330.    Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Scarborough and Atlas Orthogonal Chiropractic, P.C. in the amount by which Defendants have been unjustly enriched.

331.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $39,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### SEVENTH CLAIM FOR RELIEF

### <u>AGAINST AUTUMN CUTLER</u>

### (RICO, pursuant to 18 U.S.C § 1962(c))

332.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### <u>THE RICO ENTERPRISE</u>

333.    At all relevant times mentioned herein, Bronx-Metro Chiropractic Health Services, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

334.    From in or about 2011 through the date of the filing of this Complaint, Cutler conducted and participated in the affairs of the Bronx-Metro Chiropractic Health

Services, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

335. At all relevant times mentioned herein, Cutler participated in the affairs of the Bronx-Metro Chiropractic Health Services, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

336. The racketeering acts set forth herein were carried out on a continued basis over more than a two and a half year period, were related and similar, and were committed as part of Cutler's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

337. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Bronx-Metro Chiropractic Health Services, P.C. continues to pursue collection on the fraudulent billing to the present day.

338. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Cutler caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate

Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Bronx-Metro Chiropractic Health Services, P.C. enterprise based upon materially false and misleading information.

339.    Through the Bronx-Metro Chiropractic Health Services, P.C. enterprise, Cutler submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Cutler and/or others acting under her direction and control, as well as the payments that Allstate made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Cutler engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Bronx-Metro Chiropractic Health Services, P.C. enterprise through the filing of this Complaint.

340.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Cutler in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

341.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

342.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

343.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $28,000.00, the exact amount to be determined at trial.

344.     Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Cutler, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### AGAINST BRONX-METRO CHIROPRACTIC HEALTH SERVICES, P.C. AND AUTUMN CUTLER

#### (Common Law Fraud)

345.     The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

346.     Defendants Bronx-Metro Chiropractic Health Services, P.C. enterprise and Cutler intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Cutler, Bronx-Metro Chiropractic Health Services, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

347.     Defendants Bronx-Metro Chiropractic Health Services, P.C. enterprise and Cutler intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-

fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

348. Defendants Bronx-Metro Chiropractic Health Services, P.C. enterprise and Cutler intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

349. Defendants Bronx-Metro Chiropractic Health Services, P.C. enterprise and Cutler intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

350. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

351.  On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

352.  The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Cutler, through Bronx-Metro Chiropractic Health Services, P.C., was providing medically valid services when in fact she was not.

353.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

354.   Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

355.   Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Bronx-Metro Chiropractic Health Services, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

356.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

357.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $28,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINTH CLAIM FOR RELIEF

### AGAINST BRONX-METRO CHIROPRACTIC HEALTH SERVICES, P.C. AND AUTUMN CUTLER

#### (Unjust Enrichment)

358. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

359. By reason of their wrongdoing, Defendants Bronx-Metro Chiropractic Health Services, P.C. enterprise and Cutler have been unjustly enriched in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

360. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Bronx-Metro Chiropractic Health Services, P.C. enterprise and Cutler in the amount by which Defendants have been unjustly enriched.

361. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $28,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TENTH CLAIM FOR RELIEF

### AGAINST CHARLES NGUYEN

#### (RICO, pursuant to 18 U.S.C § 1962(c))

362.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

363.    At all relevant times mentioned herein, Dedicated Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

364.    From in or about 2002 through the date of the filing of this Complaint, Nguyen conducted and participated in the affairs of the Dedicated Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

365.    At all relevant times mentioned herein, Nguyen participated in the affairs of the Dedicated Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

366.    The racketeering acts set forth herein were carried out on a continued basis over more than an eleven year period, were related and similar, and were committed as part of Nguyen's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

367.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Dedicated Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

368.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Nguyen caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Dedicated Chiropractic, P.C. enterprise based upon materially false and misleading information.

369.   Through the Dedicated Chiropractic, P.C. enterprise, Nguyen submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Nguyen and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Nguyen engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Dedicated Chiropractic, P.C. enterprise through the filing of this Complaint.

370.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Nguyen in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

371. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

372. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

373. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $86,000.00, the exact amount to be determined at trial.

374. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are entitled to recover from Nguyen, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ELEVENTH CLAIM FOR RELIEF

### AGAINST DEDICATED CHIROPRACTIC, P.C. AND CHARLES NGUYEN

### (Common Law Fraud)

375. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

376. Defendants Dedicated Chiropractic, P.C. and Nguyen intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty

Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Nguyen, Dedicated Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

377. Defendants Dedicated Chiropractic, P.C. and Nguyen intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

378. Defendants Dedicated Chiropractic, P.C. and Nguyen intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

379. Defendants Dedicated Chiropractic, P.C. and Nguyen intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

380. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports,

treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

381.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious

danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

382. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Nguyen, through Dedicated Chiropractic, P.C., was providing medically valid services when in fact it was not.

383. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

384. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

385. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Dedicated Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

386. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate

Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

387. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $86,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWELFTH CLAIM FOR RELIEF

## AGAINST DEDICATED CHIROPRACTIC, P.C. AND CHARLES NGUYEN

### (Unjust Enrichment)

388. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

389. By reason of their wrongdoing, Defendants Dedicated Chiropractic, P.C. and Nguyen have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

390. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Dedicated Chiropractic, P.C. and Nguyen in the amount by which Defendants have been unjustly enriched.

391. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in

excess of $86,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTEENTH CLAIM FOR RELIEF

## AGAINST AHMED ELSOURY

## (RICO, pursuant to 18 U.S.C § 1962(c))

392.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

393.    At all relevant times mentioned herein, Dumont Medical Diagnostics, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

394.    From in or about 2009 through the date of the filing of this Complaint, Elsoury conducted and participated in the affairs of the Dumont Medical Diagnostics, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

395.    At all relevant times mentioned herein, Elsoury participated in the affairs of the Dumont Medical Diagnostics, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire &

Casualty Insurance Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

396.    The racketeering acts set forth herein were carried out on a continued basis over a four and a half year period, were related and similar, and were committed as part of Elsoury's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

397.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Dumont Medical Diagnostics, P.C. continues to pursue collection on the fraudulent billing to the present day.

398.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Elsoury caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company and to induce them to issue checks to the Dumont Medical Diagnostics, P.C. enterprise based upon materially false and misleading information.

399.    Through the Dumont Medical Diagnostics, P.C. enterprise, Elsoury submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Elsoury and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company,

Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Elsoury engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Dumont Medical Diagnostics, P.C. enterprise through the filing of this Complaint.

400.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Elsoury in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

401.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

402.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

403.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $625,000.00, the exact amount to be determined at trial.

404.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Elsoury, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FOURTEENTH CLAIM FOR RELIEF

## AGAINST DUMONT MEDICAL DIAGNOSTICS, P.C. AND AHMED ELSOURY

### (Common Law Fraud)

405.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

406.    Defendants Dumont Medical Diagnostics, P.C. and Elsoury intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Elsoury, Dumont Medical Diagnostics, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company for payment.

407.    Defendants Dumont Medical Diagnostics, P.C. and Elsoury intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company, concealed the fact

that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

408. Defendants Dumont Medical Diagnostics, P.C. and Elsoury intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

409. Defendants Dumont Medical Diagnostics, P.C. and Elsoury intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

410. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction

Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

411. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

412. The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and

Allstate Fire & Casualty Insurance Company into believing that Elsoury, through Dumont Medical Diagnostics, P.C., was providing medically valid services when in fact he was not.

413.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

414.   Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

415.   Had Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Dumont Medical Diagnostics, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

416.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

417.   By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $625,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTEENTH CLAIM FOR RELIEF

## AGAINST DUMONT MEDICAL DIAGNOSTICS, P.C. AND AHMED ELSOURY

### (Unjust Enrichment)

418.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

419.   By reason of their wrongdoing, Defendants Dumont Medical Diagnostics, P.C. and Elsoury have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

420.   Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants Dumont Medical Diagnostics, P.C. and Elsoury in the amount by which Defendants have been unjustly enriched.

421.   By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Insurance Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in

their business and property in an amount as yet to be determined, but believed to be in excess of $625,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**SIXTEENTH CLAIM FOR RELIEF**

**AGAINST SOPHIA MOHUCHY**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

422.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

**THE RICO ENTERPRISE**

423.    At all relevant times mentioned herein, Flow Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

424.    From in or about 2008 through the date of the filing of this Complaint, Mohuchy conducted and participated in the affairs of the Flow Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

425.    At all relevant times mentioned herein, Mohuchy participated in the affairs of the Flow Chiropractic, P.C enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

426.    The racketeering acts set forth herein were carried out on a continued basis over a five and a half year period, were related and similar, and were committed as part of Mohuchy's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

427.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Flow Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

428.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Mohuchy caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate and to induce Allstate Insurance Company and Allstate Property & Casualty Company to issue checks to the Flow Chiropractic, P.C. enterprise based upon materially false and misleading information.

429.    Through the Flow Chiropractic, P.C. enterprise, Mohuchy submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Mohuchy and/or others acting under her direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Mohuchy engaged in a continuous series of predicate acts of mail fraud, extending from

109

the formation of the Flow Chiropractic, P.C. enterprise through the filing of this Complaint.

430.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Mohuchy in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

431.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

432.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

433.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $139,000.00, the exact amount to be determined at trial.

434.    Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Mohuchy, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SEVENTEENTH CLAIM FOR RELIEF

### AGAINST FLOW CHIROPRACTIC, P.C. AND SOPHIA MOHUCHY

### (Common Law Fraud)

435.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

436.    Defendants Flow Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and

Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Mohuchy, Flow Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

437. Defendants Flow Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

438. Defendants Flow Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

439. Defendants Flow Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate

Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

440.   On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

441.   On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate

Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

442.    The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Mohuchy, through Flow Chiropractic, P.C., was providing medically valid services when in fact she was not.

443.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

444.    Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

445.    Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Flow Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

446. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

447. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $139,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTEENTH CLAIM FOR RELIEF

## AGAINST FLOW CHIROPRACTIC, P.C. AND SOPHIA MOHUCHY

### (Unjust Enrichment)

448. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

449. By reason of their wrongdoing, Defendants Flow Chiropractic, P.C. and Mohuchy have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

450. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Flow Chiropractic, P.C. and Mohuchy in the amount by which Defendants have been unjustly enriched.

451. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $139,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## NINETEENTH CLAIM FOR RELIEF

## AGAINST ANDREW GARCIA

### (RICO, pursuant to 18 U.S.C § 1962(c))

452. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

453. At all relevant times mentioned herein, Heights Chiropractic Services, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

454. From in or about 2000 through the date of the filing of this Complaint, Garcia conducted and participated in the affairs of the Heights Chiropractic Services, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

455. At all relevant times mentioned herein, Garcia participated in the affairs of the Heights Chiropractic Services, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the

fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

456.    The racketeering acts set forth herein were carried out on a continued basis over a thirteen and a half year period, were related and similar, and were committed as part of Garcia's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

457.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Heights Chiropractic Services, P.C. continues to pursue collection on the fraudulent billing to the present day.

458.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Garcia caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Heights Chiropractic Services, P.C. enterprise based upon materially false and misleading information.

459.    Through the Heights Chiropractic Services, P.C. enterprise, Garcia submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Garcia and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company

and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Garcia engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Heights Chiropractic Services, P.C. enterprise through the filing of this Complaint.

460.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Garcia in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

461.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

462.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

463.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $34,000.00, the exact amount to be determined at trial.

464.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Garcia, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## TWENTIETH CLAIM FOR RELIEF

## AGAINST HEIGHTS CHIROPRACTIC SERVICES, P.C. AND ANDREW GARCIA

### (Common Law Fraud)

465. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

466. Defendants Heights Chiropractic Services, P.C. and Garcia intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Garcia, Heights Chiropractic Services, P.C. and Garcia made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for payment.

467. Defendants Heights Chiropractic Services, P.C. and Garcia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

468. Defendants Heights Chiropractic Services, P.C. and Garcia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company,

118

concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

469.    Defendants Heights Chiropractic Services, P.C. and Garcia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

470.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol

and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

471. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

472. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Garcia, through Heights Chiropractic Services, P.C., was providing medically valid services when in fact he was not.

473. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

474. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations,

which they were led to believe existed as a result of Defendants' acts of fraud and deception.

475.    Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Heights Chiropractic Services, P.C. and Garcia's claims for No-fault insurance benefits submitted in connection therewith.

476.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

477.    By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $34,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-FIRST CLAIM FOR RELIEF

## AGAINST HEIGHTS CHIROPRACTIC SERVICES, P.C. AND ANDREW GARCIA

### (Unjust Enrichment)

478.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

Case 1:14-cv-06756-JBW-MDG   Document 1   Filed 11/18/14   Page 122 of 302 PageID #: 122

479.   By reason of their wrongdoing, Defendants Heights Chiropractic Services, P.C. and Garcia have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

480.   Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Heights Chiropractic Services, P.C. and Garcia in the amount by which Defendants have been unjustly enriched.

481.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $34,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-SECOND CLAIM FOR RELIEF

### AGAINST MARK SOFFER

### (RICO, pursuant to 18 U.S.C § 1962(c))

482.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

483.   At all relevant times mentioned herein, Northshore Chiropractic Diagnostics, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

484.    From in or about 2007 through the date of the filing of this Complaint, Soffer conducted and participated in the affairs of the Northshore Chiropractic Diagnostics, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.   Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

485.    At all relevant times mentioned herein, Soffer participated in the affairs of the Northshore Chiropractic Diagnostics, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

486.    The racketeering acts set forth herein were carried out on a continued basis over more than a six and a half year period, were related and similar, and were committed as part of Soffer's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

487.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Northshore Chiropractic Diagnostics, P.C. continues to pursue collection on the fraudulent billing to the present day.

488.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Soffer caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.

The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Northshore Chiropractic Diagnostics, P.C. enterprise based upon materially false and misleading information.

489.    Through the Northshore Chiropractic Diagnostics, P.C. enterprise, Soffer submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Soffer and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Soffer engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Northshore Chiropractic Diagnostics, P.C. enterprise through the filing of this Complaint.

490.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Soffer in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

491.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

492.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

493.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in

their business and property and been damaged in the aggregate amount presently in excess of $917,000.00, the exact amount to be determined at trial.

494. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Soffer, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## TWENTY-THIRD CLAIM FOR RELIEF

## <u>AGAINST NORTHSHORE CHIROPRACTIC DIAGNOSTICS, P.C. AND MARK SOFFER</u>

### (Common Law Fraud)

495. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

496. Defendants Northshore Chiropractic Diagnostics, P.C. and Soffer intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Soffer, Northshore Chiropractic Diagnostics, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

497. Defendants Northshore Chiropractic Diagnostics, P.C. and Soffer intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing

fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

498.    Defendants Northshore Chiropractic Diagnostics, P.C. and Soffer intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

499.    Defendants Northshore Chiropractic Diagnostics, P.C. and Soffer intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company as opposed to medical necessity.

500.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction

Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

501. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

502. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Soffer, through

Northshore Chiropractic Diagnostics, P.C., was providing medically valid services when in fact he was not.

503.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

504.   Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

505.   Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Northshore Chiropractic Diagnostics, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

506.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

507.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in

excess of $917,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-FOURTH CLAIM FOR RELIEF

### AGAINST NORTHSHORE CHIROPRACTIC DIAGNOSTICS, P.C. AND MARK SOFFER

### (Unjust Enrichment)

508.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

509.   By reason of their wrongdoing, Defendants Northshore Chiropractic Diagnostics, P.C. and Soffer have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

510.   Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Northshore Chiropractic Diagnostics, P.C. and Soffer in the amount by which Defendants have been unjustly enriched.

511.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $917,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-FIFTH CLAIM FOR RELIEF

## AGAINST SOPHIA MOHUCHY

## (RICO, pursuant to 18 U.S.C § 1962(c))

512.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

513.   At all relevant times mentioned herein, Power Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

514.   From in or about 2009 through the date of the filing of this Complaint, Mohuchy conducted and participated in the affairs of the Power Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

515.   At all relevant times mentioned herein, Mohuchy participated in the affairs of the Power Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

516.   The racketeering acts set forth herein were carried out on a continued basis over more than a five year period, were related and similar, and were committed as part

130

of Mohuchy's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

517. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Power Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

518. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Mohuchy caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Power Chiropractic, P.C. enterprise based upon materially false and misleading information.

519. Through Power Chiropractic, P.C. enterprise, Mohuchy submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Mohuchy and/or others acting under her direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Mohuchy engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Power Chiropractic, P.C. enterprise through the filing of this Complaint.

520. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Mohuchy in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

521. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

522. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

523. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $59,000.00, the exact amount to be determined at trial.

524. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Mohuchy, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**TWENTY-SIXTH CLAIM FOR RELIEF**

**AGAINST POWER CHIROPRACTIC, P.C. AND SOPHIA MOHUCHY**

**(Common Law Fraud)**

525. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

526. Defendants Power Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that

the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Mohuchy, Power Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

527. Defendants Power Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

528. Defendants Power Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

529. Defendants Power Chiropractic, P.C. and Mohuchy intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

530.   On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

531.   On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false

representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

532.    The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Mohuchy, through Power Chiropractic, P.C. and Mohuchy, was providing medically valid services when in fact she was not.

533.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

534.    Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

535.    Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Power Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

536.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above,

has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

537.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $59,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-SEVENTH CLAIM FOR RELIEF

## AGAINST POWER CHIROPRACTIC, P.C. AND SOPHIA MOHUCHY

### (Unjust Enrichment)

538.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

539.   By reason of their wrongdoing, Defendants Power Chiropractic, P.C. and Mohuchy have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

540.   Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Power Chiropractic, P.C. and Mohuchy in the amount by which Defendants have been unjustly enriched.

541.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in

excess of $59,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**TWENTY-EIGHTH CLAIM FOR RELIEF**

**AGAINST MOHAMED NOUR**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

542.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

**THE RICO ENTERPRISE**

543.    At all relevant times mentioned herein, Priority Medical Diagnostics, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

544.    From in or about 2009 through the date of the filing of this Complaint, Nour conducted and participated in the affairs of the Priority Medical Diagnostics, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

545.    At all relevant times mentioned herein, Nour participated in the affairs of the Priority Medical Diagnostics, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire &

Casualty Insurance Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

546.     The racketeering acts set forth herein were carried out on a continued basis over more than a four and a half year period, were related and similar, and were committed as part of Nour's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

547.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Priority Medical Diagnostics, P.C. continues to pursue collection on the fraudulent billing to the present day.

548.     As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Nour caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company and to induce them to issue checks to the Priority Medical Diagnostics, P.C. enterprise based upon materially false and misleading information.

549.     Through the Priority Medical Diagnostics, P.C. enterprise, Nour submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Nour and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company,

Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Nour engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Priority Medical Diagnostics, P.C. enterprise through the filing of this Complaint.

550. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Nour in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

551. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

552. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

553. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $687,000.00, the exact amount to be determined at trial.

554. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Nour, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## TWENTY-NINTH CLAIM FOR RELIEF

## AGAINST PRIORITY MEDICAL DIAGNOSTICS, P.C. AND MOHAMED NOUR

### (Common Law Fraud)

555.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

556.    Defendants Priority Medical Diagnostics, P.C. and Nour intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Nour, Priority Medical Diagnostics, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

557.    Defendants Priority Medical Diagnostics, P.C. and Nour intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact

that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

558. Defendants Priority Medical Diagnostics, P.C. and Nour intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

559. Defendants Priority Medical Diagnostics, P.C. and Nour intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

560. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.
- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction

141

Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

561. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

562. The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and

Allstate Fire & Casualty Insurance Company into believing that Nour, through Priority Medical Diagnostics, P.C., was providing medically valid services when in fact he was not.

563. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

564. Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

565. Had Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Priority Medical Diagnostics, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

566. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

567.   By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $687,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTIETH CLAIM FOR RELIEF

## AGAINST PRIORITY MEDICAL DIAGNOSTICS, P.C. AND MOHAMAD NOUR

### (Unjust Enrichment)

568.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

569.   By reason of their wrongdoing, Defendants Priority Medical Diagnostics, P.C. and Nour have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

570.   Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants Priority Medical Diagnostics, P.C. and Nour in the amount by which Defendants have been unjustly enriched.

571.   By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in

their business and property in an amount as yet to be determined, but believed to be in excess of $687,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-FIRST CLAIM FOR RELIEF

## AGAINST SURENDER GORUKANTI

### (RICO, pursuant to 18 U.S.C § 1962(c))

572.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

573.    At all relevant times mentioned herein, Richmond Medical Diagnostics, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

574.    From in or about 2010 through the date of the filing of this Complaint, Gorukanti conducted and participated in the affairs of the Richmond Medical Diagnostics, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

575.    At all relevant times mentioned herein, Gorukanti participated in the affairs of the Richmond Medical Diagnostics, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire &

Casualty Insurance Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

576. The racketeering acts set forth herein were carried out on a continued basis over more than a four year period, were related and similar, and were committed as part of Gorukanti's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

577. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Richmond Medical Diagnostics, P.C. continues to pursue collection on the fraudulent billing to the present day.

578. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Gorukanti caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company and to induce them to issue checks to the Richmond Medical Diagnostics, P.C. enterprise based upon materially false and misleading information.

579. Through the Richmond Medical Diagnostics, P.C. enterprise, Gorukanti submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Gorukanti and/or others acting under his direction and control, as well as the payments that Allstate Insurance

146

Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Gorukanti engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Richmond Medical Diagnostics, P.C enterprise through the filing of this Complaint.

580.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Gorukanti in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

581.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

582.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

583.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $504,000.00, the exact amount to be determined at trial.

584.    Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Gorukanti, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRTY-SECOND CLAIM FOR RELIEF

## AGAINST RICHMOND MEDICAL DIAGNOSTICS, P.C. AND SURENDER GORUKANTI

### (Common Law Fraud)

585.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

586.    Defendants Richmond Medical Diagnostics, P.C. and Gorukanti intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Gorukanti, Richmond Medical Diagnostics, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

587.    Defendants Richmond Medical Diagnostics, P.C. and Gorukanti intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company,

concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

588.    Defendants Richmond Medical Diagnostics, P.C. and Gorukanti intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

589.    Defendants Richmond Medical Diagnostics, P.C. and Gorukanti intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

590.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

  •    False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

149

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

591.   On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

592.    The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company into believing that Gorukanti, through Richmond Medical Diagnostics, P.C., was providing medically valid services when in fact he was not.

593.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

594.    Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

595.    Had Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Richmond Medical Diagnostics, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

596.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty

Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

597.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $504,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTY-THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS RICHMOND MEDICAL DIAGNOSTICS, P.C. AND SURENDER GORUKANTI

### (Unjust Enrichment)

598.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

599.    By reason of their wrongdoing, Defendants Richmond Medical Diagnostics, P.C. and Gorukanti have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

600.    Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants Richmond Medical Diagnostics, P.C. and Gorukanti in the amount by which Defendants have been unjustly enriched.

601.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $504,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-FOURTH CLAIM FOR RELIEF

## AGAINST ADELIYA ISAAKOVNA AKPAN

### (RICO, pursuant to 18 U.S.C § 1962(c))

602.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

603.    At all relevant times mentioned herein, A & F Medical, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

604.    From in or about 2011 through the date of the filing of this Complaint, Akpan conducted and participated in the affairs of the A & F Medical, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

605.    At all relevant times mentioned herein, Akpan participated in the affairs of the A & F Medical, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and

supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

606.    The racketeering acts set forth herein were carried out on a continued basis over more than a two and a half year period, were related and similar, and were committed as part of Akpan's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

607.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as A & F Medical, P.C. continues to pursue collection on the fraudulent billing to the present day.

608.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Akpan caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the A & F Medical, P.C. enterprise based upon materially false and misleading information.

609.    Through the A & F Medical, P.C., Akpan submitted many fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Akpan and/or others acting under her direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal

Service.  By virtue of those activities, Akpan engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the A & F Medical, P.C. enterprise through the filing of this Complaint.

610.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Akpan in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

611.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

612.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

613.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $125,000.00, the exact amount to be determined at trial.

614.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Akpan, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### THIRTY-FIFTH CLAIM FOR RELIEF

### AGAINST A & F MEDICAL, P.C. AND ADELIYA ISSAKOVNA AKPAN

### (Common Law Fraud)

615.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

616. Defendants A & F Medical, P.C. and Akpan intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Akpan, A & F Medical, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

617. Defendants A & F Medical, P.C. and Akpan intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to Allstate Insurance Company and Allstate Property & Casualty Company for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

618. Defendants A & F Medical, P.C. and Akpan intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

619. Defendants A & F Medical, P.C. and Akpan intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the

fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

620. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

621.     On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

622.     The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Akpan, through A & F Medical, P.C., was providing medically valid services when in fact she was not.

623.     Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

624.     Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

625.     Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have

paid A & F Medical, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

626.     Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

627.     By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $125,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### THIRTY-SIXTH CLAIM FOR RELIEF

### AGAINST A & F MEDICAL, P.C. AND AKPAN

#### (Unjust Enrichment)

628.     The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

629.     By reason of their wrongdoing, Defendants A & F Medical, P.C. and Akpan have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

630. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants A & F Medical, P.C. and Akpan in the amount by which Defendants have been unjustly enriched.

631. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $125,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-SEVENTH CLAIM FOR RELIEF
## AGAINST NICHOLAS FENNELLI
### (RICO, pursuant to 18 U.S.C § 1962(c))

632. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

633. At all relevant times mentioned herein, Alignment Chiropractic Care, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

634. From in or about 2009 through the date of the filing of this Complaint, Fennelli conducted and participated in the affairs of the Alignment Chiropractic Care, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

635.   At all relevant times mentioned herein, Fennelli participated in the affairs of the Alignment Chiropractic Care, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

636.   The racketeering acts set forth herein were carried out on a continued basis over a four and a half year period, were related and similar, and were committed as part of Fennelli's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

637.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Alignment Chiropractic Care, P.C. continues to pursue collection on the fraudulent billing to the present day.

638.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Fennelli caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Alignment Chiropractic Care, P.C. enterprise based upon materially false and misleading information.

639.   Through the Alignment Chiropractic Care, P.C. enterprise, Fennelli submitted more than a hundred fraudulent claim forms seeking payment for VsNCT

Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Fennelli and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Fennelli engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Alignment Chiropractic Care, P.C. enterprise through the filing of this Complaint.

640.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Fennelli in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

641.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

642.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

643.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $99,000.00, the exact amount to be determined at trial.

644.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Fennelli, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRTY-EIGHTH CLAIM FOR RELIEF

## AGAINST ALIGNMENT CHIROPRACTIC CARE, P.C. AND NICHOLAS FENNELLI

### (Common Law Fraud)

645.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

646.    Defendants Alignment Chiropractic Care, P.C. and Fennelli intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Fennelli, Alignment Chiropractic Care, P.C. and Fennelli made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

647.    Defendants Alignment Chiropractic Care, P.C. and Fennelli intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to Allstate Insurance Company and Allstate Property & Casualty Company for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

648.    Defendants Alignment Chiropractic Care, P.C. and Fennelli intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and

deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

649. Defendants Alignment Chiropractic Care, P.C. and Fennelli intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

650. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

651.     On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

652.     The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Fennelli, through Alignment Chiropractic Care, P.C., was providing medically valid services when in fact he was not.

653.     Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

654.   Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

655.   Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid Alignment Chiropractic Care, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

656.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

657.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $99,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTY-NINTH CLAIM FOR RELIEF

## AGAINST ALIGNMENT CHIROPRACTIC CARE, P.C. AND NICHOLAS FENNELLI

### (Unjust Enrichment)

658. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

659. By reason of their wrongdoing, Defendants Alignment Chiropractic Care, P.C. and Fennelli have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

660. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Alignment Chiropractic Care, P.C. and Fennelli in the amount by which Defendants have been unjustly enriched.

661. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $99,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTIETH CLAIM FOR RELIEF

## AGAINST SVETLANA PINKUSOVICH AND ALEXANDER PINKUSOVICH

### (RICO, pursuant to 18 U.S.C § 1962(c))

662. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

663.    At all relevant times mentioned herein, Art of Healing Medicine, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

664.    From in or about 2000 through the date of the filing of this Complaint, S. Pinkusovich and A. Pinkusovich conducted and participated in the affairs of the Art of Healing Medicine, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

665.    At all relevant times mentioned herein, S. Pinkusovich and A. Pinkusovich participated in the affairs of the Art of Healing Medicine, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

666.    The racketeering acts set forth herein were carried out on a continued basis over more than a thirteen year period, were related and similar, and were committed as part of S. Pinkusovich and A. Pinkusovich's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

667.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Art of

Healing Medicine, P.C. continues to pursue collection on the fraudulent billing to the present day.

668. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, S. Pinkusovich and A. Pinkusovich caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company and to induce them to issue checks to the Art of Healing Medicine, P.C. enterprise based upon materially false and misleading information.

669. Through the Art of Healing Medicine, P.C. enterprise, S. Pinkusovich and A. Pinkusovich submitted many fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of S. Pinkusovich and A. Pinkusovich and/or others acting under their direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, S. Pinkusovich and A. Pinkusovich engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Art of Healing Medicine, P.C. enterprise through the filing of this Complaint.

670. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by S. Pinkusovich and A. Pinkusovich in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

671.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

672.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

673.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $60,000.00, the exact amount to be determined at trial.

674.    Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are entitled to recover from S. Pinkusovich and A. Pinkusovich, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FORTY-FIRST CLAIM FOR RELIEF

## AGAINST ART OF HEALING MEDICNE, P.C., SVETLANA PINKUSOVICH AND ALEXANDER PINKUSOVICH

### (Common Law Fraud)

675.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

676.    Defendants Art of Healing Medicine, P.C., S. Pinkusovich and A. Pinkusovich intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the

necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by S. Pinkusovich and A. Pinkusovich, Art of Healing Medicine, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for payment.

677.    Defendants Art of Healing Medicine, P.C., S. Pinkusovich and A. Pinkusovich intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the bills submitted to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

678.    Defendants Art of Healing Medicine, P.C., S. Pinkusovich and A. Pinkusovich intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

679.    Defendants Art of Healing Medicine, P.C., S. Pinkusovich and A. Pinkusovich intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the

services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, as opposed to medical necessity.

680.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants  selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

681.   On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

682.   The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company into believing that Art of Healing Medicine, through Pinkusovich and A. Pinkusovich, was providing medically valid services when in fact they were not.

683.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to rely thereon.

684.   Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

685.   Had Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for

medical treatment, they would not have paid Art of Healing Medicine, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

686.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

687.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $60,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-SECOND CLAIM FOR RELIEF

## AGAINST ART OF HEALING MEDICINE, P.C., SVETLANA PINKUSOVICH AND ALEXANDER PINKUSOVICH

### (Unjust Enrichment)

688.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

689.    By reason of their wrongdoing, Defendants Art of Healing Medicine, P.C., S. Pinkusovich and A. Pinkusovich have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that are the result of

unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

690. Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are therefore entitled to restitution from Art of Healing Medicine, P.C., S. Pinkusovich and A. Pinkusovich in the amount by which Defendants have been unjustly enriched.

691. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $60,000.00 the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-THIRD CLAIM FOR RELIEF

### AGAINST ALEXANDER VEDER

### (RICO, pursuant to 18 U.S.C § 1962(c))

692. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

693. At all relevant times mentioned herein, Avicenna Medical Arts, P.L.L.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

694. From in or about 2009 through the date of the filing of this Complaint, Veder conducted and participated in the affairs of the Avicenna Medical Arts, P.L.L.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud

175

described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

695. At all relevant times mentioned herein, Veder participated in the affairs of the Avicenna Medical Arts, P.L.L.C. enterprise through a the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

696. The racketeering acts set forth herein were carried out on a continued basis over more than a four and a half year period, were related and similar, and were committed as part of Veder's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

697. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Avicenna Medical Arts, P.L.L.C. continues to pursue collection on the fraudulent billing to the present day.

698. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Veder caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty

Company, and Allstate Fire & Casualty Insurance Company and to induce them to issue checks to the Avicenna Medical Arts, P.L.L.C. enterprise based upon materially false and misleading information.

699.    Through the Avicenna Medical Arts, P.L.L.C. enterprise, Veder submitted more than a hundred fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Veder and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Veder engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Avicenna Medical Arts, P.L.L.C. enterprise through the filing of this Complaint.

700.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Veder in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

701.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

702.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

703.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their

business and property and been damaged in the aggregate amount presently in excess of $177,000.00, the exact amount to be determined at trial.

704. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Veder, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**FORTY-FOURTH CLAIM FOR RELIEF**

**AGAINST AVICENNA MEDICAL ARTS, P.L.L.C. AND ALEXANDER VEDER**

**(Common Law Fraud)**

705. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

706. Defendants Avicenna Medical Arts, P.L.L.C. and Veder intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Veder, Avicenna Medical Arts, P.L.L.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate

Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

707.    Defendants Avicenna Medical Arts, P.L.L.C. and Veder intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

708.    Defendants Avicenna Medical Arts, P.L.L.C. and Veder intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

709.    Defendants Avicenna Medical Arts, P.L.L.C. and Veder intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

710.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports,

treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

711.   On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate but constitute

180

a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

712.    The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company into believing that Veder, through Avicenna Medical Arts, P.L.L.C., was providing medically valid services when in fact, he was not.

713.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

714.    Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

715.    Had Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid Avicenna Medical Arts, P.L.L.C.'s claims for No-fault insurance benefits submitted in connection therewith.

716.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above,

has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

717.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $177,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-FIFTH CLAIM FOR RELIEF

## AGAINST AVICENNA MEDICAL ARTS, P.L.L.C. AND ALEXANDER VEDER

### (Unjust Enrichment)

718.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

719.    By reason of their wrongdoing, Defendants Avicenna Medical Arts, P.L.L.C. and Veder have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

720.    Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are

therefore entitled to restitution from Defendants Avicenna Medical Arts, P.L.L.C. and Veder in the amount by which Defendants have been unjustly enriched.

721.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $177,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**FORTY-SIXTH CLAIM FOR RELIEF**

**AGAINST ALEXANDER MAZUROVSKY**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

722.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

**THE RICO ENTERPRISE**

723.    At all relevant times mentioned herein, AVM Chiropractic P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

724.    From in or about 2010 through the date of the filing of this Complaint, Mazurovsky conducted and participated in the affairs of the AVM Chiropractic P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

725. At all relevant times mentioned herein, Mazurovsky participated in the affairs of the AVM Chiropractic P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

726. The racketeering acts set forth herein were carried out on a continued basis over more than a three year period, were related and similar, and were committed as part of Mazurovsky's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

727. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as AVM Chiropractic P.C. continues to pursue collection on the fraudulent billing to the present day.

728. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Mazurovsky caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate and to induce Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to issue checks to the AVM Chiropractic P.C. enterprise based upon materially false and misleading information.

729.     Through the AVM Chiropractic P.C. enterprise, Mazurovsky submitted many fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Mazurovsky and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Mazurovsky engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the AVM Chiropractic P.C. enterprise through the filing of this Complaint.

730.     A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Mazurovsky in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

731.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

732.     Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

733.     By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $58,000.00, the exact amount to be determined at trial.

734. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company entitled to recover from Mazurovsky, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FORTY-SEVENTH CLAIM FOR RELIEF

## AGAINST AVM CHIROPRACTIC P.C. AND ALEXANDER MAZUROVSKY

### (Common Law Fraud)

735. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

736. Defendants AVM Chiropractic P.C. and Mazurovsky intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by AVM Chiropractic P.C. and Mazurovsky made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

737. Defendants AVM Chiropractic P.C. and Mazurovsky intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and

186

deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

738. Defendants AVM Chiropractic P.C. and Mazurovsky intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

739. Defendants AVM Chiropractic P.C. and Mazurovsky intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

740. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

741. The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company into believing that Mazurovsky, through AVM Chiropractic P.C., was providing medically valid services when in fact he was not.

742. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and

purpose of inducing Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

743. Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

744. Had Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid AVM Chiropractic P.C. claims for No-fault insurance benefits submitted in connection therewith.

745. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

746. By reason of the foregoing, Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $58,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-EIGHTH CLAIM FOR RELIEF

## AGAINST AVM CHIROPRACTIC P.C. AND ALEXANDER MAZUROVSKY

### (Unjust Enrichment)

747.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

748.    By reason of their wrongdoing, Defendants AVM Chiropractic P.C. and Mazurovsky have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

749.    Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants AVM Chiropractic P.C. and Mazurovsky in the amount by which Defendants have been unjustly enriched.

750.    By reason of the foregoing, Allstate Insurance Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $58,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-NINTH CLAIM FOR RELIEF

## <u>AGAINST ANTHONY MANDRACCHIA</u>

### (RICO, pursuant to 18 U.S.C § 1962(c))

751.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### <u>THE RICO ENTERPRISE</u>

752.    At all relevant times mentioned herein, Big Apple Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

753.    From in or about 2009 through the date of the filing of this Complaint, Mandracchia conducted and participated in the affairs of the Big Apple Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

754.    At all relevant times mentioned herein, Mandracchia participated in the affairs of the Big Apple Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

755.    The racketeering acts set forth herein were carried out on a continued basis over more than a four year period, were related and similar, and were committed as part of Mandracchia's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

756.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Big Apple Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

757.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Mandracchia caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company and to induce them to issue checks to the Big Apple Chiropractic, P.C. enterprise based upon materially false and misleading information.

758.    Through the Big Apple Chiropractic, P.C. enterprise, Mandracchia submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Mandracchia and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent

through the United States Postal Service. By virtue of those activities, Mandracchia engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Big Apple Chiropractic, P.C. enterprise through the filing of this Complaint.

759. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Mandracchia in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

760. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

761. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

762. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $461,000.00, the exact amount to be determined at trial.

763. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Mandracchia, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTIETH CLAIM FOR RELIEF

## AGAINST BIG APPLE CHIROPRACTIC, P.C. AND ANTHONY MANDRACCHIA

### (Common Law Fraud)

764.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

765.   Defendants Big Apple Chiropractic, P.C. and Mandracchia intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Mandracchia, Big Apple Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

766.   Defendants Big Apple Chiropractic, P.C. and Mandracchia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact

that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

767. Defendants Big Apple Chiropractic, P.C. and Mandracchia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

768. Defendants Big Apple Chiropractic, P.C. and Mandracchia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

769. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction

Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

770. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

771. The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and

Allstate Fire & Casualty Insurance Company into believing that Mandracchia, through Big Apple Chiropractic, P.C., was providing medically valid services when in fact he was not.

772.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

773.    Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

774.    Had Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid Big Apple Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

775.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

776. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $461,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### FIFTY-FIRST CLAIM FOR RELIEF

### AGAINST BIG APPLE CHIROPRACTIC, P.C. AND ANTHONY MANDRACCHIA

### (Unjust Enrichment)

777. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

778. By reason of their wrongdoing, Defendants Big Apple Chiropractic, P.C. and Mandracchia have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

779. Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants Big Apple Chiropractic, P.C. and Mandracchia in the amount by which Defendants have been unjustly enriched.

780. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire &

Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $461,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FIFTY-SECOND CLAIM FOR RELIEF

### AGAINST YAKOV ZILBERMAN

### (RICO, pursuant to 18 U.S.C § 1962(c))

781.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

782.    At all relevant times mentioned herein, BSZ Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

783.    From in or about 2009 through the date of the filing of this Complaint, Zilberman conducted and participated in the affairs of the BSZ Chiropractic, P.C. enterprise through a pattern of racketeering activity, including many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

784.    At all relevant times mentioned herein, Zilberman participated in the affairs of the BSZ Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing

that was    not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

785.    The racketeering acts set forth herein were carried out on a continued basis over more than a four and a half year period, were related and similar, and were committed as part of Zilberman's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

786.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as BSZ Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

787.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Zilberman caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company and to induce them to issue checks to the BSZ Chiropractic, P.C. enterprise based upon materially false and misleading information.

788.    Through the BSZ Chiropractic, P.C. enterprise, Zilberman submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Zilberman and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company

made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Zilberman engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the BSZ Chiropractic, P.C. enterprise through the filing of this Complaint.

789.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Zilberman in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

790.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

791.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

792.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $213,000.00, the exact amount to be determined at trial.

793.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are entitled to recover from Zilberman, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTY-THIRD CLAIM FOR RELIEF

## AGAINST BSZ CHIROPRACTIC, P.C. AND YAKOV ZILBERMAN

### (Common Law Fraud)

794.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

795.    Defendants BSZ Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Zilberman, BSZ Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for payment.

796.    Defendants BSZ Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the bills submitted to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

797.   Defendants BSZ Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

798.   Defendants BSZ Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, as opposed to medical necessity.

799.   On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

800.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

801.    The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company into believing that Zilberman, through BSZ Chiropractic, P.C., was providing medically valid services when in fact he was not.

802.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and

purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to rely thereon.

803.   Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

804.   Had Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid BSZ Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

805.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

806.   By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $213,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-FOURTH CLAIM FOR RELIEF

## AGAINST BSZ CHIROPRACTIC, P.C. AND YAKOV ZILBERMAN

### (Unjust Enrichment)

807. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

808. By reason of their wrongdoing, Defendants BSZ Chiropractic, P.C. and Zilberman have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

809. Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants BSZ Chiropractic, P.C. and Zilberman in the amount by which Defendants have been unjustly enriched.

810. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $213,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FIFTY-FIFTH CLAIM FOR RELIEF

## AGAINST RAMKUMAR PANHANI

### (RICO, pursuant to 18 U.S.C § 1962(c))

811. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

812.    At all relevant times mentioned herein, Dynasty Medical Care, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

813.    From in or about 1999 through the date of the filing of this Complaint, Panhani conducted and participated in the affairs of the Dynasty Medical Care, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

814.    At all relevant times mentioned herein, Panhani participated in the affairs of the Dynasty Medical Care, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

815.    The racketeering acts set forth herein were carried out on a continued basis over more than a fourteen and a half year period, were related and similar, and were committed as part of Panhani's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

816.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Dynasty

Medical Care, P.C. continues to pursue collection on the fraudulent billing to the present day.

