STERN & MONTANA, LLP
ONE WORLD FINANCIAL CENTER, 30TH FLOOR
NEW YORK, NEW YORK 10281

TELEPHONE: (212) 532-8100
FACSIMILE: (212) 532-7271
E-MAIL: info@stern-montana.com
www.stern-montana.com

February 19, 2015

**VIA ECF**

Hon. Marilyn D. Go
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: Allstate Insurance Company, et al. v. A & F Medical P.C., et al.**
**Docket No.: 14-CV-6756 (JBW)(MDG)**

Dear Judge Go:

We represent Plaintiffs in the above-referenced matter and, pursuant to the Court's Docket Entry Order dated February 5, 2015, respectfully submit that the Defendants are properly joined pursuant to Fed.R.Civ.P. 20[1].

**1. Overview of Complaint**

The Complaint in this matter alleges that twenty-eight (28) individual licensed healthcare providers, and their associated twenty-nine (29) medical professional corporations, and one (1) Professional Limited Liability Company (the "Defendants")[2], deploying substantially similar means and methods, engaged in parallel and virtually identical schemes to defraud in which, as a matter of pattern, practice and protocol, fraudulently submitted claims (either individually or through their respective professional entities) to Plaintiffs for reimbursement for Voltage Actuated Sensory Nerve Conduction Threshold Testing ("VsNCT Testing") that was purportedly performed on individuals who were involved in automobile accidents and covered pursuant to Allstate's insurance policies ("Covered Persons"). In support of the fraudulent billed for services, Defendants systematically misrepresented that the VsNCT Testing was medically necessary to diagnose abnormalities in the Covered Persons' peripheral nerves that may have resulted from

[1] Plaintiffs conferred with all counsel and advised them that Plaintiffs would be submitting this separate report.
[2] With the exception of Defendant Melanie Walcott, D.C., all of the individual Defendants purportedly performed VsNCT Testing through one or more associated professional corporations or professional liability companies. *See* Compl. ¶¶ 56-111.

the alleged accidents. *See e.g.* Compl. ¶ 6. In actuality, the VsNCT Testing was incapable of making such a diagnosis. *See e.g. Id.* at 13.

As further alleged in the Complaint, Defendants purportedly performed the VsNCT Testing with one of two virtually identical devices designed and sold by the same manufacturer: the "Axon-II," or its substantially similar predecessor, the "Medi-Dx-7000." (collectively the "VsNCT Testing Devices").[3] *See e.g. Id.* at ¶ 7. Irrespective of the device used, Defendants, in furtherance of identical schemes to defraud, misrepresented that the VsNCT Testing Devices selectively delivered an electrical current, through an electrode placed on the surface of the skin, to Covered Persons' sensory nerves, thereby allowing for the measuring of the electrical response of a specific nerve fiber known as the "A-Delta" fiber.[4] *See e.g. Id.* at ¶ 8-10. Contrary to their representations, however, the VsNCT Testing performed by the Defendants was incapable of selectively stimulating A-Delta pain fibers. *See e.g. Id.* at ¶ 13. At bottom, the entire justification for the VsNCT Testing was nothing more than a fabrication to allow the defendants to fraudulently bill and enrich themselves for services that were not provided as billed.

In addition to fraudulently billing for VsNCT Testing that had no diagnostic value, all of the Defendants, as a matter of practice and protocol, billed Allstate for VsNCT Testing using Current Procedural Terminology ("CPT") Code 95904 which is reserved for expensive, standard sensory nerve conduction velocity testing that measures the amplitude, latency configuration and velocity of the tested nerve.[5] *See e.g. Id.* at ¶ 17-18. Contrary to their representations, Defendants did not perform nerve conduction velocity tests. In that regard, the Complaint alleges that the VsNCT Testing Devices purportedly used by Defendants were incapable of recording the amplitude, latency and velocity of a nerve's response to an external electrical stimulus and therefore, the Defendants fraudulently misrepresented that they provided nerve conduction velocity tests when in fact they had not and, further, misrepresented the services purportedly rendered, by billing for VsNCT Testing under CPT Code 95904. *See e.g. Compl.* at ¶ 22.

Finally, the Complaint alleges that in furtherance of their schemes to defraud, each Defendant submitted, to Allstate in connection with their claims for reimbursement, identical

---

[3] In 2003, the manufacturer of the Medi-DX added a device to be used with it, called a Potentiometer, and rebranded the Medi-DX as the Axon-II. The Potentiometer is a device that purports to display a digital reading of the electrical current resulting from the stimulation of the A-Delta fibers in the subject's sensory nerve in response to stimulation by the Axon-II device.

