**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
**ALLSTATE INSURANCE COMPANY,**
**et al.,**

                              **Plaintiffs,**                **MEMORANDUM AND ORDER**

         -against-

                                             **14-CV-6756 (JBW)**

**A & F MEDICAL P.C., et al.,**

                              **Defendants.**
--------------------------------------------------------------x
**ALLSTATE INSURANCE COMPANY,**
**et al.,**

                              **Plaintiffs,**                **15-CV-3639 (JBW)**

         -against-

**ART OF HEALING MEDICINE, P.C., et al.,**

                              **Defendants.**
--------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before the Court, in these actions[1] brought pursuant to the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, is a motion

---

[1] Allstate Insurance Company v. Art of Healing Medicine, P.C., 15-cv-3639 (JBW), is one of five member cases opened by the Clerk of Court at the direction of the Honorable Jack B. Weinstein in response to motions to sever filed by various defendants named in the lead action, Allstate Insurance Company v. A & F Medical, P.C., 14-cv-6756 (JBW).  See Order (June 23, 2015), Electronic Case Filing ("ECF") Docket Entry ("DE") #171.  Despite the two docket numbers, the remainder of this opinion will refer to the litigation initiated by the Allstate plaintiffs as a single "action."  All citations to docket entries pertain to the docket in the 14-cv-6756 case unless otherwise noted.

filed by defendants Art of Healing Medicine, P.C., Alexander Pinkusovich M.D. and Svetlana Pinkusovich M.D. (collectively, the "AOH defendants") to disqualify counsel for plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company (collectively, "plaintiffs" or "Allstate"). See Motion to Disqualify Counsel Stern & Montana, LLP and for a Protective Order and Temporary Stay (Nov. 14, 2016) ("Mot. to Disqualify"), DE #331. The motion to disqualify, which is opposed by plaintiffs, see Response in Opposition (Nov. 15, 2016) ("Allstate's Opp."), DE #332, has been referred to the undersigned magistrate judge by the Honorable Jack B. Weinstein. See Order referring motion to Magistrate Judge (Mar. 17, 2017), DE #395. By Electronic Order dated May 25, 2017, this Court denied the motion to disqualify, with an opinion to follow. This opinion sets forth the Court's reasons for denying the AOH defendants' motion.

## BACKGROUND

On November 18, 2014, Allstate commenced this action against the above-named defendants, among many other entity and individual medical providers, alleging that they had engaged in a scheme to defraud Allstate through their involvement in the submission of false and/or fraudulent insurance claims on behalf of injured persons allegedly covered by New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101 et seq. See Complaint (Nov. 18, 2014) ("Compl."), DE #1. The Complaint alleges that the AOH defendants purportedly performed Voltage Actuated Sensory Nerve Conduction Threshold Testing ("VsNCT Testing") on patients, to diagnose peripheral neuropathies. See

2

id. ¶¶ 93, 95, 119, 191.   Utilizing VsNCT Testing, the service provider purports to selectively deliver an electrical current to the patient's sensory nerves through an electrode placed on the surface of the skin, thereby measuring the electrical response of a specific nerve fiber known as the "A-Delta."   See id. ¶¶ 6-10, 200.   According to plaintiffs, it is impossible for the VsNCT Testing purportedly performed by the AOH defendants to selectively stimulate and measure the A-Delta fiber.   See id. ¶¶ 11, 13, 209.   In addition, plaintiffs allege that the AOH defendants fraudulently billed Allstate for VsNCT Testing using Current Procedural Terminology ("CPT") Code 95904, when in fact such testing is not reimbursable pursuant to CPT Code 95904, and was medically unnecessary and of no diagnostic value.   See id. ¶¶ 17-18, 36-40, 93, 193, 194.

On July 28, 2016, the AOH defendants filed a separate action (the "AOH Action") against Allstate, alleging violations of RICO.   See Complaint (July 28, 2016) (the "AOH Compl."), DE #1 in 16-cv-4208 (E.D.N.Y.).   In that complaint, the AOH defendants (proceeding as plaintiffs) allege that Allstate engaged in a scheme to avoid paying no-fault insurance claims submitted by the AOH defendants.   See id. ¶ 7.   According to the AOH defendants, Allstate fraudulently paid each no-fault claim for VsNCT Testing within 30 days of their submission, thereby lulling the AOH defendants into believing that such claims were proper.   See id. ¶¶ 15, 20.   Then, once the claims reached a significant amount in the aggregate, Allstate sued the AOH defendants under RICO, in order to recover the payments made to the AOH defendants, obtain treble damages, and prevent the AOH defendants from submitting new no-fault claims.   See id. ¶¶ 23, 24, 31.   The AOH defendants further allege

that they believed, *inter alia,* that VsNCT Testing is objective and that billing for VsNCT

Testing using CPT Code 95904 was proper.   See AOH Compl. ¶ 13 & n.3.

