UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ALLSTATE INSURANCE COMPANY,
et al.,

                            **Plaintiffs,**

            -against-

A & F MEDICAL P.C., et al.,

                        **Defendants.**
---------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

**14-CV-6756 (ENV)**

       Currently pending before the Court, in these actions[1] asserting common law claims and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, is a motion for default judgment filed by plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company (collectively, "plaintiffs" or "Allstate"). The various defendants are accused of separate but similar schemes to wrongfully obtain money from Allstate by submitting, or causing to be submitted, fraudulent no-fault insurance claims for nonreimbursable healthcare services purportedly provided to individuals involved in automobile accidents. Allstate asserted claims against 58 defendants but the only remaining defendants are those that are the subject of the instant motion: Nicholas Fennelli, M.D.

---

[1] Five member cases were opened by the Clerk of the Court at the direction of the Honorable Jack B. Weinstein, the District Judge then assigned to this action, in response to motions to sever filed by various defendants named in the lead action, Allstate Ins. Co. v. A & F Med. P.C., 14-cv-6756 (JBW). See Order (June 23, 2015), Electronic Case Filing ("ECF") Docket Entry ("DE") #171. Those member cases are: Allstate Ins. Co. v. A & F Med. P.C., 15-cv-3636; Allstate Ins. Co. v. Dumont Med. Diagnostics P.C., 15-cv-3637; Allstate Ins. Co. v. Flow Chiropractic P.C., 15-cv-3638; Allstate Ins. Co. v. Art of Healing Med., P.C., 15-cv-3639; and Allstate Ins. Co. v. Dynasty Med. Care, P.C., 15-cv-3644. Despite the various docket numbers of the member cases, the remainder of this opinion will refer to the litigation initiated by the Allstate plaintiffs as a single "action." All citations to docket entries pertain to the docket in the 14-cv-6756 case.

("Fennelli"), Charles Nguyen, D.C. ("Nguyen"), Melanie Walcott, D.C. ("Walcott"), Alignment Chiropractic Care P.C. ("Alignment Chiropractic"), Avicenna Medical Arts PLLC ("Avicenna Medical"), Dedicated Chiropractic, P.C. ("Dedicated Chiropractic"), Heights Chiropractic Services P.C. ("Heights Chiropractic"), Priority Medical Diagnostics P.C. ("Priority Medical"), and True-Align Chiropractic Care P.C. ("True-Align Chiropractic") (collectively, the "defaulting defendants").

The Honorable Eric N. Vitaliano, to whom the case was reassigned, referred plaintiffs' motion to the undersigned magistrate judge for report and recommendation.   For the reasons that follow, this Court respectfully recommends that the District Court grant plaintiffs' motion for default judgment in substantial part and award damages as detailed in the attached appendix.

## BACKGROUND AND FACTS

New York State's "no-fault" law created an insurance system to provide medically necessary healthcare services to persons injured in motor vehicle accidents ("Insureds"). Allstate, which underwrites automobile insurance, see Complaint (Nov. 18, 2014) ("Compl.") ¶ 1, DE #1, is obligated under the "no-fault" law and implementing regulations ("No-Fault Laws") to provide personal injury benefits ("No-Fault Benefits") to Insureds for necessary expenses in amounts up to $50,000 per person, see Gov't Emps. Ins. Co. v. David Sanni-Thomas, D.O., No. 13-CV-4966 (MKB)(SMG), 2015 WL 5692875, at *1 (E.D.N.Y. Sept. 4, 2015), adopted sub nom. Gov't Emps. Ins. Co. v. Zemlyansky, 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015); see also N.Y. Ins. Law §§ 5101-5109; 11 N.Y.C.R.R. §§ 65-1.1 through 65-5.5 (collectively, the "No-Fault Laws").   Insureds may assign their rights to No-Fault Benefits

to healthcare service providers in exchange for healthcare services, and such assignment allows the provider to receive payment directly from the insurance company.  See 11 N.Y.C.R.R. § 65-3.11(a).