817.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Panhani caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company and to induce them to issue checks to the Panhani enterprise based upon materially false and misleading information.

818.    Through the Dynasty Medical Care, P.C. enterprise, Panhani submitted many fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Panhani and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Panhani engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Dynasty Medical Care, P.C. enterprise through the filing of this Complaint.

819.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Panhani in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

820.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

821.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

822.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been damaged in the aggregate amount presently in excess of $92,000.00, the exact amount to be determined at trial.

823.    Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Panhani, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FIFTY-SIXTH CLAIM FOR RELIEF

### AGAINST DYNASTY MEDICAL CARE, P.C. AND RAMKUMAR PANHANI

### (Common Law Fraud)

824.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

825.    Defendants Dynasty Medical Care, P.C. and Panhani intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the

medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Panhani, Dynasty Medical Care, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

826.     Defendants Dynasty Medical Care, P.C. and Panhani intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the bills submitted to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

827.     Defendants Dynasty Medical Care, P.C. and Panhani intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

828.     Defendants Dynasty Medical Care, P.C. and Panhani intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and

deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

829.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

830.   On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

831.   The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company into believing that Panhani, through Dynasty Medical Care, P.C., was providing medically valid services when in fact he was not.

832.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

833.   Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

834.   Had Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid Dynasty Medical Care, P.C. and Panhani's claims for No-fault insurance benefits submitted in connection therewith.

835.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

836.   By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $92,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DYNASTY MEDICAL CARE, P.C. AND RAMKUMAR PANHANI

### (Unjust Enrichment)

837.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

838. By reason of their wrongdoing, Defendants Dynasty Medical Care, P.C. and Panhani have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

839. Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants Dynasty Medical Care, P.C. and Panhani in the amount by which Defendants have been unjustly enriched.

840. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $92,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**FIFTY-EIGHTH CLAIM FOR RELIEF**

**AGAINST JOSEPH HUMBLE**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

841. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

**THE RICO ENTERPRISE**

842. At all relevant times mentioned herein, Elmont Wellness Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as

that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

843.     From in or about 2010 through the date of the filing of this Complaint, Humble conducted and participated in the affairs of the Elmont Wellness Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

844.     At all relevant times mentioned herein, Humble participated in the affairs of the Elmont Wellness Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

845.     The racketeering acts set forth herein were carried out on a continued basis over more than three and a half year period, were related and similar, and were committed as part of Humble's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

846.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Elmont Wellness Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

847. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Humble caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Elmont Wellness Chiropractic, P.C. enterprise based upon materially false and misleading information.

848. Through the Elmont Wellness Chiropractic, P.C. enterprise, Humble submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Humble and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Humble engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Elmont Wellness Chiropractic, P.C. enterprise through the filing of this Complaint.

849. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Humble in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

850. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

851. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

852.     By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $57,000.00, the exact amount to be determined at trial.

853.     Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Humble, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### FIFTY-NINTH CLAIM FOR RELIEF

### AGAINST ELMONT WELLNESS CHIROPRACTIC, P.C. AND JOSEPH HUMBLE

### (Common Law Fraud)

854.     The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

855.     Defendants Elmont Wellness Chiropractic, P.C. and Humble intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Humble, Elmont Wellness Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting

No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

856. Defendants Elmont Wellness Chiropractic, P.C. and Humble intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

857. Defendants Elmont Wellness Chiropractic, P.C. and Humble intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

858. Defendants Elmont Wellness Chiropractic, P.C. and Humble intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

859. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

218

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

860.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

861.   The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Humble, through Elmont Wellness Chiropractic, P.C., was providing medically valid services when in fact he was not.

862.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

863.   Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

864.   Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid Elmont Wellness Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

865.   Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

866.   By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured

in their business and property in an amount as yet to be determined, but believed to be in excess of $57,000.00 the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTIETH CLAIM FOR RELIEF

### AGAINST ELMONT WELLNESS CHIROPRACTIC, P.C. AND JOSEPH HUMBLE

#### (Unjust Enrichment)

867.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

868.    By reason of their wrongdoing, Defendants Elmont Wellness Chiropractic, P.C. and Humble have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

869.    Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Elmont Wellness Chiropractic, P.C. and Humble in the amount by which Defendants have been unjustly enriched.

870.    By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $57,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-FIRST CLAIM FOR RELIEF

## AGAINST YAKOV ZILBERMAN

## (RICO, pursuant to 18 U.S.C § 1962(c))

871.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

872.    At all relevant times mentioned herein, Golden Hands Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

873.    From in or about 2004 through the date of the filing of this Complaint, Zilberman conducted and participated in the affairs of the Golden Hands Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

874.    At all relevant times mentioned herein, Zilberman participated in the affairs of the Golden Hands Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was   not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

875.   The racketeering acts set forth herein were carried out on a continued basis over more than a nine and a half year period, were related and similar, and were committed as part of Zilberman's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

876.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Golden Hands Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

877.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Zilberman caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Golden Hands Chiropractic, P.C. enterprise based upon materially false and misleading information.

878.   Through the Golden Hands Chiropractic, P.C. enterprise, Zilberman submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Zilberman and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Zilberman engaged in a continuous series of predicate acts of mail fraud, extending from

the formation of the Golden Hands Chiropractic, P.C. enterprise through the filing of this Complaint.

879.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Zilberman in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

880.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

881.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

882.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $111,000.00, the exact amount to be determined at trial.

883.    Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Zilberman, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### SIXTY-SECOND CLAIM FOR RELIEF

### AGAINST GOLDEN HANDS CHIROPRACTIC, P.C. AND YAKOV ZILBERMAN

### (Common Law Fraud)

884.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

885.    Defendants Golden Hands Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Zilberman, Golden Hands Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

886.    Defendants Golden Hands Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

887.    Defendants Golden Hands Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

888.    Defendants Golden Hands Chiropractic, P.C. and Zilberman intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company,

concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

889.   On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

890.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

891.    The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Zilberman, through Golden Hands Chiropractic, P.C., was providing medically valid services when in fact he was not.

892.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

893.    Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

894.    Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have

paid Golden Hands Chiropractic, P.C. and Zilberman's claims for No-fault insurance benefits submitted in connection therewith.

895.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

896.    By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $111,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-THIRD CLAIM FOR RELIEF

## AGAINST GOLDEN HANDS CHIROPRACTIC, P.C. AND YAKOV ZILBERMAN

### (Unjust Enrichment)

897.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

898.    By reason of their wrongdoing, Defendants Golden Hands Chiropractic, P.C. and Zilberman have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

899. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Golden Hands Chiropractic, P.C. and Zilberman in the amount by which Defendants have been unjustly enriched.

900. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $111,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-FOURTH CLAIM FOR RELIEF

## AGAINST GRAIG GRANOVSKY

## (RICO, pursuant to 18 U.S.C § 1962(c))

901. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

902. At all relevant times mentioned herein, Great Health Care Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

903. From in or about 2010 through the date of the filing of this Complaint, Granovsky conducted and participated in the affairs of the Great Health Care Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

229

904. At all relevant times mentioned herein, Granovsky participated in the affairs of the Great Health Care Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

905. The racketeering acts set forth herein were carried out on a continued basis over more than four year period, were related and similar, and were committed as part of Granovsky's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

906. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Granovsky continues to pursue collection on the fraudulent billing to the present day.

907. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Granovsky caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company and to induce them to issue checks to the Great Health Care Chiropractic, P.C. enterprise based upon materially false and misleading information.

908. Through the Great Health Care Chiropractic, P.C. enterprise, Granovsky submitted more than a hundred fraudulent claim forms seeking payment for VsNCT

Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Granovsky and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Granovsky engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Great Health Care Chiropractic, P.C. enterprise through the filing of this Complaint.

909.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Granovsky in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

910.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

911.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

912.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $183,000.00, the exact amount to be determined at trial.

913.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are entitled to recover

from Granovsky, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTY-FIFTH CLAIM FOR RELIEF

## AGAINST GREAT HEALTH CARE CHIROPRACTIC, P.C. AND GRAIG GRANOVSKY

### (Common Law Fraud)

914.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

915.    Defendants Great Health Care Chiropractic, P.C. and Granovsky intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Granovsky, Great Health Care Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for payment.

916.    Defendants Great Health Care Chiropractic, P.C. and Granovsky intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for

reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

917. Defendants Great Health Care Chiropractic, P.C. and Granovsky intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

918. Defendants Great Health Care Chiropractic, P.C. and Granovsky intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, as opposed to medical necessity.

919. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

233

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

920.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

921.    The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company into believing that Granovsky, through Great Health Care Chiropractic, P.C., was providing medically valid services when in fact he was not.

922.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to rely thereon.

923.    Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

924.    Had Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid  Great Health Care Chiropractic, P.C. and Granovsky's claims for No-fault insurance benefits submitted in connection therewith.

925.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

926.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $183,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-SIXTH CLAIM FOR RELIEF

## AGAINST GREAT HEALTH CARE CHIROPRACTIC, P.C. AND GRAIG GRANOVSKY

### (Unjust Enrichment)

927.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

928.    By reason of their wrongdoing, Defendants Great Health Care Chiropractic, P.C. and Granovsky have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

929.    Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Great Health Care Chiropractic, P.C. and Granovsky in the amount by which Defendants have been unjustly enriched.

930.    By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $183,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-SEVENTH CLAIM FOR RELIEF

## AGAINST MICHAEL GORELIK

### (RICO, pursuant to 18 U.S.C § 1962(c))

931.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

932.    At all relevant times mentioned herein, New Beginning Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

933.    From in or about 2009 through the date of the filing of this Complaint, Gorelik conducted and participated in the affairs of the New Beginning Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

934.    At all relevant times mentioned herein, Gorelik participated in the affairs of the New Beginning Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
#### (Racketeering Acts)

935.    The racketeering acts set forth herein were carried out on a continued basis over four and half year period, were related and similar, and were committed as part of Gorelik's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

936.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as New

Beginning Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

937.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Gorelik caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the New Beginning Chiropractic, P.C. enterprise based upon materially false and misleading information.

938.    Through the New Beginning Chiropractic, P.C. enterprise, Gorelik submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Gorelik and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Gorelik engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the New Beginning Chiropractic, P.C. enterprise through the filing of this Complaint.

939.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made Gorelik in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

940.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

941.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

942.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $41,000.00, the exact amount to be determined at trial.