[4] Peripheral nerves consist of bundles of fibers which are capable of detecting sensation. The largest and fastest fibers are known as A-Alpha and A-Beta fibers, and the smaller and slower conducting fibers that transmit feelings of pain are known as C-fibers and A-Delta fibers.

[5] In particular, standard sensory nerve conduction velocity testing involves stimulating the sensory nerve with an electric shock. When the nerve is stimulated by the electric shock, it depolarizes (fires) resulting in a wave of electrical activity (the action potential) that moves along the nerve in both directions. Electrodes applied to the skin surface a measured distance from the stimulus site over the same nerve record and measure the following parameters: (1) the latency, which is the elapsed time between the stimulus time and the arrival of the action potential that the recording electrodes; (2) the amplitude, which is the height of the recorded action potential corresponding to the maximum amount of electric charge in the action potential; and (3) the configuration of the recorded action potential. The measured distance between the stimulating and recording electrodes provided by the elapsed time to travel down the nerve (the latency) equals the speed of conduction (the velocity).

Cont/d…

boilerplate medical records, reports and bills that contained nearly identical, false and fraudulent statements regarding the clinical efficacy of VsNCT Testing for the diagnosis of sensory or peripheral neuropathies, as well as identical false and fraudulent statements that VsNCT Testing is reimbursable pursuant to CPT Code 95904. *See e.g. Id.* at ¶ 35. The Complaint seeks compensatory damages, as well as declaratory judgment, declaring that Allstate is under no obligation to pay any of the Defendants' claims for VsNCT Testing because the billed for services were not performed as billed, medically unnecessary and/or of no diagnostic value.

**2. <u>Defendants Are Properly Joined</u>**

The Federal Rules of Civil Procedure give the courts broad discretion to allow parties to be joined as defendants if the essential facts of the various claims are logically connected so that the considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit. *See e.g. United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir.1979) (internal quotation omitted). Such is the case here. All of the allegations against the Defendants contain overlapping facts in which fraudulent No-fault insurance claims containing specific types of billing fraud, relating to a specific type of VsNCT Testing, and using a specific device, were submitted to Plaintiffs for reimbursement pursuant to the No-fault Law. As set forth below, the Complaint details how the parallel enterprises shared common documentation, utilized the same bogus billing code, used the same means and methods, and engaged in common patterns of fraud that could not possibly be the product of happenstance, but rather, evidence related fraudulent billing schemes that have a common genesis and framework. The commonalities are pervasive, and extend to the marketing of the devices that were ultimately used by Defendants to fraudulently bill Allstate, and how it was that each of the Defendants landed upon billing Allstate for the same service, using the same device, while utilizing the same set of misrepresentations in each bill submission as to the service provided and the purported diagnostic value of VsNCT Testing.

**A. <u>Standard of Review</u>**

Fed. R. Civ. P. 20(a)(2) provides that defendants may be joined in one action if any right to relief is asserted against them with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action. While there is no rigid rule as to what constitutes the same transaction or occurrence for purposes of joinder under Rule 20(a), *see e.g. City of New York v Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 549 (E.DN.Y. 1987), courts within this Circuit have repeatedly interpreted the phrase "same transaction or occurrence" as used in Rule 20 to include all logically related claims asserted against different parties.[6] *See, e.g., Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989); *see also Fong v. Rego Park Nursing Home*, 95 CIV. 4445 (SJ), 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996) (holding that the terms "transaction"

[6] In construing the term "transaction or occurrence" under Rule 20, Courts in this Circuit have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims. *See, e.g., Mosley v. General Motors Corp.*, 497 F.2d at 1330, 1333 (8th Cir. 1974). As the Second Circuit has observed in the Rule 13 context, to determine whether a counterclaim arises out of the same transaction as the original claim, the court must assess the logical relationship between the claims and determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit. *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir.1979) (internal quotation omitted).