By order dated February 21, 2017, Judge Weinstein denied without prejudice Allstate's

motion to dismiss the AOH Action and stayed all discovery therein pending the resolution of

the instant action against the AOH defendants.   See Order (Feb. 21, 2017), DE #46 in 16-cv-

4208.

## DISCUSSION

In the pending motion, the AOH defendants cite four grounds for disqualification of

plaintiffs' counsel.   First, they contend that attorney Robin Pass of the law firm of Stern &

Montana, LLP ("Stern & Montana"), which represented plaintiffs until it ceased operations as

of December 28, 2016, see Motion for Extension of Time (Dec. 27, 2016) at 1, DE #352,[2]

endeavored to alter the deposition transcript of defendant Alexander Pinkusovich ("Dr.

Pinkusovich") by directing the stenographer to change a word in the transcript outside the

presence of the AOH defendants' then-counsel.   Second, the AOH defendants argue that Stern

& Montana has a conflict of interest because the firm represented Allstate at the "collections-

defense level," and Allstate may invoke the advice-of-counsel defense in the AOH Action.

Third, the AOH defendants contend that Stern & Montana served as originators of and

advisors with respect to Allstate's fraud prevention plan, and the AOH defendants therefore

intend to call Stern & Montana attorneys as witnesses regarding Allstate's alleged scheme to

---

[2] A number of Stern & Montana attorneys working on this case joined the law firm of Morrison
Mahoney, LLP, which, along with Cadwalader, Wickersham & Taft, currently represents plaintiffs.

4

manufacture RICO claims by fraudulently inducing the AOH defendants and other medical providers to bill under CPT Code 95904. Finally, the AOH defendants argue that plaintiffs' counsel has created the appearance of impropriety due to their false responses to inquiries as to when plaintiffs first discovered the fraud claimed to have been committed by the AOH defendants. See generally Mot. to Disqualify.

I. Alteration of Transcript

The AOH defendants argue that Stern & Montana's attorneys are material witnesses because defendant Alexander Pinkusovich was informed by his former counsel, Galina Feldsherova, that she had inadvertently obtained a tape-recorded conversation between plaintiffs' counsel, Robin Pass, and the stenographer at Dr. Pinkusovich's deposition, concerning altering one word in the transcript from "Trump" to "tramp." See Mot. to Disqualify at 1-2. Ms. Feldsherova had reportedly been recording the deposition on a tape recorder and mistakenly left the recorder on after the deposition ended. During the examination of Dr. Pinkusovich, he had made a comment to Ms. Pass that she is like "Trump," "who wants to get involved in everything and objects to everything." Id. at 2 & Ex. B (DE #331-2) at 172. According to the AOH defendants, Ms. Pass attempted to have the stenographer change the word "Trump" to "tramp" "to negatively affect both the Court's perception of Dr. Pinkusovich and his credibility, and that of any jury." Mot. to Disqualify at 2. When Dr. Pinkusovich first raised this issue with the Court, see Letter to Court from Alexander Pinkusovich dated August 12, 2016 (Aug. 17, 2016), DE #304, Allstate responded that it would consent to change the transcript to Dr. Pinkusovich's preferred wording, see

5

Letter in Response to Art of Healing/Pinkusovich Correspondence (Aug. 21, 2016) at 1, DE #306. Not content with the proffered remedy, the AOH defendants seek to disqualify all of plaintiffs' attorneys of record from representing Allstate in this litigation.

Although not cited in the AOH defendants' motion to disqualify, their charge that plaintiffs' counsel are "material witnesses" is predicated on the witness-advocate rule embodied in Rule 3.7 of the New York Rules of Professional Conduct. Subsection (a) of the Rule provides that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact . . . ." N.Y. R. Prof'l Conduct § 3.7(a). Subsection (b), which addresses imputation, has somewhat broader application: "A lawyer may not act as an advocate before a tribunal in a matter if . . . another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." Id. § 3.7(b).

Recognizing that Rule 3.7 "lends itself to opportunistic abuse[,]" Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 179 (2d Cir. 2009), the Second Circuit has held that motions to disqualify under the witness-advocate rule should be subject to "fairly strict scrutiny." Id. The movant "'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring to the witness-advocate's client is substantial.'" Id. (quoting Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)). "Prejudice" refers to testimony "that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the

client might have an interest in the lawyer's independence in discrediting that testimony.'" Id. (quoting Lamborn, 873 F.2d at 531). Disqualification is "required only when it is likely that the testimony to be given by [counsel] is necessary." Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) (internal quotation marks and citation omitted; alteration by court in Purgess).