On November 18, 2014, Allstate commenced this action against 58 entity and individual medical providers (collectively, "defendants"), alleging that they had engaged in a scheme to defraud Allstate through their involvement in the submission of false and/or fraudulent insurance claims on behalf of injured persons allegedly covered by New York's No-Fault Laws.  See Compl.  The Complaint alleges that defendants purportedly performed Voltage Actuated Sensory Nerve Conduction Threshold Testing ("VsNCT Testing") on patients, to diagnose peripheral neuropathies.  See id. ¶ 4.  Utilizing VsNCT Testing, the medical provider purported to selectively deliver an electrical current to the patient's sensory nerves through an electrode placed on the surface of the skin, thereby measuring the electrical response of a specific nerve fiber known as the "A-Delta."  See id. ¶¶ 6-10.  According to plaintiffs, it is impossible for the VsNCT Testing purportedly performed by defendants to selectively stimulate and measure the A-Delta fiber.  See id. ¶¶ 11, 13.  In addition, plaintiffs allege that defendants fraudulently billed Allstate for VsNCT Testing using Current Procedural Terminology ("CPT") Code 95904, when in fact such testing was not reimbursable pursuant to CPT Code 95904, and was medically unnecessary and of no diagnostic value.  See id. ¶¶ 17-25, 35-40.

As previously noted, various defendants filed motions to sever and/or dismiss the claims against them.  See, e.g., Letter Motion to Sever for non-compliance with FRCP 20(a) (Feb. 19, 2015), DE #118; Letter Motion to Sever and dismiss claims without prejudice under FRCP 20(a) and 21 (Feb. 19, 2015), DE #120; Notice of Motion to Sever and to Dismiss

3

(Mar. 20, 2015), DE #135; Motion to Sever and Dismiss Claims under FRCP 20 and 21 (Mar. 20, 2015), DE #136. Judge Weinstein denied those motions. See Order (June 23, 2015), DE #171; Order (July 27, 2016), DE #284.

Plaintiffs have entered into settlement agreements with all of the original defendants, except for the defaulting defendants. See Declaration of Daniel Marvin (Jan. 30, 2019) ¶ 4, DE #605-3. There are nine defaulting defendants remaining in this action,[2] each of whom failed to appear or otherwise defend this action.[3] These defendants include three individuals -- Fennelli, Nguyen, and Walcott,[4] and six entities -- Alignment Chiropractic, Avicenna Medical, Dedicated Chiropractic, Heights Chiropractic, Priority Medical, and True-Align Chiropractic. Defendant Nguyen is alleged to be the owner of Dedicated Chiropractic and defendant Fennelli is alleged to be the owner of Alignment Chiropractic. See Compl. ¶¶ 66, 86.

Each defaulting defendant was properly served with the summons and Complaint. See DE #24, #28, #37, #42, #45, #49, #55, #61, #65. Further, plaintiffs' counsel certifies that plaintiffs' default motion papers were served upon the defaulting defendants by mail at their last known addresses. See Affidavit of Service (Jan. 31, 2019), DE #606; Declaration re Motion for Default Judgment (Feb. 13, 2019), DE #607; Affidavit of Service (Feb. 13, 2019), DE #608; Declaration re Motion for Default Judgment (Mar. 7, 2019), DE #609; Declaration re Motion for Default Judgment (Mar. 7, 2019), DE #610.

---

[2] Plaintiffs had initially sought entry of default judgment against two additional defendants, with whom plaintiffs have since settled. See Marvin Decl. ¶ 26 & nn.2-3.

[3] Judge Weinstein struck the answer of Priority Medical after it failed to retain counsel following its prior counsel's withdrawal. See Endorsed Order (Oct. 14, 2015), DE #215.

[4] Unlike the other individual defendants, Walcott submitted insurance claims in her own name rather than in the name of a professional corporation. See Marvin Decl. ¶ 43.

## DISCUSSION

### I.    Default Judgment Standard

After the Clerk of the Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.    See Fed. R. Civ. P. 55(a)-(b).    A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability[.]"    Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).    A default does not, however, establish "that the alleged facts constitute a valid cause of action[.]" TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd., 536 F.App'x 45, 46 (2d Cir. 2013) (internal quotation marks omitted).    Indeed, "before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law."    Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).    In upholding a district court's refusal to vacate a default judgment, the Second Circuit has observed that a finding of liability on default may be based on "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs[.]"    Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015); see Herrera v. Tri-State Kitchen & Bath, Inc., No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *5 n.1 (E.D.N.Y. Mar. 31, 2015).