943.    Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Gorelik, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTY-EIGHTH CLAIM FOR RELIEF

## AGAINST NEW BEGINNING CHIROPRACTIC, P.C. AND MICHAEL GORELIK

### (Common Law Fraud)

944.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

945.    Defendants New Beginning Chiropractic, P.C. and Gorelik intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Gorelik, New Beginning Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-

239

fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

946. Defendants New Beginning Chiropractic, P.C. and Gorelik intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

947. Defendants New Beginning Chiropractic, P.C. and Gorelik intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

948. Defendants New Beginning Chiropractic, P.C. and Gorelik intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

949. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

240

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

950.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

951. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Gorelik, through New Beginning Chiropractic, P.C., was providing medically valid services when in fact he was not.

952. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

953. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

954. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid New Beginning Chiropractic, P.C. and Gorelik's claims for No-fault insurance benefits submitted in connection therewith.

955. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

956. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured

in their business and property in an amount as yet to be determined, but believed to be in excess of $41,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-NINTH CLAIM FOR RELIEF

### AGAINST NEW BEGINNING CHIROPRACTIC, P.C. AND MICHAEL GORELIK

### (Unjust Enrichment)

957.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

958.    By reason of their wrongdoing, Defendants New Beginning Chiropractic, P.C. and Gorelik have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

959.    Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants New Beginning Chiropractic, P.C. and Gorelik in the amount by which Defendants have been unjustly enriched.

960.    By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $41,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTIETH CLAIM FOR RELIEF

## AGAINST RUSSELL NERSESOV

### (RICO, pursuant to 18 U.S.C § 1962(c))

961.    The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

962.    At all relevant times mentioned herein, No More Pain Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

963.    From in or about 2008 through the date of the filing of this Complaint, Nersesov conducted and participated in the affairs of the No More Pain Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

964.    At all relevant times mentioned herein, Nersesov participated in the affairs of the No More Pain Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

965.    The racketeering acts set forth herein were carried out on a continued basis over more than a five year period, were related and similar, and were committed as part of Nersesov's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

966.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as No More Pain Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

967.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Nersesov caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the No More Pain Chiropractic, P.C. enterprise based upon materially false and misleading information.

968.    Through the No More Pain Chiropractic, P.C. enterprise, Nersesov submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Nersesov and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Nersesov engaged

in a continuous series of predicate acts of mail fraud, extending from the formation of the No More Pain Chiropractic, P.C. enterprise through the filing of this Complaint.

969. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Nersesov in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

970. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

971. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

972. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $63,000.00, the exact amount to be determined at trial.

973. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Nersesov, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SEVENTY-FIRST CLAIM FOR RELIEF

### AGAINST NO MORE PAIN CHIROPRACTIC, P.C. AND RUSSELL NERSESOV

### (Common Law Fraud)

974. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

975. Defendants No More Pain Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and

Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Nersesov, No More Pain Chiropractic, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

976.    Defendants No More Pain Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

977.    Defendants No More Pain Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

978.    Defendants No More Pain Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate

Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

979.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

980.    On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate

Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

981. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Nersesov, through No More Pain Chiropractic, P.C. and Nersesov, was providing medically valid services when in fact he was not.

982. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

983. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

984. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid No More Pain Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

985. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

986. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $63,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTY-SECOND CLAIM FOR RELIEF

## AGAINST NO MORE PAIN CHIROPRACTIC, P.C. AND RUSSELL NERSESOV

### (Unjust Enrichment)

987. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

988. By reason of their wrongdoing, Defendants No More Pain Chiropractic, P.C. and Nersesov have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

989. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants No More Pain Chiropractic, P.C. and Nersesov in the amount by which Defendants have been unjustly enriched.

990. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $63,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTY-THIRD CLAIM FOR RELIEF

### AGAINST KARL BAUER

### (RICO, pursuant to 18 U.S.C § 1962(c))

991. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

992. At all relevant times mentioned herein, RB Chiropractic Care, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

993. From in or about 2010 through the date of the filing of this Complaint, Bauer conducted and participated in the affairs of the RB Chiropractic Care, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

994. At all relevant times mentioned herein, Bauer participated in the affairs of the RB Chiropractic Care, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty

Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

995.    The racketeering acts set forth herein were carried out on a continued basis over more than a four year period, were related and similar, and were committed as part of Bauer's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

996.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as RB Chiropractic Care, P.C. continues to pursue collection on the fraudulent billing to the present day.

997.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Bauer caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the RB Chiropractic Care, P.C. enterprise based upon materially false and misleading information.

998.    Through the RB Chiropractic Care, P.C. enterprise, Bauer submitted many fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Bauer and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through

the United States Postal Service. By virtue of those activities, Bauer engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the RB Chiropractic Care, P.C. enterprise through the filing of this Complaint.

999. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Bauer in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1000. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1001. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1002. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $19,000.00, the exact amount to be determined at trial.

1003. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are entitled to recover from Bauer, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SEVENTY-FOURTH CLAIM FOR RELIEF

### AGAINST RB CHIROPRACTIC CARE, P.C. AND KARL BAUER

### (Common Law Fraud)

1004. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1005. Defendants RB Chiropractic Care, P.C. and Bauer intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Bauer, RB Chiropractic Care, P.C. made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

1006. Defendants RB Chiropractic Care, P.C. and Bauer intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

1007. Defendants RB Chiropractic Care, P.C. and Bauer intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

1008. Defendants RB Chiropractic Care, P.C. and Bauer intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company,

concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

1009. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

1010. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

1011. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Bauer, through RB Chiropractic Care, P.C., was providing medically valid services when in fact he was not.

1012. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

1013. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

1014. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have

paid RB Chiropractic Care, P.C. and Bauer's claims for No-fault insurance benefits submitted in connection therewith.

1015. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

1016. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $19,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTY-FIFTH CLAIM FOR RELIEF

## AGAINST RB CHIROPRACTIC CARE, P.C. AND KARL BAUER

### (Unjust Enrichment)

1017. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1018. By reason of their wrongdoing, Defendants RB Chiropractic Care, P.C. and Bauer have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1019. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants RB Chiropractic Care, P.C. and Bauer in the amount by which Defendants have been unjustly enriched.

1020. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $19,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTY-SIXTH CLAIM FOR RELIEF

## AGAINST GUY VILLANO

## (RICO, pursuant to 18 U.S.C § 1962(c))

1021. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

1022. At all relevant times mentioned herein, Supreme Health Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1023. From in or about 2010 through the date of the filing of this Complaint, Villano conducted and participated in the affairs of the Supreme Health Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

1024.  At all relevant times mentioned herein, Villano participated in the affairs of the Supreme Health Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1025.  The racketeering acts set forth herein were carried out on a continued basis over more than a three and a half year period, were related and similar, and were committed as part of Villano's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

1026.  On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Supreme Health Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

1027.  As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Villano caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company and to induce them to issue checks to the Supreme Health Chiropractic, P.C. enterprise based upon materially false and misleading information.

1028. Through the Supreme Health Chiropractic, P.C. enterprise, Villano submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Villano and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Villano engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Supreme Health Chiropractic, P.C. enterprise through the filing of this Complaint.

1029. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Villano in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1030. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1031. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1032. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $16,000.00, the exact amount to be determined at trial.

1033. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are entitled to recover from Villano, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SEVENTY-SEVENTH CLAIM FOR RELIEF

## AGAINST SUPREME HEALTH CHIROPRACTIC, P.C. AND GUY VILLANO

### (Common Law Fraud)

1034. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1035. Defendants Supreme Health Chiropractic, P.C. and Villano intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Villano, made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company for payment.

1036. Defendants Supreme Health Chiropractic, P.C. and Villano intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for

reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

1037. Defendants Supreme Health Chiropractic, P.C. and Villano intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

1038. Defendants Supreme Health Chiropractic, P.C. and Villano intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from the Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company, as opposed to medical necessity.

1039. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

1040. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

1041. The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company into believing that Villano, through Supreme Health Chiropractic, P.C., was providing medically valid services when in fact he was not.

1042. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to rely thereon.

1043. Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

1044. Had Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid Supreme Health Chiropractic, P.C. and Villano's claims for No-fault insurance benefits submitted in connection therewith.

1045. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

1046. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $16,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST SUPREME HEALTH CHIROPRACTIC, P.C. AND GUY VILLANO

### (Unjust Enrichment)

1047.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1048.   By reason of their wrongdoing, Defendants Supreme Health Chiropractic, P.C. and Villano have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1049.   Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Supreme Health Chiropractic, P.C. and Villano in the amount by which Defendants have been unjustly enriched.

1050.   By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $16,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTY-NINTH CLAIM FOR RELIEF

## AGAINST ANDREW GARCIA

### (RICO, pursuant to 18 U.S.C § 1962(c))

1051.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

1052.   At all relevant times mentioned herein, True-Align Chiropractic Care, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1053.   From in or about 2008 through the date of the filing of this Complaint, Garcia conducted and participated in the affairs of the True-Align Chiropractic Care, P.C enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

1054.   At all relevant times mentioned herein, Garcia participated in the affairs of the True-Align Chiropractic Care, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1055.   The racketeering acts set forth herein were carried out on a continued basis over more than a six year period, were related and similar, and were committed as part of Garcia's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

1056.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as True-Align

266

Chiropractic Care, P.C. continues to pursue collection on the fraudulent billing to the present day.

1057.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Garcia caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the True-Align Chiropractic Care, P.C. enterprise based upon materially false and misleading information.

1058.   Through the True-Align Chiropractic Care, P.C. enterprise, Garcia submitted many fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Garcia and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Garcia engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the True-Align Chiropractic Care, P.C. enterprise through the filing of this Complaint.

1059.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Garcia in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1060.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1061. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1062. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $140,000.00, the exact amount to be determined at trial.

1063. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Garcia, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## EIGHTIETH CLAIM FOR RELIEF

### AGAINST TRUE-ALIGN CHIROPRACTIC CARE, P.C. AND ANDREW GARCIA

### (Common Law Fraud)

1064. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1065. Defendants True-Align Chiropractic Care, P.C. and Garcia intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Garcia made material misrepresentations

and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

1066. Defendants True-Align Chiropractic Care, P.C. and Garcia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

1067. Defendants True-Align Chiropractic Care, P.C. and Garcia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

1068. Defendants True-Align Chiropractic Care, P.C. and Garcia intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

1069. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

1070. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

1071. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Garcia, through True-Align Chiropractic Care, P.C., was providing medically valid services when in fact he was not.