Cont/d…

and "occurrence" in Rule 20 permit all logically related claims by or against different parties in a single proceeding).[7]

Furthermore, the Court must undertake its analysis on a case-by-case basis, bearing in mind that it should employ a broad view of the Complaint in order to promote judicial economy and to allow all related claims to be tried within a single proceeding. *See, e.g., Liegey v. Ellen Figg, Inc.*, 02 CIV.1492 JSM JCF, 2003 WL 21361724 (S.D.N.Y. June 11, 2003)(finding that the requirements of Rule 20(a) should be interpreted liberally); *Blesedell*, 708 F. Supp., 1421 (holding that the purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits). Importantly, the Supreme Court has observed that, under the Federal Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties, and therefore, joinder of claims, parties and remedies is strongly encouraged. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Moreover, in light of the broad view afforded pursuant to Fed. R. Civ. P. 20, federal courts view severance as a procedural device to be employed only in exceptional circumstances, *See, e.g., Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008). Based on the foregoing precepts of law, joinder of the Defendants in this matter is proper.

**B. The Complaints' Claims for Relief Are Logically Connected**

At bar, the Complaint's claims for relief are logically connected as that phrase has been interpreted in the Second Circuit, as they demonstrate identical action on the part of the Defendants and share common questions of law and fact. Indeed, the Complaint sets forth in abundant detail how the fraudulent billing methods used by the various Defendant enterprises shared common fraudulent hallmarks which clearly evidence a logical relationship to one another. For example, all of the Defendants submitted identical boilerplate medical records, reports and bills to Allstate for reimbursement that contained nearly identical, false and fraudulent statements made by one or more of the Defendants regarding the clinical efficacy of VsNCT Testing. By way of example and not limitation, these misrepresentations include that:

- Federal Medicare guidelines list VsNCT as reasonable and necessary in a wide variety of sensory conditions ranging from diabetic polyneuropathies and peripheral entrapment neuropathies to neck and back pain (radiculopathies).
- VsNCT Testing introduces a continuous stimulus at 250 Hz in order to selectively stimulate A-Delta fibers.
- sensory nerves are more vulnerable to injury than motor nerves.

[7] Federal courts in other Circuits are in accord. *See e.g. Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir.1983) (finding that Rule 20 permits all reasonably related claims for relief by or against different parties to be tried in a single proceeding; absolute identity of all events is unnecessary) (citations omitted); *Mosley v. General Motors Corp.*, 497 F.2d at 1330, 1333 (8th Cir. 1974) (finding that "transaction" is a word of flexible meaning that may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship" (citations omitted).

Cont/d…

- conventional EMG is limited mainly to the more traumatically resistant large postganglionic motor fibers.
- VsNCT Testing Devices detected the activation of Covered Peron's nerve's A-Delta fibers, when they did not; From bullets
- VsNCT Testing allows early targeted intervention before morbidity can jeopardize outcome, when it does not;
- VsNCT is reimbursable pursuant to CPT Code 95904.

*See e.g. Compl.* at ¶¶ 24, 25, and 187.[8]

In addition, in order to justify the unnecessary and useless VsNCT Testing, the Complaint also alleges that all of the Defendants, among other things, (i) submitted medical reports to Allstate which contained identical diagnoses for different patients, almost always indicative of abnormal nerve sensation regardless of a Covered Person's age, gender, medical history, individual mechanism of injury, subjective and objective findings, progress or medical condition; (ii) intentionally misrepresented, exaggerated and falsified the clinical usefulness of VsNCT Testing for the treatment of the purported injuries suffered by Covered Persons; and (iii) failed to include any justification for VsNCT Testing in the initial visit diagnostic impressions of Covered Persons who purportedly received the testing. *Id.* at ¶ 187. Indeed, there is virtually no difference between the allegations and claims for relief asserted against any of Defendants, and the Complaint's common allegations are material to the issue of the liability of them all. Taken together, these allegations easily satisfy Fed.R.Civ.P. 20's requirement of sharing common questions of law and fact.[9]

The analogous matter of *Allstate Ins. Co., et al. v. Khaimiov et. al*, 11-CV-2391 (JG)(JMA) (EDNY) is instructive. In *Khaimov*, plaintiff-insures filed RICO and common law fraud claims against thirty-seven (37) defendants, including Durable Medical Equipment ("DME") wholesalers, retailers and their owners, alleging (as is the case here) that they engaged in parallel and virtually identical schemes to defraud Allstate through the submission of claims pursuant to the No-fault Law for various types of durable medical equipment that, among many other things, was not provided, was upcoded and misrepresented the quality, nature and type of equipment provided. Furthermore, although each of defendant DME Retailers (*i.e.*, the defendants under whose names the bills for reimbursement to Allstate were submitted) were ostensibly independent entities, as is the case here, they submitted the same types of boilerplate bills and supporting documentation to plaintiffs containing the same types of fraudulent misrepresentations purportedly justifying their claims. *Khaimiov*, 11-CV-2391 Doc. No. 10 at ¶¶ 2, 63-67, 69, 72, 169-71, 173, 177, 179, 182-83 256-279, 293-316, 330-343, 345-358, 359-368,

[8] The use of substantially similar verbiage in their billing submissions to Allstate as to the justification and utilization of VsNCT Testing, coupled with the use of substantially similar reports demonstrates that each of the supposed independent Defendants engaged in a scheme to defraud that cannot be dismissed as mere happenstance. Rather, as discussed herein, the common issues of fact and law, as well as discovery related issues, strongly militates against any notion of severance in this case.