Disqualification under subsection (a) applies only when the attorney-witness actually serves as trial counsel. See Murray, 583 F.3d at 179; Finkel v. Frattarelli Bros., Inc., 740 F.Supp.2d 368, 373 (E.D.N.Y. 2010). Based on her infrequent participation in the court proceedings in this case, it is unlikely that, to the extent that Ms. Pass will even serve as a member of the trial team, she will act as an advocate before the jury. See Murray, 583 F.3d at 179 (reversing order disqualifying law firm, even though four of its attorneys were likely to be called to testify at trial: "Three of them are transactional lawyers who are not and will not be trial advocates; the fourth, a litigator, is a member of the trial team, but will not act as an advocate before the jury."). Accordingly, the witness-advocate rule embodied in Rule 3.7(a) does not apply here.

Nor is disqualification warranted under Rule 3.7(b) based on imputation. Disqualification under subsection (b) "should be ordered sparingly . . . and only when the concerns motivating the rule are at their most acute." Murray, 583 F. 3d at 178 (citation omitted). Consequently, "a law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." Id. at 178-79.

In contrast to the situation addressed under subsection (a), in imputation cases, the potential for harm to the integrity of the judicial process -- and thus the concerns underlying Rule 3.7(a) -- are "'absent or, at least, greatly reduced.'" Id. at 178 (quoting Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 283 (2d Cir. 2004)).

In this case, the AOH defendants have fallen far short of meeting these standards. As an initial matter, even assuming *arguendo* that Ms. Pass had been directed by her clients to seek to modify a particular word in the transcript, the AOH defendants have not demonstrated that counsel's testimony is necessary. In fact, it is hard to imagine that the trial court would allow extrinsic evidence into whether, in speaking disparagingly of Ms. Pass, Dr. Pinkusovich used the word "tramp" versus "Trump." Even if this issue were conceivably relevant, the AOH defendants do not need Ms. Pass' testimony; they could seek to subpoena the alleged tape recording of the conversation or call the stenographer as a witness.

In any event, the AOH defendants have failed to identify any testimony that Ms. Pass is likely to offer that would be prejudicial to the plaintiffs. See Finkel, 740 F.Supp.2d at 377; Ross v. Blitzer, No. 09 Civ. 8666 (HB), 2009 WL 4907062, at *3 (S.D.N.Y. Dec. 21, 2009); Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C., 440 F.Supp.2d 303, 315 (S.D.N.Y. 2006). Contrary to the premise of the AOH defendants' argument, the key inquiry is the potential prejudice *to the client* arising from the involvement of the "attorney-witness," not the alleged prejudice to the opposing party. Disqualification by imputation is an "extreme remedy" that requires the AOH defendants to establish by clear and convincing evidence that *plaintiffs* would be so prejudiced by Ms. Pass' potential testimony that it would harm the

integrity of the judicial system.  The AOH defendants have failed to satisfy their heavy burden to warrant depriving plaintiffs of their choice of counsel.  See Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (noting that disqualification motions are disfavored because they impinge on a "client's right freely to choose his counsel").

In support of their motion to disqualify all of plaintiffs' attorneys, the AOH defendants rely on a hearsay affidavit from Dr. Pinkusovich, in which he states that his former counsel "informed" him of the contents of the tape recording.  See Affidavit of Alexander Pinkusovich (attached as Ex. G to Mot. to Disqualify) ¶ 2, DE #331-7.  Dr. Pinkusovich was not present during the challenged conversation with the stenographer, nor has he listened to the referenced recording.  His proffer thus is a slender reed on which to rest the drastic remedy of disqualification of the entire team of lawyers representing plaintiffs.  Furthermore, since plaintiffs have consented to the AOH defendants' preferred wording in the transcript, defendants have not been prejudiced by the supposed misconduct.

The AOH defendants conclude this aspect of their motion to disqualify by arguing that "[t]he appearance of impropriety and egregious conduct here constitutes an independent ground for disqualification."  Mot. to Disqualify at 2.  While misconduct may, in an appropriate case, provide grounds for disqualifying counsel, see Ceramco, Inc. v. Lee Pharms., 510 F.2d 268, 271 (2d Cir. 1975), courts have recognized that "the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation[,]" see Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 441 (1985) (Brennan, J., concurring). Disqualification generally is reserved for situations where counsel's conflict of interest

undermines the court's confidence in the representation of the client or where counsel is potentially in a position to use privileged information concerning the other party through a prior representation.  See Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 764-65 (2d Cir. 1990) (citing Bd. of Educ. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).  Where, as here, the "threat of tainting the trial does not exist, . . . the litigation should proceed, the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar."  Bottaro v. Hatton Assocs., 680 F.2d 895, 896-97 (2d Cir. 1982).