On a motion for default judgment, the facts alleged in the pleading are not assumed to be true in assessing the plaintiff's right to the relief requested.    See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).    In other words, even if the defendant is found

to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages or equitable relief.   See Greyhound Exhibitgroup, 973 F.2d at 158; SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975).

## II.    Liability

### A.    Common Law Fraud

Under New York law, a plaintiff alleging fraud must show that (1) there was a material misrepresentation by the defendant; (2) the defendant knew the misrepresentation was false when made; (3) the defendant made the misrepresentation with the intent to defraud; (4) the plaintiff reasonably relied on the misrepresentation; and (5) the plaintiff suffered an injury. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997); Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996).   "Intent is demonstrated [w]hen it is clear that a scheme, viewed broadly, is necessarily going to injure."   Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., No. 15 Civ. 3670 (FB) (VMS), 2017 WL 1133282, at *7 (E.D.N.Y. Feb. 21, 2017) (internal quotation marks omitted), adopted, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017).

Plaintiffs have pled sufficient facts in the Complaint and its exhibits to establish each element of the defaulting defendants' liability for common law fraud.   Plaintiffs allege that defendants made material misrepresentations, *inter alia*, by:   making false statements in medical reports that defendants were able to selectively detect the activation of a patient's A-Delta nerve fibers; submitting bills that contained false statements that defendants performed Nerve Conduction Studies, which were subject to reimbursement pursuant to CPT Code 95904; and making false and misleading statements designed to conceal the fact that VsNCT

6

Testing was not provided as billed and is of no diagnostic value.  See Compl. ¶¶ 14, 17-42.

Additionally, plaintiffs provide a chart detailing the specific fraudulent claims submitted by

defendants.  See List of Claims Paid by Plaintiffs for VsNCT Testing (attached to Compl. as

Exhibit A) ("List of Claims Paid"), DE #1-4; see also Exhibits 24 through 30 to Marvin Decl.,

DE #605-7.  These allegations are sufficient to establish material misrepresentations of fact for

purposes of a fraud claim.  See Gov't Emps. Ins. Co. v. Ajudua, 15-CV-5199 (MKB), 2018

WL 7252961, at *4 (E.D.N.Y. Dec. 18, 2018), adopted, 2019 WL 276201 (E.D.N.Y. Jan.

22, 2019); Gov't Emps. Ins. Co. v. Gateva, No. 12-CV-4236 (MKB), 2014 WL 1330846, at

*6-*7 (E.D.N.Y. Mar. 30, 2014).

Plaintiffs have further alleged that defendants knew that those statements were false and

made those claims with the specific intent to defraud Allstate.  See Compl. ¶¶ 41-43.

Defendants' fraudulent intent can be inferred from plaintiffs' allegations that defendants

submitted identical boilerplate false medical reports, which included measurements and records

of VsNCT Testing that the devices are incapable of measuring.  See id. ¶¶ 34, 40.  Plaintiffs

also adequately allege that they reasonably relied on defendants' submission of facially valid

insurance claims for VsNCT Testing, which were falsely verified by signing of the claim

forms.  See id. ¶¶ 180-81; Allstate Ins. Co. v. Aminov, No. 11-CV-2391 (MKB), 2014 WL

527834, at *6 (E.D.N.Y. Feb. 7, 2014) ("Allstate reasonably relied on the accuracy of these

claim forms because they paid the defendants more than $2.1 million"); Allstate Ins. Co. v.

Halima, No. 06-CV-1316 (DLI)(SMG), 2009 WL 750199, at *5 (E.D.N.Y. Mar. 19, 2009)

(insurer may "reasonably rely on facially valid claims submitted by a licensed professional

corporation and accompanied by reports from licensed physicians"); State Farm Mut. Auto.