1072. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

1073. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

1074. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid True-Align Chiropractic Care, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

1075. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

1076. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured

in their business and property in an amount as yet to be determined, but believed to be in excess of $140,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### EIGHTY-FIRST CLAIM FOR RELIEF

### AGAINST TRUE-ALIGN CHIROPRACTIC CARE, P.C. AND ANDREW GARCIA

### (Unjust Enrichment)

1077.  The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1078.  By reason of their wrongdoing, Defendants True-Align Chiropractic Care, P.C. and Garcia have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1079.  Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants True-Align Chiropractic Care, P.C. and Garcia in the amount by which Defendants have been unjustly enriched.

1080.  By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $140,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-SECOND CLAIM FOR RELIEF

## AGAINST RUSSELL NERSESOV

### (RICO, pursuant to 18 U.S.C § 1962(c))

1081. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

1082. At all relevant times mentioned herein, Way To Health Chiropractic, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1083. From in or about 2009 through the date of the filing of this Complaint, Nersesov conducted and participated in the affairs of the Way To Health Chiropractic, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

1084. At all relevant times mentioned herein, Nersesov participated in the affairs of the Way To Health Chiropractic, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1085.   The racketeering acts set forth herein were carried out on a continued basis over more than a four and a half year period, were related and similar, and were committed as part Nersesov's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

1086.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Way To Health Chiropractic, P.C. continues to pursue collection on the fraudulent billing to the present day.

1087.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Nersesov caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.   The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company and to induce them to issue checks to the Way To Health Chiropractic, P.C. enterprise based upon materially false and misleading information.

1088.   Through the Way To Health Chiropractic, P.C. enterprise, Nersesov submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Nersesov and/or others acting under his direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Nersesov engaged

274

in a continuous series of predicate acts of mail fraud, extending from the formation of the Way To Health Chiropractic, P.C. enterprise through the filing of this Complaint.

1089.   A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Nersesov in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1090.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1091.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1092.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $60,000.00, the exact amount to be determined at trial.

1093.   Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Nersesov, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## EIGHTY-THIRD CLAIM FOR RELIEF

### AGAINST WAY TO HEALTH CHIROPRACTIC, P.C. AND RUSSELL NERSESOV

### (Common Law Fraud)

1094.   The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1095.   Defendants Way To Health Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and

Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Nersesov made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

1096. Defendants Way To Health Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

1097. Defendants Way To Health Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

1098. Defendants Way To Health Chiropractic, P.C. and Nersesov intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate

Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

1099.  On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

1100.  On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company and Allstate

Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

1101. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Way To Health Chiropractic, P.C., through Nersesov, was providing medically valid services when in fact he was not.

1102. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

1103. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

1104. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, it would not have paid Way To Health Chiropractic, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

1105. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

1106. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $60,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTY-FOURTH CLAIM FOR RELIEF

## WAY TO HEALTH CHIROPRACTIC, P.C. AND RUSSELL NERSEOV

### (Unjust Enrichment)

1107. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1108. By reason of their wrongdoing, Defendants Way To Health Chiropractic, P.C. and Nersesov have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1109. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants Way To Health Chiropractic, P.C. and Nersesov in the amount by which Defendants have been unjustly enriched.

1110.  By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $60,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-FIFTH CLAIM FOR RELIEF

## <u>AGAINST NARCISSE VERSAILLES</u>

### (RICO, pursuant to 18 U.S.C § 1962(c))

1111.  The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### <u>THE RICO ENTERPRISE</u>

1112.  At all relevant times mentioned herein, White Plains Medical Care, P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1113.  From in or about 2010 through the date of the filing of this Complaint, Versailles conducted and participated in the affairs of the White Plains Medical Care, P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference.  Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

1114.  At all relevant times mentioned herein, Versailles participated in the affairs of the White Plains Medical Care, P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the

fraudulent bills and supporting documents to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1115.   The racketeering acts set forth herein were carried out on a continued basis over more than a three and a half year period, were related and similar, and were committed as part of Versailles' ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

1116.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Versailles continues to pursue collection on the fraudulent billing to the present day.

1117.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Versailles caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company and to induce them to issue checks to the White Plains Medical Care, P.C. enterprise based upon materially false and misleading information.

1118.   Through the White Plains Medical Care, P.C. enterprise, Versailles submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Versailles and/or others

acting under his direction and control, as well as the payments that Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Versailles engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the White Plains Medical Care, P.C. enterprise through the filing of this Complaint.

1119. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Versailles in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1120. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1121. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1122. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $235,000.00, the exact amount to be determined at trial.

1123. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are entitled to recover from Versailles, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## EIGHTY-SIXTH CLAIM FOR RELIEF

## AGAINST WHITE PLAINS MEDICAL CARE, P.C. AND NARCISSE VERSAILLES

### (Common Law Fraud)

1124. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1125. Defendants White Plains Medical Care, P.C. and Versailles intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Versailles made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company for payment.

1126. Defendants White Plains Medical Care, P.C. and Versailles intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

1127. White Plains Medical Care, P.C. and Versailles intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

1128. Defendants White Plains Medical Care, P.C. and Versailles intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company, as opposed to medical necessity.

1129. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered

284

Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

1130. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

1131. The foregoing was intended to deceive and mislead Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company into believing that Versailles, through White Plains Medical Care, P.C., was providing medically valid services when in fact he was not.

1132. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to rely thereon.

1133. Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

1134. Had Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid White Plains Medical Care, P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

1135. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company to recovery of exemplary and punitive damages.

1136. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in

their business and property in an amount as yet to be determined, but believed to be in excess of $235,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTY-SEVENTH CLAIM FOR RELIEF

### AGAINST WHITE PLAINS MEDICAL CARE, P.C. AND NARCISSE VERSAILLES

### (Unjust Enrichment)

1137. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1138. By reason of their wrongdoing, Defendants White Plains Medical Care, P.C. and Versailles have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1139. Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company are therefore entitled to restitution from Defendants White Plains Medical Care, P.C. and Versailles in the amount by which Defendants have been unjustly enriched.

1140. By reason of the foregoing, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Company, and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in

excess of $235,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-EIGHTH CLAIM FOR RELIEF
## AGAINST NICOLETTE MERAV SADEES
### (RICO, pursuant to 18 U.S.C § 1962(c))

1141. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

1142. At all relevant times mentioned herein, M. Sadees M.D., P.C. was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1143. From in or about 2009 through the date of the filing of this Complaint, Sadees conducted and participated in the affairs of the M. Sadees M.D., P.C. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein, in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

1144. At all relevant times mentioned herein, Sadees participated in the affairs of the M. Sadees M.D., P.C. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the hundreds of fraudulent bills and supporting documents to Allstate Insurance Company and Allstate Property & Casualty Company that were based, in part, on VsNCT Testing that was not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1145.  The racketeering acts set forth herein were carried out on a continued basis over more than a four and a half year period, were related and similar, and were committed as part of Albano's ongoing scheme to fraudulently bill for VsNCT Testing to defraud insurers and, if not stopped, will continue into the future.

1146.  On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as M. Sadees M.D., P.C. continues to pursue collection on the fraudulent billing to the present day.

1147.  As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Sadees caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate Insurance Company and Allstate Property & Casualty Company, and to induce them to issue checks to the M. Sadees M.D., P.C. enterprise based upon materially false and misleading information.

1148.  Through the M. Sadees M.D., P.C. enterprise, Sadees submitted hundreds of fraudulent claim forms seeking payment for VsNCT Testing that was not performed as billed and/or fabricated and/or of no diagnostic value. The bills and supporting documents that were sent by and/or on behalf of Sadees and/or others acting under her direction and control, as well as the payments that Allstate Insurance Company and Allstate Property & Casualty Company made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Sadees engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the M. Sadees M.D., P.C. enterprise through the filing of this Complaint.

1149. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by Sadees in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1150. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1151. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1152. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance Company and Allstate Property & Casualty Company have been injured in their business and property and been damaged in the aggregate amount presently in excess of $334,000.00, the exact amount to be determined at trial.

1153. Pursuant to 18 U.S.C. § 1964(c), Allstate Insurance Company and Allstate Property & Casualty Company are entitled to recover from Sadees, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### EIGHTY-NINTH CALIM FOR RELIEF

### AGAINST M. SADEES M.D. P.C. AND NICOLETTE MERAV SADEES

### (Common Law Fraud)

1154. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1155. Defendants M. Sadees M.D., P.C. and Nicolette Merav Sadees intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services

purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Sadees, M. Sadees M.D., P.C. and Nicolette Merav Sadees made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

1156. Defendants M. Sadees M.D., P.C. and Nicolette Merav Sadees intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

1157. Defendants M. Sadees M.D., P.C. and Sadees intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

1158. Defendants M. Sadees M.D., P.C. and Sadees intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Allstate Insurance Company and Allstate Property & Casualty Company, as opposed to medical necessity.

1159. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

1160. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Allstate in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate

Insurance Company and Allstate Property & Casualty Company, but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

1161. The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Sadees, through M. Sadees M.D., P.C., was providing medically valid services when in fact she was not.

1162. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

1163. Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendants' acts of fraud and deception.

1164. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid M. Sadees M.D., P.C.'s claims for No-fault insurance benefits submitted in connection therewith.

1165. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate

Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

1166. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $334,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINETIETH CLAIM FOR RELIEF

## AGAINST M. SADEES M.D., P.C. AND NICOLETTE MERAV SADEES

### (Unjust Enrichment)

1167. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1168. By reason of her wrongdoing, Defendants M. Sadees M.D., P.C. and Nicolette Merav Sadees have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1169. Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendants M. Sadees M.D., P.C. and Nicolette Merav Sadees in the amount by which Defendants have been unjustly enriched.

1170. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in

excess of $334,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## NINETY-FIRST CLAIM FOR RELIEF

## AGAINST MELANIE WALCOTT

### (Common Law Fraud)

1171. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1172. Defendant Walcott intentionally, knowingly, fraudulently, and with an intent to deceive Allstate Insurance Company and Allstate Property & Casualty Company, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not, thereby inducing Allstate Insurance Company and Allstate Property & Casualty Company to make payments to Defendant that Defendant was not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Walcott, she made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company and Allstate Property & Casualty Company for payment.

1173. Defendant Walcott intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of VsNCT Testing were misrepresented.

1174. Defendant Walcott intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and

Allstate Property & Casualty Company, concealed the fact that, in many instances, the services relating to VsNCT Testing were of no diagnostic value.

1175. Defendant Walcott intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Allstate Insurance Company and Allstate Property & Casualty Company, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendant's profit and reimbursement of payments from Allstate, as opposed to medical necessity.