[9] For example, whether Defendants made the misrepresentations or omissions of material fact that they are all alleged to have made, and upon which Plaintiffs justifiably relied, is an issue of law common to all Defendants.

Cont/d…

382-393, 412-435, and 501-524 and Exhs. 3, 6-8, 11-16 and 18-19. Against that backdrop, the owners of the DME Retailers moved to sever plaintiffs' claims, alleging that they were improperly joined pursuant to Rule 20 because the allegations against them didn't arise from the "same transaction." *Khaimiov*, 11-CV-2391 Doc. No. 61 at 19-20.

Judge Gleason rejected the providers' argument, noting that the defendants were properly joined because, among other things, they used the same templated documents and billing codes, and because the "complex schemes alleged were generally identical, they were clearly logically related and there would be nothing but efficiency in keeping the claims together in one case." *See* February 16, 2012 Trans. p. 49 at 4 -21 annexed hereto as Exh. "A." In rendering his decision, Judge Gleason relied on *United Mine Workers*, *supra* at 4, reiterating that under the Federal Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties, and therefore, joinder of claims, parties and remedies is strongly encouraged. *Id.*[10]

The reasoning in *Khaimov* is entirely applicable here. Indeed, both *Khaimov* and the matter at bar involve seemingly unrelated No-fault providers that engaged in separate but virtually identical schemes to defraud in which they purportedly provided medical services to claimants and submitted the same types of boilerplate, fraudulent documents to plaintiff-insurers in connection with claims for reimbursement, using the same billing codes. While *Khaimov* involved DME as opposed to VsNCT Testing, that distinction is insignificant for the purposes of a Rule 20 analysis. Simply put, at bar, there is <u>one</u> test at issue, <u>one</u> device (and its replacement) at issue, and <u>one</u> billing code at issue. It is respectfully submitted that the logical connectivity of Plaintiffs' claims should not be in dispute, and as in *Khaimov*, there would be nothing but efficiency in keeping them together in one case.

## C. **<u>Joinder Is Appropriate in the Interest of Judicial Economy</u>**

Since the claims against all of the Moving Defendants are logically related, joinder is appropriate and in the interest of judicial economy. In that regard, if the Defendants are severed, the end result would be twenty-eight separate but largely identical actions taking place before twenty-eight different sets of District Court and Magistrate Judges, with all of those matters having the same factual circumstances, discovery issues and legal arguments. Discovery and related motion practice would be unnecessarily duplicative throughout many courts in this District. Undoubtedly, counsel in those twenty-eight matters would seek to depose the same witnesses in all of them, serve the same types of discovery requests in all of them, and bring the same legal issues before the Court in all of them. Similarly, although directed at different Defendants, Plaintiffs discovery will be substantially similar, implicating duplicitous resolution of the same discovery issues if required. Clearly, the interests of judicial economy and efficiency, coupled with the predominant common issues of law and fact demonstrate that the Defendants were properly joined in this action.

---

[10] Judge Gleason left open the possibility that severance could be addressed later on the matter (such at trial) and noted that there would be nothing but efficiency in keeping the Defendants together for the purposes of discovery. *See* February 16, 2012 Trans. Pp. 49-50.

Cont/d…

Indeed, the alternative of severance would result in an incongruent result that would be at odds with the courts' well recognized desire to promote uniformity and efficiency in the administration of justice. In that regard, this Court would be faced with the possibility of dozens of inconsistent verdicts on identical issues. Such a result would run entirely contrary to the purpose and intent of Fed. R. Civ. P. 20, and any minimal purported burden on Defendants in litigating the Complaint's claims for relief in one civil action is far outweighed by efficiency, the benefits to the parties, the Court, and the interests of judicial economy. Moreover, if severance were ordered, at trial, Plaintiffs would be forced to present the exact same witnesses to twenty-eight different juries in twenty-eight different courtrooms. Putting aside the manifest unfairness which Plaintiffs will face having to litigate, and present the same witnesses and evidence over and over again in twenty-eight separate actions, as noted, the burden on the Court's resources would be wasted overseeing twenty-eight separate matters and trials, all of which could and should be joined together.