II.   Stern & Montana's Collections Representation of Allstate

The AOH defendants further argue that the law firm of Stern & Montana has a potential conflict of interest in the AOH Action because that firm represented Allstate in no-fault litigation at the collections level.   According to the AOH defendants, Allstate may raise an advice-of-counsel defense in the AOH Action, thereby putting Allstate in a position adverse to its counsel.   See Mot. to Disqualify at 2-3.   However, the AOH Action has been stayed and, since no counterclaims have been asserted in the instant action, Allstate has no need to interpose defenses, let alone an advice-of-counsel defense.   In addition, Stern & Montana ceased operations at the end of last year, and Allstate is now represented by two other firms, thereby further undermining the AOH defendants' allegation of a conflict of interest. Therefore, Stern & Montana's representation of Allstate in collections proceedings does not result in a conflict in this case.

III.   Stern & Montana as Material Witness to Fraud Prevention Plans

The AOH defendants further argue that Stern & Montana's advertising touting their

attorneys' experience in fraud prevention plans proves that the firm acted as "originators and advisors of such fraud prevention plans" with respect to Allstate. See Mot. to Disqualify at 3. The AOH defendants therefore claim that they will seek testimony from Stern & Montana attorneys regarding the AOH defendants' theory that Allstate fraudulently induced them to bill for VsNCT Testing under CPT Code 95904. See id.

The AOH defendants offer no concrete evidence that Stern & Montana acted as an "originator and advisor" of Allstate's fraud prevention plans. In fact, counsel for plaintiffs states unequivocally that the firm "did not represent or provide services to Allstate in connection with its fraud prevention plan." Allstate's Opp. at 6. Even if it had, the AOH defendants make no showing that the attorney or attorneys who provided such advice will represent Allstate as advocates at trial. As noted above, Stern & Montana is no longer operating or representing plaintiffs. Thus, the need for testimony from Allstate's trial attorney is purely speculative. See Goodwine v. Lee, No. 10CV6019 (VB)(LMS), 2014 WL 4377855, at *4 (S.D.N.Y. Sept. 3, 2014) (denying motion to disqualify where attorney may not be required to give testimony).

IV. Appearance of Impropriety

Lastly, the AOH defendants argue that plaintiffs' counsel's conduct in this action creates an appearance of impropriety. See Mot. to Disqualify at 3. Citing statements made on plaintiffs' behalf that plaintiffs first became aware of AOH's allegedly fraudulent conduct in 2011,[3] the AOH defendants contend that these representations, made through counsel, were

---

3 Specifically, at a conference before Judge Weinstein, counsel for Allstate responded to a question

11

necessarily false, because AOH closed its no-fault department in September 2010. <u>See</u> Mot. to Disqualify at 4. However, the AOH defendants fail to establish even the appearance of impropriety with respect to plaintiffs' counsel's statements, neither of which is inconsistent with the closing of AOH's no-fault department in September 2010: Counsel's statement to Judge Weinstein and plaintiffs' interrogatory response represented only that plaintiffs *learned of* AOH's fraudulent scheme in March 2011, not that AOH's scheme continued into March 2011. Moreover, even if the AOH defendants could demonstrate the appearance of impropriety, "[t]he Second Circuit has repeatedly warned . . . that [the appearance of impropriety], standing alone, does not warrant attorney disqualification in this Circuit." <u>Bass Pub. Ltd. Co. v. Promus Cos. Inc.</u>, No. 92 CIV. 0969, 1994 WL 9680 (SWK), at *9 (S.D.N.Y. Jan. 10, 1994) (citing <u>Int'l Elecs. Corp. v. Flanzer</u>, 527 F.2d 1288, 1295 (2d Cir. 1975)).

---

from the Court regarding when plaintiffs discovered AOH's fraudulent conduct: "In 2011, there were allegations brought to our client that [AOH] was engaged in fraud." Transcript of Hearing held on July 25, 2016 (Sept. 12, 2016) at 15, DE #324. And in an interrogatory response, plaintiffs asserted: "Plaintiffs became aware of the acts/omissions giving rise to the allegations contained in the Complaint in or about March 2011 after learning that a claimant was referred to Art of Healing . . . . Plaintiffs discovered the acts/omissions relating to VsNCT testing which gave rise to the allegations of the Complaint . . . ." Plaintiffs' Response to Interrogatory No. 1 (attached as Ex. D to Mot. to Disqualify) at 4, DE #331-4.

## CONCLUSION

For the foregoing reasons, the AOH defendants' motion to disqualify is denied.

**SO ORDERED.**

**Dated:**     **Brooklyn, New York**
**May 30, 2017**

/s/            *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**