Ins. Co. v. James M. Liguori, M.D., P.C., 589 F.Supp.2d 221, 238 (E.D.N.Y. 2008) (finding sufficient allegation that insurance company reasonably relied on submission of facially valid claims).   Moreover, plaintiffs' reliance was justified by the statutory and contractual obligation to process claims within 30 days of receipt.   See Ajudua, 2018 WL 7252961, at *5; Allstate Ins. Co. v. Nazarov, No. 11 CV 6187(PKC)(VMS), 2015 WL 5774459, at *15 (E.D.N.Y. Sept. 30, 2015); see also N.Y. Ins. Law § 5106(a); 11 N.Y. Comp. Code R. & Regs. § 65-3.8(a), (c).   Finally, plaintiffs clearly have alleged that they suffered an injury by paying the defaulting defendants' fraudulent claims.

Therefore, plaintiffs have adequately pled the defaulting defendants' liability for common law fraud and this Court respectfully recommends that defendants be held liable on those claims.   See Compl., Eleventh Claim for Relief (Dedicated Chiropractic and Nguyen), Twentieth Claim for Relief (Heights Chiropractic), Twenty-Ninth Claim for Relief (Priority Medical), Thirty-Eighth Claim for Relief (Alignment Chiropractic and Fennelli), Forty-Fourth Claim for Relief (Avicenna Medical), Eightieth Claim for Relief (True-Align Chiropractic), Ninety-First Claim for Relief (Walcott).

### B.    Unjust Enrichment

Under New York law, a plaintiff seeking relief under a theory of unjust enrichment must demonstrate "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."   Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009); see Hudson & Broad, Inc. v. J.C. Penney Corp., Inc., 553 F.App'x 37, 41 (2d Cir. 2014).   In light of the allegations discussed in connection with plaintiffs' fraud claims, plaintiffs have adequately alleged that defendants were enriched at plaintiffs' expense

in that they received proceeds from fraudulent claims submitted to Allstate for purported medical services.   In addition, plaintiffs have demonstrated that defendants participated in a scheme to "siphon money out of a statutory scheme designed for the public good" and that "equity and good conscience require restitution."   Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd., No. 10-CV-5611 (JG)(JMA), 2012 WL 1427796, at *6 (E.D.N.Y. Apr. 6, 2012), adopted, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).   These allegations are sufficient to state a claim for unjust enrichment against defendants.   See Ajudua, 2018 WL 7252961, at *5; Gateva, 2014 WL 1330846, at *7.   Therefore, this Court respectfully recommends that defendants be found liable on those respective claims.   See Compl., Twelfth Claim for Relief (Dedicated Chiropractic and Nguyen), Twenty-First Claim for Relief (Heights Chiropractic), Thirtieth Claim for Relief (Priority Medical), Thirty-Ninth Claim for Relief (Alignment Chiropractic and Fennelli), Forty-Fifth Claim for Relief (Avicenna Medical), Eighty-First Claim for Relief (True-Align Chiropractic), Ninety-Second Claim for Relief (Walcott).

## C.    RICO

Allstate alleges that two of the defaulting defendants, Nguyen and Fennelli, each operated a racketeering enterprise, Dedicated Chiropractic and Alignment Chiropractic, respectively.

The Racketeer Influenced and Corrupt Organizations Act, commonly referred to as RICO, provides in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

9

18 U.S.C. § 1962(c).   Although RICO is a criminal statute, section 1964(c) provides those injured by the conduct delineated in the RICO statute the right to bring a civil suit for triple damages and costs, including attorneys' fees.   See 18 U.S.C. § 1964(c).

To sustain a civil RICO claim, a plaintiff must, as an initial matter, allege the existence of each of the following seven elements:   "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."   Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990); see DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001).   Additionally, the plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962."   18 U.S.C. § 1964(c); see DeFalco, 244 F.3d at 329; Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003).

The term "enterprise" includes a "legal entity" or an association-in-fact that is not a legal entity.   18 U.S.C. § 1961(4).   In order to establish liability under section 1962(c), a plaintiff must allege and prove that the "person" or RICO defendant – including an entity defendant – is distinct from the alleged RICO enterprise.   See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).