1176. On information and belief, Defendant intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements contained in medical reports that Defendants selectively detected the activation of a Covered Person's nerve's A-Delta fibers, when in fact they did not.

- False and misleading statements contained in bills for VsNCT Testing submitted to Plaintiffs that the Defendants performed Nerve Conduction Studies on Covered Persons which were reimbursable pursuant to CPT Code 95904, when in fact they did not.

- False and misleading statements and information designed to conceal the fact that the treatment and VsNCT Testing provided for a Covered Person's purported injury were not rendered as billed, fabricated, medically unnecessary and/or of no diagnostic value.

- False and misleading statements exaggerating and/or falsifying the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons.

- False and misleading statements concealing the fact that the VsNCT Testing was rendered to Covered Persons pursuant to a fraudulent protocol and predetermined course of treatment intended to maximize Defendant's profit and reimbursement of payments.

- False and misleading test results, reports and bills that sought reimbursement for VsNCT Testing when, in fact, in many instances, such services were not rendered as billed; and

- Other misrepresentations, including but not limited to those contained in paragraphs 1 through 270 above.

1177.  On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendant to Allstate Insurance Company and Allstate Property & Casualty Company in connection with VsNCT Testing set forth fictional findings, diagnoses and representations of the services provided. The false representations contained therein not only were intended to defraud Allstate Insurance Company and Allstate Property & Casualty Company but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

1178.  The foregoing was intended to deceive and mislead Allstate Insurance Company and Allstate Property & Casualty Company into believing that Defendant Walcott was providing medically valid services when in fact she was not.

1179.  Defendant knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Allstate Insurance Company and Allstate Property & Casualty Company to rely thereon.

1180.  Allstate Insurance Company and Allstate Property & Casualty Company did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe existed as a result of Defendant's acts of fraud and deception.

1181. Had Allstate Insurance Company and Allstate Property & Casualty Company known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Walcott's claims for No-fault insurance benefits submitted in connection therewith.

1182. Furthermore, Defendant's far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Allstate Insurance Company and Allstate Property & Casualty Company to recovery of exemplary and punitive damages.

1183. By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $13,000, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### NINETY-SECOND CLAIM FOR RELIEF

### AGAINST MELANIE WALCOTT

#### (Unjust Enrichment)

1184. The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1185. By reason of her wrongdoing, Defendant Walcott has been unjustly enriched, in that she has, directly and/or indirectly, received monies from Allstate Insurance Company and Allstate Property & Casualty Company that are the result of

unlawful conduct and that, in equity and good conscience, she should not be permitted to keep.

1186.  Allstate Insurance Company and Allstate Property & Casualty Company are therefore entitled to restitution from Defendant Walcott in the amount by which Defendant has been unjustly enriched.

1187.  By reason of the foregoing, Allstate Insurance Company and Allstate Property & Casualty Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $13,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## NINETY-THIRD CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS

### (Declaratory Judgment)

1188.  The allegations of paragraphs 1 through 270 are hereby repeated and realleged as though fully set forth herein.

1189.  At all relevant times mentioned herein, the VsNCT Testing for which Defendants sought reimbursement from Plaintiffs was provided pursuant to a predetermined course of treatment irrespective of medical necessity, and was never reimbursable under the No-fault Law pursuant to CPT Code 95904.

1190.  Defendants have sought and continue to seek reimbursement for VsNCT Testing using CPT Code 95904 and challenge Plaintiffs prior denials of such claims.

1191.  A justiciable controversy exists between Plaintiffs and Defendants, since the Defendants challenge Plaintiffs' ability to deny such claims.

1192.  Plaintiffs have no adequate remedy at law.

1193.   Defendants will continue to bill Plaintiffs for VsNCT Testing using CPT Code 95904 absent a declaration by this Court that their activities are unlawful and that Plaintiffs have no obligation to pay the pending, previously-denied and any future No-fault claims for such services.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demand judgment as follows:

i)      Compensatory damages in an amount in excess of $6,000,000.00, the exact amount to be determined at trial, together with prejudgment interest;

ii)     Punitive damages in such amount as the Court deems just;

iii)    Treble damages, costs and reasonable attorneys' fees on the First, Fourth, Seventh, Tenth, Thirteenth, Sixteenth, Nineteenth, Twenty-Second, Twenty-Fifth, Twenty-Eighth, Thirty-First, Thirty-Fourth, Thirty-Seventh, Fortieth, Forty-Third, Forty-Sixth, Forty-Ninth, Fifty-Second, Fifty-Fifth,  Fifty-Eighth, Sixty-First, Sixty-Fourth, Sixty-Seventh, Seventieth, Seventy-Third, Seventy-Sixth, Seventy-Ninth, Eighty-Second, Eighty-Fifth and   Eighty-Eighth Claims for Relief, together with prejudgment interest;

iv)     Compensatory and punitive damages on the Second, Fifth, Eighth, Eleventh, Fourteenth, Seventeenth, Twentieth, Twenty-Third, Twenty-Sixth, Twenty-Ninth, Thirty-Second, Thirty-Fifth, Thirty-Eighth, Forty-First, Forty-Fourth, Forty-Seventh, Fiftieth, Fifty-Third, Fifty-Sixth, Fifty-Ninth, Sixty-Second, Sixty-Fifth, Sixty-Eighth, Seventy-First, Seventy-Fourth, Seventy-Seventh, Eightieth, Eighty-Third, Eighty-Sixth, Eighty-Ninth and Ninety-First, Claims for Relief, together with prejudgment interest;

v)      Compensatory and punitive damages on the Third, Sixth, Ninth, Twelfth, Fifteenth, Eighteenth, Twenty-First, Twenty-Fourth, Twenty-Seventh, Thirtieth, Thirty-Third, Thirty-Sixth, Thirty-Ninth, Forty-Second, Forty-Fifth, Forty-Eighth, Fifty-First, Fifty-Fourth, Fifty-Seventh, Sixtieth, Sixty-Third, Sixty-Sixth, Sixty-Ninth, Seventy-Second, Seventy-Fifth, Seventy-Eighth, Eighty-First, Eighty-Fourth, Eighty-Seventh, Ninetieth and Ninety-Second Claims for Relief, together with prejudgment interest;

vi)     Declaratory relief on the Ninety-Third Claim for Relief declaring that Plaintiffs have no obligation to pay any of Defendants' unpaid claims for VsNCT Testing, whether pending, previously-denied and/or submitted, regardless of whether such unpaid claims were ever denied, and any future No-fault claims for VsNCT Testing submitted by Defendants pursuant to CPT Code 95904 due to their fraudulent and deceptive scheme to induce payments for VsNCT Testing, irrespective of the purported dates of service; and

vii)    Costs, reasonable attorneys' fees and such other relief that the Court deems just and proper.

Dated: New York, New York,
       November 18, 2014

                                        Stern & Montana, LLP


                                        By: _____
                                            Robert A. Stern (RAS-1282)
                                            Sandra P. Burgos (SB-6856)
                                            Daniel S. Marvin (DM-7106)
                                            Attorneys for Plaintiffs
                                            Trinity Centre
                                            115 Broadway
                                            New York, New York 10006
                                            (212) 532-8100

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, )
ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY AND ALLSTATE )
FIRE & CASUALTY INSURANCE COMPANY )
)
)
Plaintiffs, )
)
-against- )
)
A & F MEDICAL P.C., ADVANCED CHIROPRACTIC OF NEW YORK P.C., )
ALIGNMENT CHIROPRACTIC CARE P.C., ART OF HEALING MEDICINE, P.C., )
ATLAS ORTHOGONAL CHIROPRACTIC P.C., AVICENNA MEDICAL ARTS )
P.L.L.C., AVM CHIROPRACTIC P.C., BIG APPLE CHIROPRACTIC P.C., BRONX- )
METRO CHIROPRACTIC HEALTH SERVICES P.C., BSZ CHIROPRACTIC P.C., )
DEDICATED CHIROPRACTIC P.C., DUMONT MEDICAL DIAGNOSTICS P.C., )
DYNASTY MEDICAL CARE, P.C., ELMONT WELLNESS CHIROPRACTIC P.C., )
FLOW CHIROPRACTIC P.C.,  GOLDEN HANDS CHIROPRACTIC P.C., GREAT )
HEALTH CARE CHIROPRACTIC P.C., HEIGHTS CHIROPRACTIC SERVICES )
P.C., M. SADEES M.D. P.C., NEW BEGINNING CHIROPRACTIC P.C., NO MORE )
PAIN CHIROPRACTIC P.C., NORTHSHORE CHIROPRACTIC DIAGNOSTICS P.C., )
POWER CHIROPRACTIC P.C., PRIORITY MEDICAL DIAGNOSTICS P.C., RB )
CHIROPRACTIC CARE P.C., RICHMOND MEDICAL DIAGNOSTICS P.C., )
SUPREME HEALTH CHIROPRACTIC P.C., TRUE-ALIGN CHIROPRACTIC CARE )
P.C., WAY TO HEALTH CHIROPRACTIC P.C., WHITE PLAINS MEDICAL CARE, )
P.C., ROBERT ALBANO, D.C., ADELIYA ISAAKOVNA AKPAN, M.D., KARL )
BAUER, D.C., AUTUMN CUTLER, D.C., AHMED ELSOURY, M.D., NICHOLAS )
FENNELLI , M.D., ANDREW GARCIA, D.C., MICHAEL GORELIK, D.C., )
SURENDER GORUKANTI, M.D., GRAIG GRANOVSKY, D.C., JOSEPH HUMBLE, )
D.C., ANTHONY MANDRACCHIA, D.C., ALEXANDER MAZUROVSKY, D.C., )
SOPHIA MOHUCHY, D.C., RUSSELL NERSESOV, D.C., CHARLES NGUYEN, D.C., )
MOHAMED NOUR , M.D., RAMKUMAR  PANHANI , M.D., SVETLANA )
PINKUSOVICH, M.D., ALEXANDER  PINKUSOVICH, M.D., NICOLETTE MERAV )
SADEES, M.D., PAUL SCARBOROUGH, D.C., MARK  SOFFER, D.C., ALEXANDER )
VEDER, M.D., NARCISSE VERSAILLES, M.D., GUY VILLANO, D.C., MELANIE )
WALCOTT,  D.C. and YAKOV ZILBERMAN, D.C. )
)
)
Defendants. )
)
)
-------------------------------------------------------------------------------- X

---

# COMPLAINT

---

# STERN & MONTANA, LLP

### ATTORNEYS FOR PLAINTIFFS
### TRINITY CENTRE
### 115 BROADWAY
### NEW YORK, NEW YORK 10006
### TELEPHONE: (212) 532-8100