**D. The Matter of *In re BitTorrent Adult Film Copyright Infringement Case* Is Inapposite**

Plaintiffs are cognizant of the Court's reference *to In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y.) *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012) in its 12/26/14 Docket Entry Notice as a matter in which the court found that certain defendants were not properly joined pursuant to Fed.R.Civ.P. 20. In that regard, putting aside that numerous courts have refused to follow the holding *In re BitTorrent*,[11] it is respectfully submitted that even if courts were in agreement that the *In re BitTorrent* holding were correct, it is easily distinguishable.

In particular, *In re BitTorrent* involved a copyright holder joining, in four separate suits, eighty (80) anonymous defendants who were alleged to have participated in the illegal downloading and copyright infringement of a movie using a peer-to-peer filing sharing network known as BitTorrent. These so-called "swarm-joinder" suits were part of what Magistrate Brown called "a nationwide blizzard of civil actions" which included another nineteen related cases with more than 240 additional defendants filed in the Eastern District alone.[12] *See In re BitTorrent*, 296 F.R.D. at 80. In determining that the defendants were not properly joined, Magistrate Brown noted that while the plaintiffs only identified two purported common questions of fact, the various defendants raised vastly different and highly individualized defenses, including their age,

[11] *See e.g. Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273 (S.D.N.Y. 2012) (disagreeing with the holding in *In re BitTorrent* and finding that alleged transactions of individual defendants, in downloading and uploading a copy of a pornographic film via a peer-to-peer files-haring protocol known as BitTorrent, were part of the same "series of transactions or occurrences," supporting joinder of the individual defendants in infringement action brought by owner of the film's copyright); *Pac. Century Int'l v. Does 1-31*, No. 11 C 9064, 2012 WL 2129003, at *2 (N.D. Ill. June 12, 2012) (declining to follow *BitTorrent* and finding that plaintiff's allegations that anonymous defendants participated in the same "swarm" illegally downloading a file using BitTorrent sufficiently alleges that they were involved in "a series of transactions" to warrant joinder under Rule 20); *see also Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012) (finding the sharing and downloading of files by a series of individuals using BitTorrent constituted a series of transactions" for purposes of Rule 20(a).

[12] Magistrate Judge Brown noted that one media outlet reports that more than 220,000 individuals have been sued since mid–2010 in mass BitTorrent lawsuits. *In re BitTorrent* , 296 F.R.D. at 82.

Cont/d…

religious convictions, technological savvy (or lack thereof), misidentification of their ISP accounts, the kinds of WiFi equipment and security software they utilized, and the location of their routers. *In re BitTorrent*, 296 F.R.D. at 81. Accordingly, the Court found that "individualized determinations required far outweigh the common questions in terms of discovery, evidence, and effort required," and joinder was therefore inappropriate. *Id*.

The facts at bar are vastly different. Rather than dealing with a group of anonymous individuals scattered in various places whose only connection to one another is that a computer which was associated with them was used to visit the same file-sharing website, here, all of the Defendants are No-fault providers in the New York City area who used the <u>same</u> machine to perform the <u>same</u> test on the <u>same</u> category of individuals, and who used the <u>same</u> billing code and <u>same</u> types of fraudulent documents to submit the <u>same</u> types of claims for reimbursement. The Defendants are all are alleged to have violated the same statute by carrying out virtually identical parallel schemes to defraud using the same means, methods and common components. In addition, there is no indication that the Defendants here will, or even could have individualized defenses as was the case in *In re BitTorrent*. At bar, there is no dispute that all Defendants used the VsNCT Testing Devices for the same purposes, and no dispute that they all billed Plaintiffs for those services using CPT Code 95904. All that remains are common questions of law and fact regarding whether Defendants fraudulently billed for VsNCT Testing, the efficacy of the test, the applicability of CPT code 95904 to its reimbursement, and Defendants misrepresentations. Accordingly, it is respectfully submitted that the holding of *In re BitTorrent* is inapplicable.

For the foregoing reasons, it is respectfully submitted that the Defendants in this matter are properly joined pursuant to Fed.R.Civ.P. 20.

Thank you for your consideration in this regard.

Respectfully submitted,
Stern & Montana, LLP

By: _/s Daniel Marvin ___________
Daniel S. Marvin (DM-7106)

cc: All Counsel (via E-filing)