"Racketeering activity" is defined as any act indictable under an array of federal criminal statutes.   See 18 U.S.C. § 1961(1).   To constitute a "pattern of racketeering activity," there must be at least two predicate acts meeting the definition of racketeering activity.   18 U.S.C. § 1961(5).   The "pattern" element may be satisfied by either closed-ended or open-ended continuity.   See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S.

10

229, 241-42 (1989).  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."  Id. at 242.  One means of satisfying the "continuity" requirement is "by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed."  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).  "Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is . . . open-ended continuity."  DeFalco, 244 F.3d at 323.

Under section 1962(c), the plaintiff must also establish that the defendants "'participated in the operation or management of the enterprise itself.'"  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994)).  The "operation or management" test is satisfied "not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management."  Reves v. Ernst & Young, 507 U.S. 170, 184 (1993).  The defendant must play "some part in directing the enterprise's affairs."  Id. at 179.  In the Second Circuit, "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage."  First Capital, 385 F.3d at 176 (internal citations omitted).

The allegations in the instant Complaint suffice to establish that Nguyen and Fennelli are each distinct RICO "persons," who each operated a corporate entity as a RICO "enterprise," i.e., Dedicated Chiropractic and Alignment Chiropractic, respectively.  See

11

Aminov, 2014 WL 527834, at *5 n.9; Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C., No. 12-cv-4295 (NG)(JO), 2013 WL 5131057, at *7 (E.D.N.Y. Sept. 12, 2013).   Moreover, plaintiffs adequately allege that each enterprise affects interstate commerce and had common perpetrators and victims over a period of years.   See Compl. ¶¶ 1, 44-45, 363-69, 633-39.

Plaintiffs have further established that the enterprises were used by defendants Nguyen and Fennelli to defraud Allstate.   Plaintiffs have adequately alleged Nguyen's and Fennelli's operation and management of the enterprises, as the entities' respective owners.   See Ajudua, 2018 WL 7252961, at *7; Smirnov, 2013 WL 5407224, at *9; AMD Chiropractic, 2013 WL 5131057, at *7.   Specifically, Nguyen and Fennelli used the enterprises to violate the federal mail fraud statute, see Compl. ¶¶ 368-371, 638-641, which makes it a crime to use the "mails in the execution of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises[,]'"   Allstate Ins. Co. v. Howell, No. 09 CV 4660 (RJD)(VVP), 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013) (quoting 18 U.C.S. § 1341(a)).   Mail fraud is included within the statutory definition of racketeering activity.   See 18 U.S.C. § 1961(1).   By mailing numerous fraudulent insurance claims to Allstate, Nguyen and Fennelli violated the mail fraud statute, satisfying the two predicate acts required for a pattern of racketeering under RICO.   Indeed, a necessary component of the scheme to defraud was the mailing to Allstate of statutorily prescribed claim forms for No-Fault Benefits.   Finally, plaintiffs have sufficiently pled that Nguyen's and Fennelli's RICO violations caused them harm by causing Allstate to pay insurance benefits for meritless claims.

Plaintiffs therefore have adequately alleged the elements of Nguyen's and Fennelli's RICO violations, and this Court respectfully recommends that they be held liable on those claims.  See Compl., Tenth Claim for Relief (Nguyen), Thirty-Seventh Claim for Relief (Fennelli).

## III.    Damages

An admission of liability by default does not concede damages; the plaintiff bears the burden of proving damages, and the defendant must be given the opportunity to contest the amount.  See Greyhound, 973 F.2d at 158.  Where, as here, a defaulting defendant has never appeared, "the Court's determination is based solely on plaintiff's submissions."  Gilbert v. Hotline Delivery, No. 00CV0160MBMRLE, 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001).  It is within the Court's discretion to decide whether or not to hold an evidentiary hearing prior to assessing damages.  See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

In this action, Allstate seeks damages against defendants Nguyen and Fennelli for RICO violations, trebled, and against all the defaulting defendants for their common law claims.  In addition, Allstate requests an award of prejudgment interest on their RICO and common law fraud claims.

In support of their motion, plaintiffs submitted the declarations of Daniel Marvin, an attorney representing Allstate, and of Michael Flaherty, an Analyst in the Special Investigations Unit at Allstate.  Mr. Flaherty avers that he based his calculations of the amounts paid by plaintiffs by reviewing the payment summaries proffered by plaintiffs,

itemizing each payment plaintiffs made to each of the defaulting defendants in connection with their claims for No-Fault Benefits. <u>See</u> Affidavit of Michael Flaherty (Jan. 30, 2019) ¶ 3, DE #605-2. Those payment summaries specify the year payment was made, the billing medical provider, the claim number and the amount paid. <u>See</u> Exhibits 24 through 30 to Marvin Decl., DE #605-7. In addition, plaintiffs attached to the Complaint charts detailing each claim made to Allstate, and listing the claim number, the patient, the medical provider, the date of service, the billing code used and the approximate date of mailing of the claims. <u>See</u> List of Claims Paid. Courts have found this type of documentary evidence a sufficient basis on which to award damages in similar insurance fraud default cases. <u>See</u> <u>Ajudua</u>, 2018 WL 7252961, at *8; <u>Aminov</u>, 2014 WL 527834, at *7; <u>Howell</u>, 2013 WL 5447152, at *7; <u>Allstate Ins. Co. v. Smirnov</u>, No. 12-CV-1246 (CBA), 2013 WL 5407224, at *15 (E.D.N.Y. Aug. 21, 2013).

A.    <u>RICO Claims</u>

Plaintiffs seek $95,261.64 in compensatory damages against defendant Nguyen, which, after trebling, amounts to $285,784.92. Plaintiffs also request compensatory damages against defendant Fennelli in the amount of $100,359.74, or $301,079.22 after trebling. Treble damages are available under RICO, 18 U.S.C. § 1964(c), and such an award is appropriate on a default judgment. <u>See</u> <u>Ajudua</u>, 2018 WL 7252961, at *8; <u>Aminov</u>, 2014 WL 527834, at *8; <u>Smirnov</u>, 2013 WL 5407224, at *15, *16. Based on the information submitted by plaintiffs, this Court finds that the amounts sought by plaintiffs are supported by the record and

respectfully recommends that on the RICO claims, Nguyen be held liable for $285,784.92 and Fennelli for $301,079.22 in damages.[5]

B.   Common Law Claims

Plaintiffs do not request additional damages for the common law claims brought against Nguyen and Fennelli, nor could they "'recover their actual damages twice.'"   Ajudua, 2018 WL 7252961, at *8 (internal citation omitted); see Aminov, 2014 WL 527834, at *10 (recommending denying award of common law damages that were identical to recommended RICO damages); Smirnov, 2013 WL 5407224, at *15.   Similarly, plaintiffs do not seek separate awards on their claims for fraud and unjust enrichment, which would be duplicative. See Ajudua, 2018 WL 7252961, at *8.   Allstate does, however, request compensatory damages for plaintiffs' common law claims against Dedicated Chiropractic, Heights Chiropractic, Alignment Chiropractic, Avicenna Medical, Priority Medical, True-Align Chiropractic and Walcott.   Having reviewed plaintiffs' submissions, this Court respectfully recommends that damages be awarded against those defendants in the amounts set forth in the attached appendix.

C.   Set-Off

As noted above, plaintiffs have settled their claims against all other defendants in this action.   The Court therefore considers whether any set-off amount should be applied against the damages recommended herein.

---

[5] Although RICO permits recovery of attorneys' fees, see 18 U.S.C. § 1964(c), plaintiffs have not sought fees in their pending motion.

With respect to Allstate's RICO claims, some courts in this Circuit have applied a "one satisfaction rule" to afford a defaulting defendant in a RICO case a reduction (after trebling) equal to the amount of a prior settlement with co-defendants with whom the defaulting defendant is jointly and severally liable.  See Oh v. Choi, CV 2011-3764 (DLI)(MDG), 2016 WL 11430442, at *16 & n.3 (E.D.N.Y. Feb. 29, 2016) (collecting cases).  Here, however, defendants Nguyen and Fennelli are not jointly and severally liable for RICO violations with any of the settling defendants.  See Compl. ¶¶ 363-74, 633-44.  Therefore, there is no basis to apply a set-off to the RICO damages recommended against defendants Nguyen and Fennelli.

With respect to plaintiffs' state law claims, section 15-108(a) of New York's General Obligations Law, which applies to Allstate's common law fraud claims, grants a non-settling defendant the following reduction as an affirmative defense: "the greater of (1) the settling defendant's equitable share of the damages, (2) the stipulated amount of the settlement, or (3) the amount actually paid by the settling defendant."  Allstate Ins. Co. v. Polack, No. CV 08-0565 (ADS)(ETB), 2012 WL 4489282, at *7 n.7 (E.D.N.Y. Sept. 12, 2012) (internal quotation marks and citation omitted), adopted, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012). Having defaulted, however, defendants waived any affirmative defenses, including the protection of section 15-108(a).  See Ajudua, 2018 WL 7252961, at *10; Polack, 2012 WL 4489282, at *7 n.7; see also Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008) (section 15-108 is an affirmative defense "subject to forfeiture if not raised in a timely fashion"). Hence, defendants are not entitled to a set-off in connection with damages awarded on Allstate's common law claims.

D.    <u>Prejudgment Interest</u>

Plaintiffs seek prejudgment interest on their RICO claims against defendants Nguyen

and Fennelli, and on their fraud claims against the remaining defaulting defendants.    <u>See</u>

Marvin Decl. ¶ 41.

As to prejudgment interest on the RICO claims, the district court has discretion to

award such interest.    <u>See</u> <u>Abdou-Khadra v. Mahshie</u>, 4 F.3d 1071, 1084 (2d Cir. 1993).

However, since this Court is recommending treble damages on plaintiffs' RICO claims, an

interest award would be duplicative.    <u>See</u> <u>Ajudua</u>, 2018 WL 7252961, at *10 n.20; <u>Parkway</u>

<u>Med.</u>, 2017 WL 1133282, at *16 & n.7; <u>Nazarov</u>, 2015 WL 5774459, at *21.    Therefore, this

Court respectfully recommends denying plaintiffs' request for pre-judgment interest against

defendants Nguyen and Fennelli.

As to prejudgment interest on the common law fraud claims against the remaining

defendants, plaintiffs seek interest at the rate of nine percent (9%) per annum.    New York law

provides for the award of prejudgment interest on damages for fraud, computed from the

"earliest ascertainable date the cause of action existed" at the non-compoundable rate of nine

percent (9%) per annum.    <u>See</u> <u>Ajudua</u>, 2018 WL 7252961, at *10; N.Y. C.P.L.R. §§ 5001,

5004.    An award of interest on damages for fraud is mandatory under New York law.    <u>See</u>

<u>id.</u>; <u>Parkway Med.</u>, 2017 WL 1133282, at *17; N.Y. C.P.L.R. § 5001(a).

Plaintiffs calculated interest by using an accrual date of January 1st of the year

following the year in which the payment was made,[6] through the date judgment is entered. This Court finds this method to be conservative and reasonable, and therefore respectfully recommends that Allstate's prejudgment interest be calculated at a rate of nine percent (9%) per annum.  See Ajudua, 2018 WL 7252961, at *11; Parkway Med., 2017 WL 1133282, at *17; AMD Chiropractic, 2013 WL 5131057, at *9.  This Court further recommends that after the District Court has determined the amount of damages to be awarded on plaintiffs' common law claims, Allstate be directed to provide updated interest calculations for all defendants other than Nguyen and Fennelli, for whom no prejudgment interest should be awarded.

E.    Joint and Several Liability

Although plaintiffs do not specify whether they seek to impose joint and several liability on the defaulting defendants, the allegations in the Complaint amount to an assertion of joint and several liability against defendant Nguyen and his medical practice defendant Dedicated Chiropractic, and defendant Fennelli and his medical practice Alignment Chiropractic.  See Compl. ¶¶ 376-387, 389-391, 646-657, 659-661.

New York law provides for joint and several liability for fraudulent acts where defendants acted jointly or concurrently to produce a single injury.  See Parkway Med., 2017 WL 1133282, at *14; Infinity Health Prods., 2012 WL 1427796, at *10.  Here, plaintiffs

---

[6] In his declaration, Mr. Marvin explains that "interest is calculated from the first day of the year following the date of Plaintiffs' *first* payment to the relevant Provider enterprise."  Marvin Decl. ¶ 41 (emphasis added).  This explanation suggests that Allstate calculated interest on all payments from a single date – the first day of the year following the date of plaintiffs' first payment to the relevant entity.  However, upon review of the documents submitted by plaintiffs, it is clear that plaintiffs calculated interest on each payment from the first day of the year following the date on which that specific payment was made.  In other words, for all payments made in a given year, plaintiffs calculate interest from January 1st of the following year.

allege that Nguyen and Fennelli submitted (or caused to be submitted) fraudulent claims to Allstate through their respective medical practices.   Thus, Nguyen and Fennelli are jointly and severally liable for common law damages with the entities through which they directly participated in submitting claims – Nguyen is jointly and severally liable with Dedicated Chiropractic, and Fennelli is jointly and severally liable with Alignment Chiropractic.   See Parkway Med., 2017 WL 1133282, at *15.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court grant plaintiffs' motion for default judgment in substantial part, enter judgment against the defaulting defendants as discussed above, and award plaintiffs damages as described in the appendix to this report and recommendation, with prejudgment interest (for all defaulting defendants other than Nguyen and Fennelli) to be calculated following the resolution of the damages award.

Any objections to this Report and Recommendation must be filed with Judge Vitaliano by September 30, 2019.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is requested to send copies of this report and recommendation by Federal Express to each defaulting defendant at the following addresses:

Avicenna Medical Arts PLLC
2903 Valentine Avenue, #RR1
Bronx, NY 10458

Alignment Chiropractic Care P.C.
6214 24 Avenue, 1st Floor
Brooklyn, NY 11204

Nicholas Fennelli, M.D.
86 Summer Street
Duxbury, MA 02332

Melanie Walcott, D.C.
570 Prospect Avenue
Dumont, NJ 07628

Charles Nguyen, D.C.
2390 Morgan Avenue
Bronx, NY 10469

Dedicated Chiropractic P.C.
2390 Morgan Avenue
Bronx, NY 10469

Heights Chiropractic Services, P.C.
190 Schweitzer Lane
Bardonia, NY 10954

Priority Medical Diagnostics P.C.
1864 Clove Road
Staten Island, NY 10304

True-Align Chiropractic Care, P.C.
190 Schweitzer Lane
Bardonia, NY 10954

**SO ORDERED.**

**Dated:**     **Brooklyn, New York**
          **September 11, 2019**  /s/     _Roanne L. Mann_

          **ROANNE L. MANN**
          **CHIEF UNITED STATES MAGISTRATE JUDGE**

**APPENDIX**

| Defaulting Defendant | Compensatory Damages | Trebled Damages | Total |
|---|---|---|---|
| Charles Nguyen, D.C. | $95,261.64[7] | $285,784.92 | $285,784.92 |
| Dedicated Chiropractic, P.C. | $95,261.64 | ---------------- | $95,261.64 |
| Nicholas Fennelli, M.D. | $100,359.74[8] | $301,079.22 | $301,079.22 |
| Alignment Chiropractic Care P.C. | $100,359.74 | ---------------- | $100,359.74 |
| Heights Chiropractic Services P.C. | $39,401.03 | ---------------- | $39,401.03 |
| Avicenna Medical Arts PLLC | $204,954.79 | ---------------- | $204,954.79 |
| Priority Medical Diagnostics P.C. | $755,617.59 | ---------------- | $755,617.59 |
| True-Align Chiropractic Care P.C. | $141,800.01 | ---------------- | $141,800.01 |
| Melanie Walcott | $12,229.60 | ---------------- | $12,229.60 |

---

[7] Nguyen and Dedicated Chiropractic are jointly and severally liable for common law compensatory damages of $95,261.64.   No prejudgment interest should be awarded against Nguyen.

[8] Fennelli and Alignment Chiropractic Care are jointly and severally liable for common law compensatory damages of $100,359.74.   No prejudgment interest should be awarded against Fennelli.